ORIGINAL

**REESE RICHMAN LLP**
Michael R. Reese (State Bar No. 206773)
875 Avenue of the Americas, 18th Floor
New York, New York 10001
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
Email: *mreese@reeserichman.com*

*Counsel for Plaintiffs*



FILED

JUL − 3 2013

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND BRANCH

**DIANNA JOU** and **JAYNRY YOUNG,**
individually and on behalf of other similarly
situated individuals,

                    Plaintiffs,

        v.

**KIMBERLY-CLARK CORPORATION;**
**KIMBERLY-CLARK WORLDWIDE, INC.;**
**KIMBERLY-CLARK GLOBAL SALES, LLC;**
and **DOES 1-5**.

                    Defendant.

Case No. **C13-3075**

**CLASS ACTION**

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

**DEMAND FOR JURY TRIAL**

**FILE BY FAX**

1      Plaintiffs Dianna Jou and Jaynry Young ("Plaintiffs"), California residents, individually

2  and on behalf of other similarly situated individuals, allege the following Class Action

3  Complaint against defendant Kimberly-Clark Corporation and its subsidiaries involved in

4  making, marketing, and distributing the Huggies-brand products identified below ("Defendant"

5  or "Kimberly-Clark"), upon personal knowledge as to themselves and their own acts and upon

6  information and belief – based upon, *inter alia*, the investigation made by their attorneys – as to

7  all other matters, as follows:

8                             **INTRODUCTION**

9     1.    In recent years, consumers have become significantly more aware and sensitive to

10  the toxicity and impact of household products on their health, the health of their children, and the

11  general environment. As a result, demand has increased for so-called "green" products that are

12  naturally derived, environmentally sound, and non-toxic.

13     2.    Defendant Kimberly-Clark manufactures Huggies® "pure & natural" Diapers

14  ("Huggies Natural Diapers") and Huggies® "Natural Care" Wipes ("Huggies Natural Wipes")

15  (collectively, the Huggies Natural Diapers and Huggies Natural Wipes are herein referred to as

16  the "Products") and distributes them to retailers nationwide for sale to consumers.

17     3.    Kimberly-Clark represents the Products to be natural, environmentally sound, and

18  safer alternatives to traditional diapers and wipes, including traditional Huggies brand diapers

19  and wipes. Additionally, Kimberly-Clark represents Huggies Natural Diapers as a pure and

20  organic alternative to traditional diapers.

21     4.    Unfortunately for consumers, these representations are not true. As detailed

22  herein, Huggies Natural Diapers are not "pure & natural," and Huggies Natural Wipes do not

23  provide the advertised "natural care."

24     5.    This is a proposed class action brought by Plaintiffs, on behalf of a class of

25  similarly situated individuals, against Kimberly-Clark seeking redress for Defendant's unjust,

26  unfair, and deceptive practices in misrepresenting the environmental and other benefits of the

27  Products in violation of Wisconsin and California law.

28

1

**JURISDICTION AND VENUE**

2       6.      This Court has personal jurisdiction over the parties in this case. Plaintiff Dianna
3   Jou is a citizen of California within this County, and Plaintiff Jaynry Young is a citizen of San
4   Mateo County, California. Defendant purposefully avails itself of the California consumer
5   market and distributes the Products to at least hundreds of locations within this County and
6   thousands of retail locations throughout California, where the Products are purchased by
7   thousands of consumers every day.

8       7.      This Court has original subject-matter jurisdiction over this proposed class action
9   pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act
10  ("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class
11  action in which at least 100 members are in the proposed plaintiff class, any member of the
12  plaintiff class is a citizen of a State different from any defendant, and the matter in controversy
13  exceeds the sum of $5,000,000.00, exclusive of interest and costs. Plaintiffs allege that the total
14  claims of individual members of the proposed Class (as defined herein) are well in excess of
15  $5,000,000.00 in the aggregate, exclusive of interest and costs.

16      8.      Venue is proper in this District under 28 U.S.C. § 1391(a). Substantial acts in
17  furtherance of the alleged improper conduct, including the dissemination of false and misleading
18  information regarding the nature, quality, and/or ingredients of the Products, occurred within this
19  District.

20

**Intradistrict Assignment**

21      9.      Assignment to the Oakland Division is appropriate under Civil L.R. 3-2(c) and (d)
22  because a substantial part of the events or omissions that give rise to the claim – including the
23  dissemination of false and misleading information regarding the nature, quality, and/or
24  ingredients of the Products – occurred within the Counties of Alameda, Contra Costa, Del Norte,
25  Humboldt, Lake, Marin, Mendocino, Napa, San Francisco, San Mateo, and Sonoma.

26

27

28

3

CLASS ACTION COMPLAINT

## PARTIES

### Individual and Representative Plaintiffs

10.    Plaintiff Dianna Jou is an individual consumer who, at all times material hereto, was a citizen of California. Plaintiff purchased Huggies Natural Diapers and Huggies Natural Wipes from a Target store located in Alameda County, California, for a couple months after her son was born in October 2011.

11.    Plaintiff Jou relied on Defendant's false, misleading, and deceptive representations that Huggies Natural Diapers and Huggies Natural Wipes would provide natural, relatively safe, environmentally sound, and (in the case of the diapers) organic alternatives to traditional diaper and wipe offerings. Had Plaintiff Jou known the truth that the statements she relied on were false, misleading, deceptive, and unfair, she would have not purchased Huggies Natural Diapers or Huggies Natural Wipes.

12.    Plaintiff Jaynry Young is an individual consumer who, at all times material hereto, was a citizen of California. Plaintiff purchased Huggies Natural Diapers from a Target store located in San Mateo County, California, in or around September 2011 after her daughter was born.

13.    Plaintiff Young relied on Defendant's false, misleading, and deceptive representations that Huggies Natural Diapers would provide natural, relatively safe, environmentally sound, and organic alternatives to traditional diaper offerings. Had Plaintiff Young known the truth that the statements she relied on were false, misleading, deceptive, and unfair, she would have not purchased Huggies Natural Diapers.

### Defendant

14.    Defendant Kimberly-Clark Corporation is a Delaware corporation with its principal place of business at 401 North Lake Street, Neenah, Wisconsin 54956.

15.    According to the packaging for the Products, they are distributed by Defendant "Kimberly-Clark Global Sales, LLC, Neenah, WI 54956." According the Wisconsin Department of Financial Institutions website, Kimberly-Clark Global Sales, LLC is a Delaware corporation with its principal office at 351 Phelps Dr., Irving, Texas 75038. Upon information and belief,

4

CLASS ACTION COMPLAINT

1  Kimberly-Clark Global Sales, LLC is a wholly-owned subsidiary of Defendant Kimberly-Clark
2  Corporation.

3      16.  According to the packaging and for the Products and the website for the Products,
4  http://www.huggies.com/en-US, the name, logo, and trademarks associated with the Products
5  are registered to Defendant Kimberly-Clark Worldwide, Inc.

6      17.  Plaintiffs do not know the names and locations of the other defendants listed
7  under fictitious names as "DOES 1-5," who, along with the identified defendants, are believed
8  to be responsible for the manufacture, marketing, and/or distribution of the Products and who
9  will be identified specifically upon further discovery.

10     18.  Plaintiffs refer herein to each and all of the defendants identified above as
11  "Defendant" or "Kimberly-Clark."

12     19.  Defendant manufactures, markets, and distributes the Huggies Natural Diapers
13  and Huggies Natural Wipes throughout California and the United States.

14                    **COMMON FACTUAL ALLEGATIONS**

15     20.  Seeking to profit on consumers' desire to locate and use natural, organic,
16  environmentally sound, and safer diaper and wipe alternatives to standard offerings, Defendant
17  markets the Products as "pure" and "natural" alternatives that provide numerous environmental
18  and other benefits that traditional diapers and wipes do not.

19     21.  The Products are sold in a variety of outlets, including Walgreens, Wal-Mart,
20  Safeway, Target, and other health food, grocery, and drug stores.

21     22.  The packaging for the Products misrepresent that the Products will benefit the
22  environment and end user in a variety of ways.

23     23.  With regard to Huggies Natural Diapers, Kimberly-Clark deceptively markets
24  them as "pure & natural,"[1] prominently stating, without qualification, that Huggies Natural
25  Diapers are made of "soft organic cotton." As seen in the representative images below,

26

27  _____

[1] Next to the representation "pure & natural" on the packaging is an asterisk. According to
28  another panel of the packaging, this asterisk indicates that "pure & natural" is a trademark of
   Kimberly-Clark Worldwide, Inc.

1  Defendant makes these claims upon the front of the packaging, which is additionally illustrated

2  with green coloring, trees, and leaves. (The grey portion is mostly green.)





CLASS ACTION COMPLAINT

1      24.    Thus, Huggies Natural Diapers are deceptively marketed as uniquely positioned,

2 in contrast to Kimberly-Clark's and other company's conventional diaper offerings, to provide

3 consumers with a natural, pure, organic, environmentally sound, and relatively safe product.

4      25.    In fact, Huggies Natural Diapers do not differ materially from other Kimberly-

5 Clark diaper offerings.

6      26.    The Huggies Natural Diapers only differ in two insignificant ways.

7      27.    First, the product, although represented to be made, without reservation, of soft

8 organic cotton, only contains organic cotton on the outside of the diaper.

9      28.    The organic cotton, thus, never actually comes into contact with the ultimate user,

10 the baby. As a result, the marketing does not match the reasonable expectation of consumers

11 created by Defendant: that the diaper – in total, not in small, immaterial part – is made of

12 organic cotton.

13      29.    Second, the product, despite Defendant's marketing of it as entirely pure and

14 natural, only differs from traditional diapers by including a liner that includes some materials

15 that are potentially less harmful to the environment than materials used in traditional diapers.

16 Yet, Huggies Natural Diapers also contain unnatural and potentially harmful ingredients, such as

17 polypropylene and sodium polyacrylate, which are components of Defendant's traditional

18 diapers.[2]

19      30.    No consumer would reasonably expect a "pure & natural" offering to contain such

20 unnatural and potentially harmful ingredients.

21      31.    Moreover, nowhere on the packaging for Huggies Natural Diapers does

22 Defendant disclose the actual composition of the diapers, including polypropylene or sodium

23 polyacrylate.

24

25 [2] According to a consumer who contacted Kimberly-Clark to inquire about the composition of

26 Huggies diapers, Kimberly Clark responded in an email that stated as follows: "'The inside absorbent padding on HUGGIES diapers is made of wood cellulose fiber (a fluffy paper-like

27 material) and a super-absorbent material called *polyacrylate*. Other materials include *polypropylene*, polyester, and polyethylene – *all synthetic materials* . . . .'"

28 Fluffy Bums: May 2011, http://fluffybums.blogspot.com/2011_05_01_archive.html (quoting email from Kimberly-Clark's Consumer Services) (emphasis added).

CLASS ACTION COMPLAINT

1    32.    Therefore, Defendant's representations that the Huggies Natural Diapers are pure,
2    natural, environmentally sound, safer than traditional diapers, and made of organic cotton are
3    false, deceptive, and misleading.

4    **Huggies "Natural Care" Wipes**

5    33.    With regard to Huggies Natural Wipes, Kimberly-Clark deceptively markets them
6    as providing "Natural Care" without qualification. As seen in the representative image below,
7    the packaging represents Huggies Natural Wipes as natural, both by the prominent representation
8    "Nature Care" and by the packaging design, which includes green coloring and leaves.

 

18    34.    However, Huggies Natural Wipes contain two substances, sodium methylparaben
19   and methylisothiazolinone, that are not natural and that are hazardous. Studies have found that
20   sodium methylparaben is a harmful ingredient that can act as a "[h]uman endocrine disruptor"
21   and "[h]uman immune toxicant or allergen."[3] Indeed, the EU has banned this substance, as it can
22   "strip skin of pigment," and the FDA limits the levels of parabens allowed in food and
23   beverages.[4]    Methylisothiazolinone has been associated with skin toxicity, immune system

---

[3] *See* Environmental Working Group ("EWG"), EWG's Skin Deep Cosmetics Database, Entry
for "METHYLPARABEN,"
http://www.ewg.org/skindeep/ingredient/703937/METHYLPARABEN/.
[4] EWG, *Teen Girls' Body Burden of Hormone-Altering Cosmetics Chemicals: Cosmetics chemicals of concern*, http://www.ewg.org/research/teen-girls-body-burden-hormone-altering-cosmetics-chemicals (citing Scientific Committee on Cosmetic Products and Non-Food Products

toxicity, and allergic reactions.[5] Evidence also exists that it may be neurotoxic.[6] In Canada and Japan, this substance is restricted in cosmetics.[7]

35.   Furthermore, until around June 2010, Huggies Natural Wipes contained a substance called DMDM hydantoin, which is a "formaldehyde releaser"[8] – *i.e.*, over time, it releases formaldehyde, which is a preservative classified as a carcinogen by the United States Department of Labor's Occupational Safety & Health Administration (OSHA).[9] Past iterations of Huggies Natural Wipes have also contained other non-natural components, such as tetrasodium EDTA, which is potentially hazardous to humans and the general environment.[10]

36.   By including non-natural components, Defendant provides the opposite of the product's advertised attribute of "Natural Care." Like the substances noted of concern in Huggies Natural Diapers, these substances are a far cry from the natural, environmentally sound, and relatively safe ingredients that Defendant misleads reasonable consumers to believe its Huggies Natural Wipes are made of.

37.   Moreover, none of these ingredients are disclosed on the front label of the packaging where Defendant makes the unqualified natural claims.

(SCCNFP), *Opinion Concerning Fragrance Allergy In Consumers*, SCCNFP/0017/0098 Final (1999); SCCNFP, *An Initial List of Perfumery Materials Which Must Not Form Part of Fragrances Compounds Used In Cosmetic Products*, SCCNFP/0320/0300 (2000)).

[5] *See* EWG, EWG's Skin Deep Cosmetics Database, Entry for METHYLISOTHIAZOLINONE," http://www.ewg.org/skindeep/ingredient/703935/METHYLISOTHIAZOLINONE/.

[6] *Id.*

[7] GoodGuide.com, Methylisothiazolinone Information, http://www.goodguide.com/ingredients/53090-methylisothiazolinone.

[8] *See* EWG, Entry for "DMDM HYDANTOIN," http://www.ewg.org/skindeep/ingredient/702196/DMDM_HYDANTOIN/.

[9] Occupational Safety & Health Administration, Safety and Health Topics > Formaldehyde, http://www.osha.gov/SLTC/formaldehyde/.

[10] *See* EWG, Entry for "TETRASODIUM EDTA," www.ewg.org/skindeep/ingredient/706510/TETRASODIUM_EDTA/.

1    38.    Because the Products contain unnatural ingredients, Defendant's claim that the
2  Products are "Natural" is false, misleading, and designed to deceive consumers into purchasing
3  the Products. This fact alone, that the Products are not natural, yet marketed and distinguished
4  primarily upon this characteristic, is sufficiently deceiving to the consumer. The fact that
5  evidence tends to indicate that Products' contents – in current and past iterations – may be
6  hazardous only highlights Defendant's deception.

7                    **The Nature of the Illegality of Defendant's Conduct**

8    39.    Defendant has profited enormously from its false advertising of Huggies Natural
9  Diapers and Huggies Natural Wipes. According to Walmart.com's purchasing website, which
10  can be accessed by a link on Huggies.com, Huggies pure and natural diapers (size 1) are
11  approximately 25 cents per diaper.[11]  Using this same website, traditional Huggies diaper
12  offerings (snug and dry size 1) are only approximately 19 cents per diaper,[12] representing a
13  premium of nearly 30%.

14    40.    The Federal Trade Commission (FTC), whose mission is, in part, "[t]o prevent
15  business practices that are anticompetitive or deceptive or unfair to consumers," has issued
16  marketing standards, known as the "FTC Green Guides,"[13] that apply to the unfair and deceptive
17  nature of Defendant's environmental marketing claims.

18    41.    Environmental marketing claims that violate the standards of the Green Guides
19  are *per se* unlawful under California's Environmental Marketing Claims Act ("EMCA"), Cal.
20  Bus. & Prof. Code §§ 17580-17581.

21    42.    The acts and omissions alleged herein are in contravention of the FTC Green
22  Guides and in violation of the EMCA in several respects. For example, Defendant makes
23  unqualified representations about the "natural" qualities of the Products, whereas the FTC Green

24

25  [11] *See* http://www.walmart.com/ip/HUGGIES-Pure-Natural-Diapers-choose-your-
26  size/14272931?sourceid=15000000000000003183760&veh=cse&srccode=cii_13462463&cpncod
    e=33-5642405.

27  [12] *See* http://www.walmart.com/ip/HUGGIES-Snug-Dry-Diapers-Choose-Your-Size/19717950.
28  [13] *See*, FTC, *GUIDES FOR THE USE OF ENVIRONMENTAL MARKETING CLAIMS*, 16
    C.F.R. Part 260, *available at* http://www.ftc.gov/os/2012/10/greenguides.pdf.

                              CLASS ACTION COMPLAINT

1  Guides advise that, to prevent deceptive claims, any "qualifications and disclosures should be

2  clear, prominent and understandable."[14]  Furthermore, the FTC Green Guides advise that, "[t]o

3  make disclosures clear and prominent, marketers . . . should place disclosures in close proximity

4  to the qualified claim."[15]  Defendant has not placed any clear, prominent disclosures in close

5  proximity to its unqualified "pure & natural" claim on the packaging for Huggies Natural

6  Diapers or in close proximity to its "Natural Care" claim on the packaging for Huggies Natural

7  Wipes.

8      43.    Similarly, Defendant makes unqualified representations that the Products offer

9  general environmental benefits, whereas the Green Guides advise that "marketers should not

10  make unqualified general environmental benefit claims."[16]  By way of illustration and not

11  limitation, Defendants' representations "pure & natural," "Natural Care," "Hypoallergenic," and

12  the green coloring and leaf designs on the packaging are all such unqualified representations of

13  general environmental benefit.[17]

14

15  [14] 16 C.F.R. § 260.3(a) (2012); *see also* 16 C.F.R. § 260.6(a) (2003) ("*Qualifications and*

16  *disclosures*. The Commission traditionally has held that in order to be effective, any
    qualifications or disclosures such as those described in these guides should be sufficiently clear,

17  prominent and understandable to prevent deception.").

18  [15] 16 C.F.R. § 260.3(a) (2012); *see also* 16 C.F.R. § 260.6(a) (2003) ("Clarity of language,
    relative type size and proximity to the claim being qualified, and an absence of contrary claims

19  that could undercut effectiveness, will maximize the likelihood that the qualifications and
    disclosures are appropriately clear and prominent.").

20  [16] 16 C.F.R. § 260.4(b) (2012); *see also* 16 C.F.R. § 260.7(a) (2003) ("It is deceptive to

21  misrepresent, directly or by implication, that a product, package or service offers a general
    environmental benefit. . . . [E]very express and material implied claim that the general assertion

22  conveys to reasonable consumers about an objective quality, feature or attribute of a product or
    service must be substantiated. Unless this substantiation duty can be met, broad environmental

23  claims should either be avoided or qualified, as necessary, to prevent deception about the specific

24  nature of the environmental benefit being asserted.").

25  [17] *See* 16 C.F.R. § 260.4("Example 3") (2012) ("A marketer's advertisement features a picture of
    a laser printer in a bird's nest balancing on a tree branch, surrounded by a dense forest. In green

26  type, the marketer states, 'Buy our printer. Make a change.' Although the advertisement does

27  not expressly claim that the product has environmental benefits, the featured images, in
    combination with the text, likely convey that the product has far-reaching environmental benefits

28  and may convey that the product has no negative environmental impact. Because it is highly
    unlikely that the marketer can substantiate these claims, this advertisement is deceptive.").

11
CLASS ACTION COMPLAINT

1        44.     Defendant also makes an unqualified "renewable materials" claim on the

2 packaging for its Huggies Natural Diapers that is in contravention to the FTC Green Guides and

3 California law, which advise against making such claims – specifically, a claim that a product is

4 "made with renewable materials" – unless the product is made entirely with renewable

5 materials,[18] which Huggies Natural Diapers are not.

6        45.     Furthermore, although the FTC Green Guides do not specifically address the

7 terms "organic" and "natural," the FTC has made clear that the general principles of

8 the Guides apply to such terms – *i.e.*, use of such terms must not be misleading to reasonable

9 consumers, and marketers must have substantiation for such claims if they evoke environmental

10 benefits.[19]    Defendant's use of the terms "organic" and "natural" is misleading and

11 unsubstantiated, as described herein.

12        46.     In sum, Defendant's prominent representations on the packaging for the Products

13 deceptively mislead consumers into believing that Kimberly-Clark offers two natural,

14 environmentally sound, and relatively safer product alternatives to traditional offerings in the

15 same product category.  While superficial differences do exist, these immaterial changes do not

16 come close to matching a consumer's reasonable expectation resulting from the company's

17 advertised benefits, particularly given the unnatural and potentially hazardous substances in the

18 Products.

19

20

21

22 [18] *See* 16 C.F.R. § 260.16 (2012).  *Cf.* 16 C.F.R. § 260.7(e)(2) (2003) ("For products or packages that are only partially made of recycled material, a recycled claim should be adequately qualified

23 to avoid consumer deception about the amount, by weight, of recycled content in the finished product or package.").

24 [19]   *See* FTC, *THE GREEN GUIDES: STATEMENT OF BASIS AND PURPOSE*,

25 http://www.ftc.gov/os/fedreg/2012/10/greenguidesstatement.pdf 259 (citing 75 Fed. Reg. 63,552, 63,585-63,586 (Oct. 15, 2010)).  Note that the FTC did not propose specific guidelines regarding

26 the term "organic" because it "wanted to avoid proposing advice duplicative of, or inconsistent

27 with, the USDA's National Organic Program ('NOP')" and, with respect to non-agricultural products, because it "lacked consumer perception evidence relating to claims for these products."

28 *Id.*  The FTC did not propose specific guidelines regarding the term "natural" because it "lacked consumer perception evidence indicating how consumers understand 'natural.'" *Id.*

CLASS ACTION COMPLAINT

1      47.    Defendant has profited enormously from its false and misleading representation

2 that its Products are natural and environmentally sound. The purpose of this action is to put an

3 end to Kimberly-Clark's deceptive marketing of the Products and to provide consumers with

4 monetary relief for Defendant's unjust enrichment stemming from its deceptive and misleading

5 product claims.

6                                    **CLASS ALLEGATIONS**

7      48.    Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil

8 Procedure on behalf of themselves and all others similarly situated individuals within the United

9 States (the "Class"), defined as follows:

> All United States residents who purchased the Defendant's Huggies Natural Wipes and/or Huggies Natural Diapers within the United States during the period December 10, 2006, to the date of class certification. Excluded from the Nationwide Class are any of Defendant's officers, directors, or employees; officers, directors, or employees of any entity in which Defendant currently has or has had a controlling interest; and Defendant's legal representatives, heirs, successors, and assigns.

      49.    Additionally, Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules

of Civil Procedure on behalf of themselves and all others similarly situated Californians (the

"California Sub-Class"), defined as follows:

> All California consumers who purchased Defendant's Huggies Natural Wipes and/or Huggies Natural Diapers in California during the period December 10, 2006, to the date of class certification. Excluded from the California Class are any of Defendant's officers, directors, or employees; officers, directors, or employees of any entity in which Defendant currently has or has had a controlling interest; and Defendant's legal representatives, heirs, successors, and assigns.

      50.    At this time, Plaintiffs do not know the exact number of Class or California

Sub-Class members; however, given the nature of the claims and the number of retail stores in

the United States and California selling Defendant's Products, Plaintiff believes that Class and

California Sub-Class members are so numerous that joinder of all members is impracticable.

51. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include:

  (a) whether Defendant misrepresented and/or failed to disclose material facts concerning Huggies Natural Diapers and Huggies Natural Wipes;

  (b) whether Defendant's conduct was unfair and/or deceptive;

  (c) whether Defendant has been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon Defendant by Plaintiff and the Class;

  (d) whether Defendant's representations about the environmental and other benefits of its Products constitute false, deceptive, and misleading advertising in violation of the Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18; and

  (e) whether Plaintiff and the Class have sustained damages with respect to the common law claims asserted, and if so, the proper measure of their damages.

52. With respect to the California Sub-Class, additional questions of law and fact common to the members that predominate over questions that may affect individual members include:

  (a) whether, in violation of California Civil Code § 1770(a)(7), Defendant advertised its Huggies Natural Diapers and Huggies Natural Wipes with the intent not to sell them as advertised;

  (b) whether, in violation of California Civil Code §1770(a)(5), Defendant represented on packaging for Huggies Natural Diapers and Huggies Natural Wipes that the Products had characteristics, ingredients, uses, or benefits that they do not have;

  (c) whether Defendant is subject to liability for violating California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1784;

(d) whether Defendant has violated California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200-17210;

(e) whether Defendant has violated California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500-17536;

(f) whether Defendant has violated California's green advertising law, Cal. Bus. & Prof. Code §§ 17580-17581; and

(g) whether the California Sub-Class is entitled to an award of restitution pursuant to California Business and Professions Code § 17203.

53. Plaintiffs' claims are typical of those of the Class because Plaintiffs, like all members of the Class, purchased, in a typical consumer setting, Defendant's Products bearing the natural representations and other representations regarding potential positive effects on the environment and user, and Plaintiffs sustained damages from Defendant's wrongful conduct. With respect to the California Sub-Class, Plaintiffs' claims are typical because, like all members of the California Sub-Class, purchased, in a typical consumer setting within California, Defendant's Products bearing the natural representations and other representations regarding potential positive effects on the environment and user, and Plaintiffs sustained damages from Defendant's wrongful conduct.

54. Plaintiffs will fairly and adequately protect the interests of the Class and the California Sub-Class and have retained counsel that is experienced in litigating complex class actions. Plaintiffs have no interests which conflict with those of the Class or the California Sub-Class.

55. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

56. The prerequisites to maintaining a class action for injunctive or equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the Class and the California Sub-Class, thereby making appropriate final injunctive or equitable relief with respect to the Class and the California Sub-Class as a whole.

1    57.    The prosecution of separate actions by members of the Class and the California
2  Sub-Class would create a risk of establishing inconsistent rulings and/or incompatible standards
3  of conduct for Defendant.  For example, one court might enjoin Defendant from performing the
4  challenged acts, whereas another might not.  Additionally, individual actions could be dispositive
5  of the interests of the Class and the California Sub-Class even where certain Class or California
6  Sub-Class members are not parties to such actions.

7    58.    Defendant's conduct is generally applicable to the Class and the California Sub-
8  Class as a whole and Plaintiffs seek, *inter alia*, equitable remedies with respect to the Class and
9  the California Sub-Class as a whole.  As such, Defendant's systematic policies and practices
10  make declaratory relief with respect to the Class and the California Sub-Class as a whole
11  appropriate.

12  ### CAUSES OF ACTION
   #### COUNT I
13  **(Unfair and Deceptive Acts and Practices**
14  **In Violation of the California Consumers Legal Remedies Act)**

15    59.    Plaintiffs incorporate by reference and reallege herein all paragraphs alleged
16  above.

17    60.    This cause of action is brought pursuant to California's Consumers Legal
18  Remedies Act, Cal. Civ. Code §§ 1750-1785 (the "CLRA").

19    61.    Plaintiffs and the other members of the California Sub-Class are "consumers," as
20  the term is defined by California Civil Code § 1761(d), because they bought Huggies Natural
21  Wipes and Huggies Natural Diapers for personal, family, or household purposes.

22    62.    Plaintiffs, the other members of the California Sub-Class, and Defendant have
23  engaged in "transactions," as that term is defined by California Civil Code §1761(e).

24    63.    The conduct alleged in this Complaint constitutes unfair methods of competition
25  and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was
26  undertaken by Defendant in transactions intended to result in, and which did result in, the sale of
27  goods to consumers.

28

16
CLASS ACTION COMPLAINT

64.     As alleged more fully above, Defendant has violated the CLRA by falsely representing to Plaintiffs and the other members of the California Sub-Class that the Products (a) are unqualifiedly environmentally sound, (b) unqualifiedly naturally derived, (c) unqualifiedly natural and pure, and (d) safer product alternatives.

65.     As a result of engaging in such conduct, Defendant has violated California Civil Code § 1770(a)(5), (a)(7), and (a)(9).

66.     Pursuant to California Civil Code § 1780(a)(2) and (a)(5), Plaintiffs seek an order of this Court that includes, but is not limited to, an order requiring Defendant to:

(a) remove and/or refrain from making representations on the Products' packaging representing that the Products provide an unqualified level of "natural" benefits and

(b) remove and/or refrain from making representations on the Products' packaging representing that the Products are unqualifiedly environmentally sound and naturally derived.

67.     Plaintiffs and the other California Sub-Class members may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

68.     The unfair and deceptive acts and practices of Defendant, as described above, present a serious threat to Plaintiffs and the other members of the California Sub-Class.

69.     CLRA § 1782 NOTICE. On December 10, 2012, a CLRA demand letter was sent to Defendant via certified mail that provided notice of Defendant's violation of the CLRA and demanded that within thirty (30) days from that date, Defendant correct, repair, replace or other rectify the unlawful, unfair, false and/or deceptive practices complained of herein.  The letter also stated that if Defendant refused to do so, a complaint seeking damages in accordance with the CLRA would be filed.  Defendant has failed to comply with the letter.  Accordingly, pursuant to California Civil Code § 1780(a)(3), Plaintiffs, on behalf of themselves and all other members of the California Sub-Class, seeks compensatory damages, punitive damages, and restitution of any ill-gotten gains due to Defendant's acts and practices.

## COUNT II

### (Violations of California's False Advertising Law)

70.     Plaintiffs incorporate by reference and reallege herein all paragraphs alleged above.

71.     As alleged more fully above, Defendant has falsely advertised the Products by falsely claiming that the Products are unqualifiedly naturally derived and environmentally sound.

72.     Plaintiffs and the other members of the California Sub-Class have suffered injury in fact and have lost money or property as a result of Defendant's violations of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*

73.     Pursuant to California Business and Professions Code §§ 17203 and 17535, Plaintiffs and the California Sub-Class seek an order of this Court that includes, but is not limited to, an order requiring Defendant to:

> (a) remove and/or refrain from making representations on the Products' packaging representing that the Products provide an unqualified level of "natural" benefits and

> (b) remove and/or refrain from making representations on the Products' packaging representing that the Products are unqualifiedly environmentally sound and naturally derived.

## COUNT III

### (Violations of California's Environmental Marketing Claims Act)

74.     Plaintiffs incorporate by reference and reallege herein all paragraphs alleged above.

75.     As alleged more fully above, Defendant has falsely advertised the Products by falsely claiming that the Products are unqualifiedly naturally derived and environmentally sound.

76.     Plaintiffs and the other members of the California Sub-Class have suffered injury in fact and have lost money or property as a result of Defendant's violations of California's Environmental Marketing Claims Act ("EMCA"), Cal. Bus. & Prof. Code §§ 17580-17581.

77. In particular, Defendant has violated and continues to violate California Business and Professions Code § 17580.5, which makes it "unlawful for any person to make any untruthful, deceptive, or misleading environmental marketing claim, whether explicit or implied" and which defines an environmental marketing claim to include "any claim contained in the [the FTC's Green Guides]."

78. Pursuant to California Business and Professions Code §§ 17203 and 17535, Plaintiffs and the California Sub-Class seek an order of this Court that includes, but is not limited to, an order requiring Defendant to:

> (a) remove and/or refrain from making representations on the Products' packaging representing that the Products provide an unqualified level of "natural" benefits and

> (b) remove and/or refrain from making representations on the Products' packaging representing that the Products are unqualifiedly environmentally sound and naturally derived.

### COUNT IV

### (Violation of California's Unfair Competition Law)

79. Plaintiffs incorporate by reference and reallege herein all paragraphs alleged above.

80. By committing the acts and practices alleged herein, Defendant has violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210, as to the California Sub-Class as a whole, by engaging in unlawful, fraudulent, and unfair conduct.

81. Defendant has violated the UCL's proscription against engaging in *unlawful* conduct as a result of:

> (a) its violations of the CLRA, Cal. Civ. Code § 1770(a)(5), (a)(7), and (a)(9), as alleged above;

> (b) its violations of the FAL, Cal. Bus. & Prof. Code § 17500 *et seq.*, as alleged above; and

19

CLASS ACTION COMPLAINT

1            (c) its violations of the EMCA, Cal. Bus. & Prof. Code §§ 17580-17581, as

2                  alleged above.

3        82.    Defendant's acts and practices described above also violate the UCL's

4    proscription against engaging in fraudulent conduct.

5        83.    As more fully described above, Defendant's misleading marketing, advertising,

6    packaging, and labeling of Products is likely to deceive reasonable consumers. Indeed, Plaintiffs

7    and the other members of the California Sub-Class were unquestionably deceived regarding the

8    environmental and natural benefits of Products, as Defendant's marketing, advertising,

9    packaging, and labeling of Huggies Natural Diapers and Huggies Natural Wipes misrepresent

10   and/or omit the true facts concerning the benefits of the Products. Said acts are fraudulent

11   business practices.

12       84.    Defendant's acts and practices described above also violate the UCL's

13   proscription against engaging in *unfair* conduct.

14       85.    Plaintiff and the other California Sub-Class members suffered a substantial injury

15   by virtue of buying the Products that they would not have purchased absent Defendant's

16   unlawful, fraudulent, and unfair marketing, advertising, packaging, and labeling or by virtue of

17   paying an excessive premium price for the unlawfully, fraudulently, and unfairly marketed,

18   advertised, packaged, and labeled Products.

19       86.    There is no benefit to consumers or competition from deceptively marketing and

20   labeling products like Huggies Natural Diapers and Huggies Natural Wipes, which purport to be

21   natural, environmentally sound, and safer alternatives to traditional offerings when these

22   unqualified claims are false.

23       87.    Plaintiff and the other California Sub-Class members had no way of reasonably

24   knowing that the Products they purchased were not as marketed, advertised, packaged, or

25   labeled. Thus, they could not have reasonably avoided the injury each of them suffered.

26       88.    The gravity of the consequences of Defendant's conduct as described above

27   outweighs any justification, motive, or reason therefore, particularly considering the available

28   legal alternatives which exist in the marketplace, and such conduct is immoral, unethical,

1  unscrupulous, offends established public policy, or is substantially injurious to Plaintiffs and the

2  other members of the California Sub-Class.

3       89.    Defendant's violations of the UCL continue to this day.

4       90.    Pursuant to California Business and Professional Code § 17203, Plaintiffs and the

5  California Sub-Class seek an order of this Court that includes, but is not limited to, an order

6  requiring Defendant to:

7              (a) remove and/or refrain from making representations on the Products'

8                  packaging representing that the Products provide an unqualified level of

9                  "natural" benefits;

10             (b) remove and/or refrain from making representations on the Products'

11                 packaging representing that the Products are unqualifiedly environmentally

12                 sound and naturally derived;

13             (c) provide restitution to Plaintiffs and the other California Sub-Class members;

14             (d) disgorge all revenues obtained as a result of violations of the UCL; and

15             (e) pay Plaintiffs' and the California Sub-Class's attorney fees and costs.

16                                         **COUNT V**

17      **(Violation of the Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18)**

18      91.    Plaintiffs incorporate by reference and reallege herein all paragraphs alleged

19  above.

20      92.    Defendant's representations about the environmental and other benefits of its

21  Products constitute false, deceptive, and misleading advertising in violation of Wisconsin's

22  Deceptive Trade Practices Act ("DTPA"), Wis. Stat. § 100.18.

23      93.    As set forth above, the representations on the Products' packaging are false,

24  deceptive, and misleading because they represent the Products to be natural, environmentally

25  sound, and relatively safe products when they are not. In fact, as described above, the "natural"

26  and "green" labeling of the Products is nothing more than a marketing scheme designed by

27  Defendant to increase sales of its Products among environmentally conscious consumers.

28

21

CLASS ACTION COMPLAINT

1   94.    Defendant designed the false, misleading, and deceptive representations with
2   intent to sell, distribute, and increase the consumption of its Products bearing the
3   misrepresentations.

4   95.    Defendant's violation of the DTPA caused Plaintiffs and the other Class members
5   to suffer pecuniary loss.  Specifically, Defendant's false, deceptive, and misleading marketing
6   caused consumers to purchase Defendant's Products believing they were natural,
7   environmentally sound, and relatively safe when, in fact, they were not.

8   96.    Because Defendant's marketing program was devised, implemented, and directed
9   from Defendant's headquarters in Neenah, Wisconsin, the DTPA applies to a class of purchasers
10  of Defendant's Products bearing the offending labeling, both within and outside of Wisconsin,
11  who have been harmed as a result.  Moreover, Wisconsin has a substantial interest in preventing
12  false, deceptive, and misleading practices within the State which may have an effect both in
13  Wisconsin and throughout the United States.

14  **PRAYER FOR RELIEF**

15  WHEREFORE, Plaintiffs demand judgment on behalf of themselves and the Class and
16  the California Sub-Class as follows:

17  A. An order certifying the proposed Class and the California Sub-Class; appointing Plaintiffs
18  as representatives of the Class and the California Sub-Class; and appointing Plaintiffs'
19  undersigned counsel as Class counsel;

20  B. A declaration that Defendant is financially responsible for notifying Class members of the
21  pendency of this suit;

22  C. An award of restitution pursuant to California Business and Professions Code §§ 17203
23  and 17535 for members of the California Sub-Class;

24  D. An award of disgorgement pursuant to California Business and Professions Code
25  §§ 17203 and 17535 for members of the California Sub-Class;

26  E. An order enjoining Defendant's unlawful and deceptive acts and practices, pursuant to
27  California Business and Professions Code §§ 17203 and 17535, to remove and/or refrain
28  from using representations on Defendant's Products that the Products provide an

1   unqualified level of "natural" benefits and are unqualifiedly environmentally sound and

2   naturally derived.

3   F. Monetary damages and injunctive relief for members of the California Sub-Class

4   pursuant to California Civil Code § 1780;

5   G. Statutory damages in the maximum amount provided by law;

6   H. Punitive damages in accordance with proof and in an amount consistent with applicable

7   precedent;

8   I. An order awarding Plaintiff and the other Class members the reasonable costs and

9   expenses of suit, including their attorneys' fees; and

10  J. Any further relief that the Court may deem appropriate.

11  ## JURY TRIAL DEMANDED

12  Plaintiffs demand a trial by jury for all claims so triable.

13  DATED: July 3, 2013

14  **REESE RICHMAN LLP**

15

16  Michael R. Reese (SBN 206773)
    875 Avenue of the Americas, 18th Floor
17  New York, New York 10001
    Telephone: (212) 643-0500
18  Facsimile: (212) 253-4272
19  Email: *mreese@reeserichman.com*

20  ***Counsel for Plaintiffs***

21

22

23

24

25

26

27

28

---

23
CLASS ACTION COMPLAINT