1 | TIMOTHY T. SCOTT (State Bar No. 126971)
tscott@kslaw.com
2 | GEOFFREY M. EZGAR (State Bar No. 184243)
gezgar@kslaw.com
3 | KING & SPALDING LLP
333 Twin Dolphin Drive, Suite 400
4 | Redwood Shores, CA 94065
Telephone:  (650) 590-0700
5 | Facsimile:  (650) 590-1900
6 |
7 | STEPHEN B. DEVEREAUX (GA Bar No. 219791) (to be admitted *pro hac vice*)
sdevereaux@kslaw.com
8 | MADISON H. KITCHENS (GA Bar No. 561653) (to be admitted *pro hac vice*)
mkitchens@kslaw.com
9 | KING & SPALDING LLP
1180 Peachtree Street N.E.
10 | Atlanta, GA 30309-3521
Telephone:  (404) 572-4600
11 | Facsimile:  (404) 572-5100
12 |
13 | Attorneys for Defendants KIMBERLY-CLARK CORPORATION;
KIMBERLY-CLARK WORLDWIDE, INC.; KIMBERLY-
14 | CLARK GLOBAL SALES, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DIANNA JOU and JAYNRY YOUNG, individually and on behalf of other similarly situated individuals,<br><br>        Plaintiffs,<br><br>    v.<br><br>KIMBERLY-CLARK CORPORATION; KIMBERLY-CLARK WORLDWIDE, INC.; KIMBERLY-CLARK GLOBAL SALES, LLC; and DOES 1-5.<br><br>        Defendants. | Case No. C13-cv-03075 JSC<br><br>NOTICE OF MOTION AND BRIEF STATEMENT OF RELIEF REQUESTED; DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT OR, IN THE ALTERNATIVE, MOTION TO STRIKE<br><br>Date:  October 31, 2013<br>Time:  9:00 a.m.<br> Judge:  Magistrate Judge Jacqueline Scott<br>        Corley<br>Complaint Filed:  July 3, 2013 |

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     FACTUAL BACKGROUND .................................................................................2

        A.      The Named Plaintiffs' Allegations ...........................................................2

        B.      The Five Causes of Action and Prayer for Relief ....................................2

III.    ARGUMENT ..........................................................................................................4

        A.      All of Plaintiffs' Claims Are Fraud-based, and They Have Not Pleaded
                Any of Them with the Requisite Particularity to Satisfy Rule 9(b) .......4

        B.      Plaintiffs' Claims Are Facially Implausible Under Rule 12(b)(6) ..........6

        C.      Plaintiffs Lack Standing to Seek Restitution Because They Fail to Allege
                the Products Did Not Perform as Advertised or That They Suffered Any
                Cognizable Injury Under Article III. ......................................................15

        D.      Plaintiffs Also Lack Standing for Injunctive Relief Because They Are Not
                Continuing Purchasers and Are Not Realistically Threatened by Repetition
                of the Alleged Violations. .......................................................................18

        E.      Plaintiffs' Wisconsin-law Claims Should Be Dismissed Because
                Plaintiffs' Claims Are Governed by California (not Wisconsin) Law. .................20

        F.      Plaintiffs' Putative Nationwide Class Should Also Be Dismissed and/or
                Stricken from the Complaint Because There Is No Basis to Apply
                Wisconsin Law to the Claims of the Named Plaintiffs. ........................23

IV.     CONCLUSION .....................................................................................................25

## **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Annunziato v. eMachines, Inc.*,
    402 F. Supp. 2d 1133 (C.D. Cal. 2005) .................................................................10

*Aryeh v. Canon Business Solutions, Inc.*,
    55 Cal. 4th 1185 (Cal. 2013)...............................................................................21

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................................7

*Astiana v. Kashi Co.*,
    No. 3:11-CV-01967-H, 2013 U.S. Dist. LEXIS 108445 (S.D. Cal. July 30, 2013).................9

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................................7

*Boysen v. Walgreen Co.*,
    No. C 11-06262 SI, 2012 U.S. Dist. LEXIS 100528 (N.D. Cal. July 19, 2012) ....................16

*Brockey v. Moore*,
    107 Cal. App. 4th 86 (2003) ...............................................................................8

*Campion v. Old Republic Home Prot. Co.*,
    861 F. Supp. 2d 1139 (S.D. Cal. 2012)..................................................................19

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
    475 Fed. App'x 113 (9th Cir. 2012) ......................................................................12

*Castagnola v. Hewlett-Packard Co.*,
    No. C 11-05772 JSW, 2012 WL 2159385 (N.D. Cal. June 13, 2012)..............................18, 19

*Deitz v. Comcast Corp.*,
    No. C 06-06352 WHA, 2006 U.S. Dist. LEXIS 94333 (N.D. Cal. Dec. 21, 2006)................19

*Eberts v. Goderstad*,
    569 F.3d 757 (7th Cir. 2009) ...............................................................................21

*Freeman v. Time, Inc.*,
    68 F.3d 285 (9th Cir. 1995) .............................................................................8, 13

*Frezza v. Google Inc.*,
    No. 5:12-cv-00237-RMW, 2013 U.S. Dist. LEXIS 57462 (N.D. Cal. Apr. 22, 2013) .....21, 22

*Frontier Oil Corp. v. RLI Ins. Co.*,
    153 Cal. App. 4th 1436 (Cal. Ct. App. 2007) .........................................................20

*Gest v. Bradbury*,
    443 F.3d 1177 (9th Cir. 2006) .............................................................................19

*Gianino v. Alacer Corp.*,
    846 F. Supp. 2d 1096 (S.D. Cal. 2012)..............................................................20, 21

*Gonzales v. Comcast Corp.*,
    No. 10-cv-01010-LJO-BAM, 2012 U.S. Dist. LEXIS 196 (E.D. Cal. Jan. 3, 2012)..............20

*Granfield v. NVIDIA Corp.*,
    No. C 11-05403 JW, 2012 WL 2847575 (N.D. Cal. Jul. 11, 2012) ................................22, 23

*Guido v. L'Oreal, USA, Inc.*,
    No. CV 11-1067 CAS, 2013 U.S. Dist. LEXIS 16915 (C.D. Cal. Feb. 6, 2013) ...................21

*Hairston v. South Beach Bev. Co.*,
    No. CV 12-1429-JFW, 2012 U.S. Dist. LEXIS 74279 (C.D. Cal. May 18, 2012)........8, 11, 13

*Haskell v. Time, Inc.*,
    857 F. Supp. 1392 (E.D. Cal. 1994)...................................................................................10

*Henderson v. Gruma Corp.*,
    No. CV 10-04173 AHM, 2011 U.S. Dist. LEXIS 41077 (C.D. Cal. Apr. 11, 2011) .............11

*Hernandez v. Burger*,
    102 Cal. App. 3d 795 (Cal. Ct. App. 1980) ......................................................................22

*Herrington v. Johnson & Johnson Consumer Cos.*,
    No. C 09-1597 CW, 2010 U.S. Dist. LEXIS 90505 (N.D. Cal. Sept. 1, 2010) .................17, 18

*Hill v. Roll Int'l Corp.*,
    195 Cal. App. 4th 1295 (Cal. Ct. App. 2011) .............................................................8, 13, 14

*Hodgers-Durgin v. De La Vina*,
    199 F.3d 1037 (9th Cir. 1999) .........................................................................................19

*Horvath v. LG Elecs. MobileComm U.S.A., Inc.*,
    No. 3:11-CV-01576-H-RBB, 2012 U.S. Dist. LEXIS 19215 (S.D. Cal. Feb. 13, 2012) ........22

*Hovsepian v. Apple, Inc.*,
    No. 08-5788 JF, 2009 WL 5069144 (N.D. Cal. Dec. 17, 2009).........................................23

*In re Actimmune Mktg. Litig.*,
    No. C 08-02376 MHP, 2009 U.S. Dist. LEXIS 103408 (N.D. Cal. Nov. 6, 2009)...............24

*In re Apple & AT & TM Antitrust Litig.*,
    596 F. Supp. 2d 1288 (N.D. Cal. 2008) ............................................................................23

*In re Bridgestone/Firestone, Inc.*,
    288 F.3d 1012 (7th Cir. 2002) .........................................................................................20

*In re Fruit Juice Prods. Mktg. & Sales Practices Litig.*,
    831 F. Supp. 2d 507 (D. Mass. 2011) ...............................................................................17

*In re Hitachi TV Optical Block Cases*,
  No. 08cv1746 DMS, 2011 U.S. Dist. LEXIS 135 (S.D. Cal. Jan. 3, 2011) ..........................20

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
  903 F. Supp. 2d 942 (S.D. Cal. 2012) ......................................................................................4

*In re Vioxx*,
  180 Cal. App. 4th 116 (Cal. Ct. App. 2009) ....................................................................16, 21

*Janda v. T-Mobile, USA, Inc.*,
  No. C 05-03729 JSW, 2008 U.S. Dist. LEXIS 93399 (N.D. Cal. Nov. 7, 2008) ...................19

*K&S Tool & Die Corp. v. Perfection Mach. Sales, Inc.*,
  732 N.W.2d 792 (Wis. 2007)..................................................................................................21

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ..............................................................................................4, 5

*Koronthaly v. L'Oreal USA, Inc.*,
  374 Fed. App'x 257 (3d Cir. 2010)..........................................................................................17

*Lavie v. Procter & Gamble Co.*,
  105 Cal. App. 4th 496 (Cal. Ct. App. 2003) .............................................................................8

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)...........................................................................................................15, 18

*Maniscalco v. Brother Int'l (USA) Corp.*,
  709 F.3d 202 (3rd Cir. 2013) ..................................................................................................23

*Mazza v. Honda Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012) ..................................................................................... *passim*

*McCann v. Foster Wheeler LLC*,
  48 Cal. 4th 68 (Cal. 2010)........................................................................................................22

*McKinniss v. General Mills, Inc.*,
  No. CV 07-2521 GAF, 2007 WL 4762172 (C.D. Cal. Sept. 18, 2007)...................................13

*McKinniss v. Sunny Delight Bevs. Co.*,
  No. CV 07-02034-RGK, 2007 U.S. Dist. LEXIS 96108 (C.D. Cal. Sept. 4, 2007)...............11

*Newcal Indus. v. Ikon Office Solution*,
  513 F.3d 1038 (9th Cir. 2008) .................................................................................................10

*Pardini v. Unilever United States, Inc.*,
  No. 13-1675 SC, 2013 WL 3456872 (N.D. Cal. July 9, 2013)......................................5, 23, 24

*Peterson v. Cellco P'ship*,
  164 Cal. App. 4th 1583 (Cal. Ct. App. 2008) .........................................................................16

*Pilgrim v. Universal Health Card, LLC,*
    660 F.3d 943 (6th Cir. 2011) ..................................................24

*Red v. Kraft Foods, Inc.,*
    No. CV 10-1028-GW, 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012) ......................12

*Rikos v. Procter & Gamble Co.,*
    No. 1:11-cv-226, 2012 WL 641946 (S.D. Ohio Feb. 28, 2012) ..................24

*Rooney v. Cumberland Packing Corp.,*
    No. 12-CV-0033-H, 2012 U.S. Dist. LEXIS 58710 (S.D. Cal. Apr. 16, 2012)...................10

*Samet v. Procter & Gamble Co.,*
    No. 5:12-CV-01891 PSG, 2013 WL 3124647 (N.D. Cal. June 18, 2013) ................6

*Sanders v. Apple, Inc.,*
    672 F. Supp. 2d 978 (N.D. Cal. 2009) ........................................23, 24

*Smith v. Ford Motor Co.,*
    462 Fed. App'x 660 (9th Cir. 2011) ..........................................7

*Staudt v. Artifex Ltd.,*
    16 F. Supp. 2d 1023 (E.D. Wis. 1998).........................................21

*Stearns v. Select Comfort Retail Corp.,*
    763 F. Supp. 2d 1128 (N.D. Cal. 2010) .......................................19

*Tietsworth v. Harley Davidson, Inc.,*
    677 N.W.2d 233 (Wis. 2004)...................................................21

*TrafficSchool.com, Inc. v. Edriver Inc.,*
    653 F.3d 820 (9th Cir. 2011) ................................................15

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003) ...............................................4, 5

*Videtto v. Kellogg USA,*
    No. 2:08-cv-01324-MCE-DAD, 2009 U.S. Dist. LEXIS 43114 (E.D. Cal. May 20,
    2009) .......................................................................10

*Viggiano v. Hansen Natural Corp.,*
    No. CV 12-10747 MMM, 2013 U.S. Dist. LEXIS 70003 (C.D. Cal. May 13, 2013).............13

*Werbel v. Pepsico, Inc.,*
    No. C 09-04456 SBA, 2010 U.S. Dist. LEXIS 76289 (N.D. Cal. July 1, 2010) ................8, 10

*Woods v. Google, Inc.,*
    889 F. Supp. 2d 1182 (N.D. Cal. 2012) .......................................21

*Young v. Johnson & Johnson,*
    No. 11-4580, 2012 WL 1372286 (D.N.J. Apr. 19, 2012).........................15

**STATUTES**

15 U.S.C. § 45(a)(1)................................................................................................7

21 U.S.C. § 321(i)...............................................................................................12

Cal. Bus. & Prof. Code §§ 17200-17210........................................................2, 7

Cal. Bus. & Prof. Code § 17500.........................................................................7

Cal. Bus. & Prof. Code § 17500 *et seq.*............................................................2

Cal. Bus. & Prof. Code §§ 17580-17581........................................................2, 7

Cal. Civ. Code §§ 1750-1785..............................................................................2

Cal. Civ. Code § 1770.........................................................................................7

Wis. Stat. § 100.18...........................................................................................2, 7

Wis. Stat. § 100.18(11)(b)(2).............................................................................21

**OTHER AUTHORITIES**

16 C.F.R. § 260.3..............................................................................................11

21 C.F.R. § 701.3..............................................................................................12

Fed. R. Civ. P. 9(b).............................................................................................4

**NOTICE OF MOTION AND BRIEF STATEMENT OF RELIEF REQUESTED TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on October 31, 2013 at 9:00 a.m., or as soon thereafter as counsel may be heard, in the United States District Court, Northern District of California, San Francisco Courthouse, Courtroom F - 15th Floor, located at 450 Golden Gate Avenue, San Francisco, CA 94102, before the Honorable Jacqueline Scott Corley, Defendants Kimberly-Clark Corporation, Kimberly-Clark Worldwide, Inc., and Kimberly-Clark Global Sales, LLC ("Defendants") will, and hereby do, respectfully move to dismiss the following causes of action contained in Plaintiffs' Dianna Jou and Jaynry Young Complaint: (1) California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750-1785 ("Count I"); (2) California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.* ("Count II"); (3) California's Environmental Marketing Claims Act ("EMCA"), Cal. Bus. & Prof. Code §§ 17580-17581 ("Count III"); (4) California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210 ("Count IV"); and (5) Wisconsin's Deceptive Trade Practices Act ("WDTPA"), Wis. Stat. § 100.18 ("Count V").

Dismissal of the Complaint in its entirety is warranted on the following grounds: (i) pursuant to Fed. R. Civ. P. 9(b) for failure to plead claims grounded in fraud with sufficient particularity, (ii) pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, and (iii) pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.  In the alternative, and pursuant to Fed. R. Civ. P. 12(f) and 23(d)(1)(D), Defendants will ask the Court to dismiss and/or strike Plaintiffs' proposed nationwide class because the claims of the putative class representatives are governed by California (not Wisconsin) law and each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which they purchased the products at issue in this case.  This Motion is based on the accompanying memorandum of points and authorities in support, Defendants' Request for Judicial Notice, the Declaration of Timothy T. Scott and accompanying exhibits, the entire record in this matter, and on such evidence as may be presented at the hearing of this Motion.

1    DATED:  September 17, 2013        KING & SPALDING LLP

2

3                               By:  /s/ *Timothy T. Scott*_____

                                    TIMOTHY T. SCOTT

4                                   GEOFFREY M. EZGAR

                                   STEPHEN B. DEVEREAUX (*pro hac vice* to be filed)

5                                   MADISON H. KITCHENS (*pro hac vice* to be filed)

6

7                                   Attorneys for Defendants

                                   KIMBERLY-CLARK CORPORATION;

8                                   KIMBERLY-CLARK WORLDWIDE, INC.;

                                   KIMBERLY-CLARK GLOBAL SALES, LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

This putative class action is premised on an implausible interpretation of the packaging of two baby products offered for sale under the Huggies® brand of Defendant Kimberly-Clark Global Sales, LLC ("Kimberly-Clark").[1]  Plaintiffs allege that the packaging for Huggies® Pure & Natural Diapers and Huggies® Natural Care Baby Wipes ("the Products") somehow led them to believe that these ***disposable*** diapers and baby wipes were made ***entirely*** of natural components, despite the fact that the Products themselves and their labels show the contrary.  In the case of the baby wipes, the label discloses each of the natural and artificial ingredients and, in the case of the diapers, the label discloses the precise components of the diapers derived from natural materials.  No reasonable consumer who actually picked up these Products and read the text on the packages could have adopted Plaintiffs' implausible interpretation.  For this reason alone, Plaintiffs' allegations fail as a matter of law and should be dismissed in their entirety.

Compounding matters, Plaintiffs seek to represent a nationwide class asserting claims under the Wisconsin Deceptive Trade Practices Act, even though both named Plaintiffs are California residents and both say they purchased the Products in California.  Under well-established law, Plaintiffs cannot extend Wisconsin consumer protection laws to themselves, much less everyone else who bought the Products outside of Wisconsin.  Indeed, Plaintiffs lack standing to assert claims on behalf of anyone outside of California.  Thus, at the very minimum, the Wisconsin claims should be dismissed.

Finally, Plaintiffs' bid to represent a nationwide class governed by Wisconsin law is invalid on the face of the Complaint because, as the Ninth Circuit recently held, "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the [purchase] took place" and "variances in state law overwhelm common

---

[1]  Although Plaintiffs have also named Kimberly-Clark Corporation and Kimberly-Clark Worldwide, Inc. as co-defendants, those entities are neither necessary nor proper parties to this suit.  The sole correct party to this litigation is Kimberly-Clark Global Sales, LLC.  The present Motion, however, is filed on behalf of all Kimberly-Clark entities named in the Complaint.  If necessary, counsel will move to dismiss the wrongly served parties at a later date.

1   issues and preclude predominance for a single nationwide class." *Mazza v. Honda Am. Honda*

2   *Motor Co.*, 666 F.3d 581, 594, 596 (9th Cir. 2012).  Accordingly, Plaintiffs' putative nationwide

3   class should be dismissed and/or stricken from the Complaint.

4   **II.   FACTUAL BACKGROUND**

5        **A.   The Named Plaintiffs' Allegations**

6             All of the crucial events comprising Plaintiffs' claims—including the alleged reliance,

7   purchase, and harm—occurred in the State of California.  Plaintiff Jou alleges that she purchased

8   Huggies® Pure & Natural Diapers and Huggies® Natural Care Baby Wipes in Alameda County,

9   California "for a couple months after her son was born in October 2011."  Compl. ¶ 10.  Plaintiff

10  Young alleges she purchased Huggies® Pure & Natural Diapers in San Mateo County,

11  California "in or around September 2011 after her daughter was born."  *Id.* ¶ 12.  Without ever

12  alleging that they read the product packaging (much less identifying what portion of such

13  packaging they read), both Plaintiffs allege that they relied on supposed representations that the

14  Products "would provide natural, relatively safe, environmentally sound, and (in the case of the

15  diapers) organic alternatives to traditional diaper and wipe offerings."  *Id.* ¶¶ 11, 13.  They

16  further allege that they would not have purchased the respective Products if they had known "the

17  truth" about their characteristics.  *Id.*  The Complaint contains no other details regarding the

18  named Plaintiffs or their purchases.

19       **B.   The Five Causes of Action and Prayer for Relief**

20            Although Plaintiffs have no apparent connection with Wisconsin, they nonetheless seek

21  to represent a nationwide class asserting claims under the Wisconsin Deceptive Trade Practices

22  Act ("WDTPA"), Wis. Stat. § 100.18.  *See* Compl. ¶¶ 91-96.  Presumably in the alternative, they

23  also purport to represent a "California Subclass" for alleged violations of California law.[2]

---

24

25  [2] *See* Compl. ¶¶ 59-69 (California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code
     §§ 1750-1785 ("Count I")); Compl. ¶¶ 70-73 (California's False Advertising Law ("FAL"), Cal.
26  Bus. & Prof. Code § 17500 *et seq.* ("Count II")); Compl. ¶¶ 74-78 (California's Environmental
     Marketing Claims Act ("EMCA"), Cal. Bus. & Prof. Code §§ 17580-17581 ("Count III"));
27  Compl. ¶¶ 79-90 (California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§
     17200-17210 ("Count IV")).

28

With respect to the diapers, Plaintiffs allege that Kimberly-Clark marketed the product "as *entirely* pure and natural." *Id.* ¶ 29 (emphasis added). Plaintiffs, however, provide no support for this allegation: in fact, the product packaging nowhere states that the diaper is cloth-based or made completely of organic materials. Plaintiffs also allege that the green coloring and leaf designs on the packaging provide misleading representations of environmental benefits. *See id.* ¶¶ 23, 43. But, as Plaintiffs acknowledge, the diapers contain "organic cotton on the outside of the diaper" and "a liner that includes some materials that are potentially less harmful to the environment than materials used in traditional diapers." *Id.* ¶¶ 27, 29.

Indeed, in prominent portions of the product packaging that Plaintiffs fail to include in their Complaint, the following disclosures are made:

- "Soft Outer Cover With Organic Cotton,"
- "Liner Includes Renewable Materials,"
- "Aloe & Vitamin E,"
- "Hypoallergenic,"
- "Fragrance Free," and
- "Less Inks."

*See* Defs.' Req. for Judicial Notice, Ex. A (attaching page proofs of product labeling for Huggies® Pure & Natural Diapers). In other words, the product packaging specifically indicates which components of the diapers distinguish them from conventional diapers and otherwise clearly communicates to consumers what it is about the diapers that supports calling them "Pure and Natural."

As for the baby wipes, Plaintiffs allege that the words "Natural Care" in the product packaging somehow convey a clear and precise message: that the product is constructed ***exclusively*** from "natural" ingredients. *See* Compl. ¶ 36. Plaintiffs do not, however, explain how words as amorphous and vague as "Natural Care" could possibly impart such a specific meaning. Plaintiffs further allege that, because the baby wipes contain at least two substances that are not natural (sodium methylparaben and methylisothiazolinone), the "Natural Care" statement is false and misleading. *See id.* ¶¶ 34, 36. Notably, both of the substances identified

by Plaintiffs as non-natural are clearly disclosed in the ingredient list contained on the product packaging.  *See* Defs.' Req. for Judicial Notice, Ex. B (attaching page proofs of product labeling for Huggies® Natural Care Baby Wipes).  Although Plaintiffs allege that these ingredients are "hazardous," they make no allegations that any user of Huggies® Natural Care Baby Wipes has ever been harmed in any way by these ingredients or that the quantities found in the baby wipes are sufficient to be of even hypothetical concern to a reasonable consumer.  As with the diapers, Plaintiffs complain that the product packaging for the baby wipes includes "green coloring and leaves," which they claim is somehow deceptive.  Compl. ¶ 33.  But Plaintiffs do not allege that the baby wipes are devoid of such natural ingredients—nor could they, as a simple perusal of the ingredient list reveals that the baby wipes contain "water" and "aloe barbadensis leaf extract," among other natural substances.

In short, Plaintiffs have not alleged that the packaging of either of the Products contains any false statement.  Because they claim that the product packaging is somehow *misleading*, however, Plaintiffs say they are entitled to a vast array of remedies, including compensatory and punitive damages, restitution, disgorgement, costs, attorneys' fees, and injunctive relief.

## III.    ARGUMENT

### A.    All of Plaintiffs' Claims Are Fraud-based, and They Have Not Pleaded Any of Them with the Requisite Particularity to Satisfy Rule 9(b).

The gravamen of Plaintiffs' Complaint is that "Defendant's false, deceptive, and misleading marketing caused consumers to purchase Defendant's Products believing they were natural, environmentally sound, and relatively safe when, in fact, they were not."  Compl. ¶ 95.  Plaintiffs allege that their claims are premised upon "fraudulent" conduct.  *See, e.g.*, *id.* ¶¶ 51, 80, 82-83, 85.  Where claims sound in fraud, a complaint must "state with particularity the circumstances constituting the fraud or mistake."  Fed. R. Civ. P. 9(b).  "Rule 9(b)'s heightened pleading standards apply equally to claims for violation of the UCL, FAL, or CLRA that are grounded in fraud."  *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 967 (S.D. Cal. 2012) (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-06 (9th Cir. 2003); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009)).  Plaintiffs'

EMCA claim is also subject to Rule 9(b) because it is based on the same "unified course of fraudulent conduct" underlying all of Plaintiffs' claims. *Vess*, 317 F.3d at 1103. To satisfy Rule 9(b), Plaintiffs must identify the "who, what, when, where, and how" of the alleged misconduct. *See Kearns*, 567 F.3d at 1124. Plaintiffs have come nowhere close to satisfying this standard.

Rather than offering the required facts detailing their own purchasing decisions, Plaintiffs rely almost exclusively on conclusory assertions regarding what a generic "reasonable consumer" would expect and rely upon. *See, e.g.*, *id.* ¶¶ 28, 30, 36, 46, 83. These blanket assertions are the very antithesis of the particularity required by Rule 9(b).

Indeed, neither of the named Plaintiffs provides any details about ***what*** representations were made to them or ***how*** they relied upon those representations in purchasing the Products. In fact, neither named Plaintiff alleges they even read the product packaging. This deficiency alone is sufficient grounds to warrant dismissal of their false advertising claims. *See Pardini v. Unilever United States, Inc.*, No. 13-1675 SC, 2013 WL 3456872, at *8 (N.D. Cal. July 9, 2013) ("Plaintiff has not pled that she ever looked at the nutrition panel. As such, it is implausible that she was deceived by its lack of disclosures.").

Furthermore, if they did read the product packaging, they do not indicate which portions of the packaging they read, nor do they identify which of these representations they considered material in making their purchasing decisions. It is even unclear *which* product packaging the named Plaintiffs were exposed to. Though the Complaint contains images of product packaging, Plaintiffs nowhere allege that the labels attached were the ones they saw when they purchased the Products. *See* Compl. ¶¶ 23, 33.

There is also a complete mismatch between the general allegations of the Complaint and the cursory allegations of the named Plaintiffs. For instance, the Plaintiffs allege that they paid an "excessive premium price" for the Products, though they do not provide any details about what they actually paid. Instead, they quote prices listed on Wal-Mart's website (*id.* ¶ 39), even though both named Plaintiffs allegedly bought the Products at Target stores (*id.* ¶¶ 10, 12). Plaintiffs complain, in part, about substances allegedly contained in Huggies® Natural Care Baby Wipes "until around June 2010." *Id.* ¶ 35. Yet neither named Plaintiff alleges they

purchased either product until the fall of 2011.  *See id.* ¶¶ 10, 12.  Furthermore, the Complaint

alleges that Kimberly-Clark's "marketing, advertising, packaging, and labeling of Products is

likely to deceive reasonable consumers."  *Id.* ¶ 83.  However, neither named Plaintiff indicates

whether they relied upon advertising or other representations not contained in the packaging

when they purchased the Products.  In fact, the Complaint provides no information about any

marketing or advertising campaigns undertaken by Kimberly-Clark, let alone how

representations made during such campaigns were materially false, deceptive, or misleading.

Moreover, neither named Plaintiff identifies ***how*** they were deceived by the Products nor

***how*** they relied upon the Products' representations in making their purchases.  To state a claim

under the UCL, FAL, and CLRA, "the plaintiff must show that a reasonable consumer would be

deceived by the packaging ***and*** that plaintiff *actually relied* on the packaging and was deceived."

*Samet v. Procter & Gamble Co.*, No. 5:12-CV-01891 PSG, 2013 WL 3124647, at *8 (N.D. Cal.

June 18, 2013) (emphasis added).  In *Samet*, even though the court declined to hold as a matter

of law that "0g Trans Fat" would not mislead a reasonable consumer, the court nevertheless

dismissed the plaintiffs' California consumer protection claims because "Plaintiffs ha[d] not

alleged in the detail required by Rule 9(b) *how Plaintiffs were actually misled*."  *Id.* (emphasis

added).  Similarly, Plaintiffs here say nothing about how *they* were "actually misled."  Nor do

they provide any detail about how they learned the "truth" about the Kimberly-Clark products or

what products they switched to after they stopped buying the Kimberly-Clark products.  And, of

course, they do not identify the products they would have purchased (or the prices they would

have paid) had they always known the "truth" about the Kimberly-Clark products.

In sum, although the Complaint contains unsupported allegations about what a

"reasonable consumer" would think and do, it sets forth practically no details concerning how

the named Plaintiffs acted, what they saw, or how they were actually misled.  Such threadbare

allegations do not pass muster under Rule 9(b).

## B.  Plaintiffs' Claims Are Facially Implausible Under Rule 12(b)(6).

Even if the Complaint were sufficient under Rule 9(b), which it is not, it still fails to

create "a reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft*

1   *v. Iqbal*, 556 U.S. 662, 678 (2009).  To survive a motion to dismiss, the "[f]actual allegations

2   must be enough to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v.*

3   *Twombly*, 550 U.S. 544, 555 (2007).  Stated differently, the Complaint must plead "enough facts

4   to state a claim for relief that is plausible on its face."  *Id*. at 570.  "Threadbare recitals of the

5   elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*,

6   662 U.S. at 679.

7           Turning to the claims themselves, California's Consumer Legal Remedies Act prohibits

8   "unfair methods of competition and unfair or deceptive acts or practices."  Cal. Civ. Code §

9   1770.  California's False Advertising Law prohibits any "unfair, deceptive, untrue, or misleading

10  advertising."  Cal. Bus. & Prof. Code § 17500.  California's Environmental Marketing Claims

11  Act prohibits "any untruthful, deceptive, or misleading environmental marketing claim."  *Id*. §

12  17580.5.  An "environmental marketing claim" is defined as "any claim contained in the 'Guides

13  for the Use of Environmental Marketing Claims' published by the Federal Trade Commission."[3]

14  *Id*.  California's Unfair Competition Law prohibits any "unlawful, unfair or fraudulent business

15  act or practice."  *Id*. § 17200.  "An act or practice is unfair under the UCL if the consumer injury

16  is substantial, is not outweighed by any countervailing benefits to consumers or to competition,

17  and is not an injury the consumers themselves could reasonably have avoided."  *Smith v. Ford*

18  *Motor Co.*, 462 Fed. App'x 660, 665 (9th Cir. 2011) (quotation marks omitted).  Finally,

19  Wisconsin's Deceptive Trade Practices Act prohibits advertisements or representations that are

20  "untrue, deceptive or misleading."  Wis. Stat. § 100.18.

21          Although the issue of whether a product's packaging is deceptive sometimes presents a

22  question of fact, this Court has held that "where a court can conclude *as a matter of law* that

23  members of the public are not likely to be deceived by the product packaging, dismissal is

24  appropriate."  *Werbel v. Pepsico, Inc.*, No. C 09-04456 SBA, 2010 U.S. Dist. LEXIS 76289, at

25

26  _____
    [3]  The "Guides for the Use of Environmental Marketing Claims"—commonly known as the
    "Green Guides"—are the FTC's administrative, non-binding interpretation of Section 5 of the
27  Federal Trade Commission Act, 15 U.S.C. § 45(a)(1) (1988), as applied to environmental
    marketing.  Generally speaking, they are designed to help businesses understand how to market
28  products as environmentally beneficial without misleading consumers.

1   *8-9 (N.D. Cal. July 1, 2010) (emphasis added).  In false advertising cases like the one presented

2   here, "the Court can properly make this determination and resolve such claims based on its

3   review of the product packaging" because "'the primary evidence in a false advertising case is

4   the advertising itself.'"  *Hairston v. South Beach Bev. Co.*, No. CV 12-1429-JFW, 2012 U.S.

5   Dist. LEXIS 74279, at *11 (C.D. Cal. May 18, 2012) (quoting *Brockey v. Moore*, 107 Cal. App.

6   4th 86, 100 (2003)).  Moreover, such claims are assessed under an objective standard: namely,

7   that of a *reasonable* consumer.  *See Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)

8   ("[T]he false or misleading advertising and unfair business practices claim must be evaluated

9   from the vantage of a reasonable consumer." (citation omitted)); *Lavie v. Procter & Gamble Co.*,

10  105 Cal. App. 4th 496, 506-07 (Cal. Ct. App. 2003) ("[U]nless the advertisement targets a

11  particular disadvantaged or vulnerable group, it is judged by the effect it would have on a

12  reasonable consumer.").  Under this standard, Plaintiffs "must show that members of the public

13  are likely to be deceived."  *Freeman*, 68 F.3d at 289.  California courts have observed that the

14  phrase "'[l]ikely to deceive' implies more than a mere possibility that the advertisement might

15  conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.

16  Rather, the phrase indicates that the ad is such that it is probable that a significant portion of the

17  general consuming public or of targeted consumers, acting reasonably in the circumstances,

18  could be misled."  *Lavie*, 105 Cal. App. 4th at 508.

19      Here, no reasonable consumer could mistake Huggies® Pure & Natural Diapers as

20  anything other than what they are: diapers with both natural and synthetic materials.  Similarly,

21  no reasonable consumer would conclude that Huggies® Natural Care Baby Wipes are entirely

22  composed of natural ingredients—they neither purport to be, nor are any of the non-natural

23  substances hidden on the product label.  Plaintiffs thus seek to impose a "credulous consumer"

24  standard, rather than the reasonable consumer standard adopted by the California statutes.  *See*

25  *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1304 (Cal. Ct. App. 2011) (stating that the

26  standard is not assessed from the standpoint of an "*unwary*" or "least sophisticated consumer").

27

28

1

            1.      Huggies® Pure & Natural Diapers

2

        Plaintiffs contend that Kimberly-Clark marketed its diaper product "as entirely pure and

3   natural."  Compl. ¶ 29.  This is simply untrue.  Nowhere on the diaper packaging does Kimberly-

4   Clark state or even suggest that the diaper is made "entirely" of natural products.  For a

5   consumer to be misled by the Huggies® Pure & Natural Diapers packaging, they would have to

6   commit the same linguistic error as Plaintiffs: *i.e.*, convert the phrase "Pure & Natural" into

7   "***Only*** Pure & Natural," "***All*** Pure & Natural," or "***100%*** Pure & Natural."

8       A recent opinion in the Southern District of California is highly instructive on this point.

9   In *Astiana v. Kashi Co.*, No. 3:11-CV-01967-H, 2013 U.S. Dist. LEXIS 108445 (S.D. Cal. July

10  30, 2013), plaintiffs brought claims under the UCL, FAL, and CLRA alleging that the defendant

11  marketed various food products with labels such as "All Natural" or "Nothing Artificial."  *Id.* at

12  *5-6.  The plaintiffs alleged, however, that certain ingredients or processes used to manufacture

13  the products were synthetic.  *Id.* at *5.  The plaintiffs further alleged that they purchased the

14  products because of these representations and that they would have paid less or purchased other

15  products had they realized those representations were false.  *Id.* at *6.  The court distinguished

16  the products containing the words "All Natural" from those containing the words "Nothing

17  Artificial":  "Unlike the phrase 'All Natural,' the representation 'Nothing Artificial' has a clearly

18  ascertainable meaning; namely, that the product contains no artificial or synthetic ingredients."

19  *Id.* at *27.  The court thus found that the claims concerning the phrase "All Natural" were not

20  suitable for class certification because the plaintiffs "fail[ed] to sufficiently show that 'All

21  Natural' has any kind of uniform definition among class members, that a sufficient portion of

22  class members would have relied to their detriment on the representation, or that Defendant's

23  representation of 'All Natural' in light of the presence of the challenged ingredients would be

24  considered to be a material falsehood by class members."  *Id.* at *40.

25      The situation here is even more categorical: as explained above, the product packaging

26  does not purport to provide the consumer with an "*All* Pure & Natural" diaper, much less a

27  "Nothing Artificial" diaper.  Simply put, the phrase "Pure & Natural" is not an objective term

28  with uniform and well-defined meanings.  Instead, it is precisely the type of "[g]eneralized,

1  vague, and unspecified assertions [that] constitute 'mere puffery' upon which a reasonable

2  consumer could not rely." *Annunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1139 (C.D. Cal.

3  2005).  Puffery is not actionable under the UCL, FAL, or CLRA.  *Id.*; s*ee also Haskell v. Time,*

4  *Inc.*, 857 F. Supp. 1392, 1399 (E.D. Cal. 1994) ("The distinguishing characteristics of puffery are

5  vague, highly subjective claims as opposed to specific, detailed factual assertions."); *Newcal*

6  *Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008) ("[A] statement that is

7  quantifiable, that makes a claim as to the 'specific or absolute characteristics of a product,' may

8  be an actionable statement of fact while a general, subjective claim about a product is non-

9  actionable puffery.").

10         A recent case in the Southern District of California provides a good illustration of the

11  inactionable nature of puffery.  In *Rooney v. Cumberland Packing Corp.*, No. 12-CV-0033-H,

12  2012 U.S. Dist. LEXIS 58710 (S.D. Cal. Apr. 16, 2012), the plaintiffs argued that the product

13  Sugar in the Raw® was misleading because a significant portion of the general consuming public

14  would interpret the words "in the Raw" to connote that the product was "raw, unprocessed, and

15  unrefined."  *Id.* at *10.  The court dismissed plaintiffs' complaint under Rule 12(b)(6), holding

16  that "a reasonable consumer could not be led to believe that Sugar in the Raw® contains

17  unprocessed and unrefined sugar."  *Id.* at *11.  The court explained that the words "unprocessed"

18  and "unrefined" did not appear on the product packaging, and the label clearly disclosed that the

19  product was turbinado sugar.  *Id.* at *10-11; *see also Werbel*, 2010 U.S. Dist. LEXIS 76289, at

20  *13 (holding that no reasonable consumer would be led to believe that "Cap'n Crunch's Crunch

21  Berries" contained real fruit berries, despite the use of the word "berries" in the product name);

22  *Videtto v. Kellogg USA*, No. 2:08-cv-01324-MCE-DAD, 2009 U.S. Dist. LEXIS 43114, at *8-9

23  (E.D. Cal. May 20, 2009) (dismissing UCL, FAL, and CLRA claims where "Froot Loops" cereal

24  packaging could not reasonably be interpreted to imply that the product contained actual fruit).

25         Here, even if an eccentric consumer unreasonably attached a specific meaning to the

26  amorphous phrase "Pure & Natural," the product packaging clears up any possible

27  misconception by identifying which components of the diaper are natural.  Specifically, the

28  packaging clearly discloses that the diaper contains a "Soft Outer Cover With Organic Cotton,"

along with "Aloe & Vitamin E" and a "Liner [that] Includes Renewable Materials."[4]  Defs.' Req.

for Judicial Notice, Ex. A.  For Plaintiffs' arguments to prevail, consumers would have to read

the "Pure & Natural" description in total isolation from the rest of the product packaging.

Kimberly-Clark would be precluded from touting *any* of the green features of its product,

because doing so might imply to some consumers that the *entire* product consists of natural

ingredients.  This viewpoint, in addition to being nonsensical, is utterly contradicted by

California case law.  *See Henderson v. Gruma Corp.*, No. CV 10-04173 AHM, 2011 U.S. Dist.

LEXIS 41077, at *33-34 (C.D. Cal. Apr. 11, 2011) (concluding as a matter of law that the phrase

"With Garden Vegetables" was unlikely to deceive a reasonable consumer where "[t]he labeling

statement does not claim a specific *amount* of vegetables in the product, but rather speaks to their

presence in the product, which is not misleading"); *Hairston*, 2012 U.S. Dist. LEXIS 74279, at

*13 (dismissing false advertising claims where the "label d[id] not simply state that it is 'all

natural' without elaboration or explanation" and holding that "Plaintiff's selective interpretation

of individual words or phrases from a product's labeling cannot support a CLRA, FAL, or UCL

claim"); *McKinniss v. Sunny Delight Bevs. Co.*, No. CV 07-02034-RGK, 2007 U.S. Dist. LEXIS

96108, at *12 (C.D. Cal. Sept. 4, 2007) (holding plaintiffs failed to state a cognizable claim

where, *inter alia*, "the depiction of fruit on a product label is not a specific affirmation that a

---

[4]  Plaintiffs rely heavily on the FTC's "Green Guides" in support of their allegations.  The Green
Guides provide various examples of representations in product marketing that could potentially
be deceptive.  Notably, the Green Guides provide an example that is remarkably germane to the
issues here:

> Example 2:  An advertiser claims that "our plastic diaper liner has the most
> recycled content."  The diaper liner has more recycled content, calculated as
> a percentage of weight, than any other on the market, although it is still well
> under 100%.  The claim likely conveys that the product contains a significant
> percentage of recycled content and has significantly more recycled content
> than its competitors.  If the advertiser cannot substantiate these messages, the
> claim would be deceptive.

16 C.F.R. § 260.3.  The claim in the example is not mere puffery because it conveys a specific or
absolute characteristic of the product.  By contrast, the representation in Huggies® Pure &
Natural Diapers—that the "Liner Includes Renewable Materials"—does not suggest any amount
of renewable materials or imply that the renewable materials contained in its diaper are more
extensive than those contained in a competitor brand.  The only way the statement could be
deceptive is if the diaper liners did not, in fact, contain renewable materials.  Plaintiffs make no
such allegation.

1   product contains a particular amount of fruit"); *see also Red v. Kraft Foods, Inc.*, No. CV 10-

2   1028-GW, 2012 WL 5504011, at *4 (C.D. Cal. Oct. 25, 2012) (dismissing claims under the

3   UCL, FAL, and CLRA where "it strain[ed] credulity to imagine that a reasonable consumer will

4   be deceived into thinking a box of crackers is healthful or contains huge amounts of vegetables

5   simply because there are pictures of vegetables and the true phrase 'Made with Real Vegetables'

6   on the box"); *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 475 Fed. App'x 113, 115 (9th Cir.

7   2012) (holding it was implausible that a reasonable consumer would interpret the phrases

8   "Original Sundae Cone," "Original Vanilla," and "Classic" to suggest that the modern Drumstick

9   ice cream product "is identical in composition to its prototype" where none of the alleged

10  misrepresentations modified "recipe," "ingredients," or "1928").

11          2.      Huggies® Natural Care Baby Wipes

12          Plaintiffs' allegations that the Huggies® Natural Care Baby Wipes contain deceptive

13  representations are equally infirm.  As with the phrase "Pure & Natural," the phrase "Natural

14  Care" is not an actionable misrepresentation under the UCL, FAL, or CLRA because it is

15  nothing more than generalized, vague, and nonspecific puffery.  No reasonable consumer could

16  be misled into thinking that the Huggies® Natural Care Baby Wipes consisted *entirely* of natural

17  ingredients.  Nowhere on the product labeling is such a claim made.

18          Plaintiffs allege that "Huggies Natural Wipes contain two substances, sodium

19  methylparaben and methylisothiazolinone, that are not natural and that are hazardous."  Compl. ¶

20  34.  These ingredients are preservatives designed to prevent the natural fibers in the baby wipes

21  from molding, and they are both plainly disclosed on the product packaging a mere three inches

22  from the "Natural Care" representation, along with the product's natural ingredients (such as aloe

23  barbadensis leaf extract).[5]  *See* Defs.' Req. for Judicial Notice, Ex. B.  Thus, even under a

24

25  _____

    [5]  Huggies® Natural Care Baby Wipes are regulated as a cosmetic under the federal Food, Drug,
26  and Cosmetic Act ("FDCA").  *See* 21 U.S.C. § 321(i) (defining "cosmetics" as "articles intended
    to be rubbed, poured, sprinkled, or sprayed on, introduced into, or otherwise applied to the
27  human body or any part thereof for *cleansing*, beautifying, promoting attractiveness, or altering
    the appearance") (emphasis added).  As such, the product packaging for the baby wipes must
28  contain an ingredients list.  *See* 21 C.F.R. § 701.3 (providing for the disclosure of ingredients on

counterfactual scenario where the phrase "Natural Care" possessed a clear and ascertainable meaning that would be apprehended by the reasonable consumer, that representation is not made in a vacuum. Rather, Kimberly-Clark provided additional, qualifying information by which to assess the "Natural Care" representation. These disclosures resolve any doubts and demonstrate that Plaintiffs' claims fail as a matter of law: "In cases where a product's front label is accurate and consistent with the statement of ingredients, courts routinely hold that no reasonable consumer could be misled by the label, because a review of the statement of ingredients makes the composition of the [product] clear." *Viggiano v. Hansen Natural Corp.*, No. CV 12-10747 MMM, 2013 U.S. Dist. LEXIS 70003, at *37 (C.D. Cal. May 13, 2013).

For example, in *Hairston v. South Beach Beverage Company*, the plaintiffs contended that the defendant's Lifewater beverage was deceptive because, though the product was marketed as "All Natural," it contained synthetic vitamins. 2012 U.S. Dist. LEXIS 74279, at *3. The Central District of California held, however, that "no reasonable consumer would read the 'all natural' language as modifying the 'with vitamins' language and believe that the added vitamins are suppose[d] to be 'all natural vitamins.'" *Id.* at *14. The court further commented that "to the extent there is any ambiguity, it is clarified by the detailed information contained in the ingredient list, which explains the exact contents of Lifewater." *Id.*; *see also McKinniss v. General Mills, Inc.*, No. CV 07-2521 GAF, 2007 WL 4762172, at *4 (C.D. Cal. Sept. 18, 2007) ("[A]ny reasonable consumer would be put on notice of the product's contents simply by doing sufficient reading of the ingredient list."); *Freeman*, 68 F.3d at 287 ("Any ambiguity that [plaintiff] would read into any particular statement is dispelled by the promotion as a whole.").

### 3. Relevant California Precedent on "Green Marketing" Claims Further Supports Dismissal

California's leading case on "green" marketing claims is also highly persuasive authority demonstrating why Plaintiffs' allegations fail to state a viable claim. In *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295 (Cal. Ct. App. 2011), the plaintiff alleged that the product labels for Fiji

cosmetic product packaging). Notably, Plaintiffs do not allege that Kimberly-Clark failed to comply with any FDCA requirements.

bottled water represented that Fiji water was environmentally superior to other bottled water.  As

here, the plaintiff brought claims under the UCL, FAL, and CLRA based on alleged violations of

the Federal Trade Commission's non-binding "Guides for the Use of Environmental Marketing

Claims," incorporated as law in California under its Environmental Marketing Claims Act.  *Hill*

confirms that Plaintiffs' claims here flunk the "reasonable consumer" test.

In *Hill*, the plaintiff contended: (1) that the defendant misled consumers by referring to its

product as "FijiGreen" and (2) that the "conspicuous placement of a 'Green Drop' seal of

approval label on the front of the product . . . look[ed] similar to environmental 'seals of

approval' . . . by several independent, third party organizations."  *Id*. at 1299.  Similarly,

Plaintiffs allege that Kimberly-Clark's products mislead consumers by including package

designs with "green coloring, trees, and leaves."  Compl. ¶ 23; *see also id*. ¶ 33.  Just like the

plaintiff in *Hill*, Plaintiffs allege that they relied on representations that the Products were

"environmentally sound . . . product alternatives to traditional offerings in the same product

category" (*id*. ¶ 46), that they paid a premium based on these environmental representations (*id*.

¶ 85), and that they never would have purchased the products had they known the truth (*id*. ¶¶

11, 13).  But, as the *Hill* court observed, "the FTC guides do not prohibit … 'touting' a product's

'green' features."  195 Cal. App. 4th at 1305.  The court held that the plaintiff's allegations did

not amount to a violation of the FTC's "Green Guides" where, among other things, the label did

not make express representations of environmental superiority and did not suggest that an

independent source rated the product's environmental soundness.  *Id*. at 1306.

The same is true here.  If anything, the Huggies® products at issue here are even less

likely to mislead.  For instance, although Plaintiffs complain that there are merely "superficial

differences" between the Huggies® products and traditional products (Compl. ¶ 46), *Hill*

involved a homogeneous substance much less likely to reflect true product differentiation.

Moreover, any natural and/or environmental qualities of Fiji water would be difficult (if not

impossible) for a consumer to discern themselves, meaning that any alleged misrepresentation

would remain undetected.  By contrast, consumers of Huggies® baby wipes or diapers would

literally be able to feel the difference immediately—by touching the organic cotton outer layer,

for instance.  And, in any event, Plaintiffs concede that "the FTC Green Guides do not specifically address the terms 'organic' and 'natural.'"  Compl. ¶ 45.  Thus, there is simply no support for Plaintiffs' position that the Green Guides suggest that either the "Pure & Natural" or "Natural Care" representations are misleading.

For all of these reasons, Plaintiffs have failed to plausibly allege that a reasonable consumer would be misled by the Products and, thus, their claims should be dismissed.

### C. Plaintiffs Lack Standing to Seek Restitution Because They Fail to Allege the Products Did Not Perform as Advertised or That They Suffered Any Cognizable Injury Under Article III.

To satisfy the three requirements of Article III standing, a plaintiff must show that: (1) the plaintiff has suffered a concrete and particularized injury-in-fact that is not conjectural or hypothetical, (2) the injury is fairly traceable to the challenged conduct of the defendant, and (3) the injury is likely to be redressed by a favorable ruling.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  To establish standing for their California statutory claims, Plaintiffs must satisfy additional requirements: "California's unfair competition law defines 'injury in fact' more narrowly than does Article III," requiring a plaintiff to prove "a pecuniary injury and 'immediate' causation."  *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 825 & n.1 (9th Cir. 2011).

#### 1. Huggies® Pure & Natural Diapers

Plaintiffs contend they were injured because they paid "an excessive premium price" (Compl. ¶ 85) and/or would not have purchased the diapers had they known "the truth" about their attributes (*id*. ¶¶ 11, 13).  Yet, Plaintiffs' conclusory allegation of a "price premium" is not a talismanic incantation capable of conferring Article III standing to any claim.  *See Young v. Johnson & Johnson*, No. 11-4580, 2012 WL 1372286, at *4 (D.N.J. Apr. 19, 2012) (even though plaintiff alleged that he paid a price premium, he lacked Article III standing because he did not "set forth allegations as to *how* he paid a premium for [the product] or received a product that did not deliver the advertised benefits" (emphasis added)).  The same is true of their equally conclusory assertion that they would not have bought the product at all had they known the "truth."  Plaintiffs must offer more than bald conclusions to establish the required injury-in-fact.

Plaintiffs do not, for example, allege that the "premium" they allegedly paid reflects a price differential between Huggies®-brand products and comparable environmentally-conscious competitor diapers.  Rather, the only "premium" alleged by Plaintiffs is the price differential between Huggies® Pure & Natural Diapers and traditional Huggies® diapers.  *See* Compl. ¶ 39 (citing "a premium of nearly 30%").  But "[w]hen the plaintiff seeks to value the product received by means of the market price of another, comparable product, that measure cannot be awarded without evidence that the proposed comparator is actually a product of comparable value to what was received."  *In re Vioxx*, 180 Cal. App. 4th 116, 131 (Cal. Ct. App. 2009).  The problem for Plaintiffs is that their own allegations establish that Huggies® Pure & Natural Diapers are not comparable to traditional Huggies® diapers because they have (1) an organic cotton outer layer and (2) environmentally-friendly lining materials.  *See* Compl. ¶¶ 26-29.  In other words, the alleged premium paid by Plaintiffs reflects a price disparity between two products with ***qualitatively different attributes***.  Accordingly, under the facts alleged, the comparator product proposed by Plaintiffs fails as a matter of law because it is simply not comparable.  *See Vioxx*, 180 Cal. App. 4th at 131.

Moreover, the only plausible inference that arises from the alleged facts is that Plaintiffs received the benefit of their bargain (and suffered no economic injury) because they obtained the "premium" product for which they bargained at the bargained for price.  *See Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1591 (Cal. Ct. App. 2008) (dismissing UCL claim) ("[Plaintiffs] do not allege they could have bought the *same* insurance for a lower price either directly from the insurer or from a licensed agent. Absent such an allegation, plaintiffs have not shown they suffered actual economic injury. Rather, they received the benefit of their bargain, having obtained the bargained for insurance at the bargained for price." (emphasis added)).

Plaintiffs also do not allege the goods were tainted or caused physical injury.  Nor do they allege the diapers did not provide the expected performance or functioned less well than advertised.  As cases in this Court and in other jurisdictions confirm, such allegations do not rise to the level of an injury-in-fact for standing purposes.  *See, e.g.*, *Boysen v. Walgreen Co.*, No. C 11-06262 SI, 2012 U.S. Dist. LEXIS 100528, at *23-24 (N.D. Cal. July 19, 2012) (no Article III

standing where "plaintiff does not allege that the products caused him any physical injury . . . does not allege that the products function less well than advertised . . . [and] does not allege that had defendant's [product] been differently labeled, he would have purchased an alternative"); *Herrington v. Johnson & Johnson Consumer Cos.*, No. C 09-1597 CW, 2010 U.S. Dist. LEXIS 90505, at *17-18  (N.D. Cal. Sept. 1, 2010) (even though plaintiffs alleged they never would have purchased products containing potential carcinogens, there was no "economic injury" sufficient to confer standing because plaintiffs pled no facts "to show that Defendants' products are defective or otherwise unfit for use" or that they "otherwise did not enjoy the benefit of their bargain"); *In re Fruit Juice Prods. Mktg. & Sales Practices Litig.*, 831 F. Supp. 2d 507, 512 (D. Mass. 2011) (no economic injury where "Plaintiffs paid for fruit juice, and they received fruit juice, which they consumed without suffering harm"); *Koronthaly v. L'Oreal USA, Inc.*, 374 Fed. App'x 257, 259 (3d Cir. 2010) (purchaser of lead-containing lipstick failed to demonstrate a concrete injury-in-fact "[a]bsent any allegation that she received a product that failed to work for its intended purpose or was worth objectively less than what one could reasonably expect").

### 2.    Huggies® Natural Care Baby Wipes

Similarly, Plaintiffs' claims for restitution concerning Huggies® Natural Care Baby Wipes also fail for lack of standing.  Only Plaintiff Jou alleges she purchased Huggies® Natural Care Baby Wipes, and she does not allege that the Huggies® Natural Care Baby Wipes failed to fulfill their intended use.  Although she complains that the product contains two allegedly "not natural" and "hazardous" substances (Compl. ¶ 34), she does not allege that any ill effects or injury resulted from either of those ingredients (which are clearly disclosed on the product packaging).  Plaintiffs do not cite any report or study linking the use of Huggies® Natural Care Baby Wipes to any hazards.  These bare allegations do not demonstrate an injury-in-fact.

Plaintiff Jou also baldly alleges that she paid an "excessive premium price" of an undetermined amount for the baby wipes.  *See id*. ¶ 85.  She offers no allegations at all as to what the price premium was, what alternative baby wipes (or other product) she would have bought but for the alleged fraud, or how much less she would have paid.  Nor does she contend that the

baby wipes she bought failed to deliver on the *actual and specific* promises made on the labeling; namely, that the baby wipes contained "aloe & vitamin E" (and other natural ingredients), were "soft & sensitive," were "Fragrance Free," and were "hypoallergenic." *See* Defs.' Req. for Judicial Notice, Ex. B.  As with the diapers, the only reasonable inference that arises from the allegations in the Complaint is that she received baby wipes with exactly the promised attributes. That she now wishes the baby wipes had additional features they never claimed to have makes no difference.  She has pleaded no pecuniary loss capable of establishing Article III standing. *See Herrington*, 2010 U.S. Dist. LEXIS 90505, at *17-18 (plaintiffs lacked standing where they pled no facts establishing they did not receive the benefit of their bargain).

> ### D.   Plaintiffs Also Lack Standing for Injunctive Relief Because They Are Not Continuing Purchasers and Are Not Realistically Threatened by Repetition of the Alleged Violations.

The U.S. Supreme Court has held that "[p]ast exposure to illegal conduct does not itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects." *Lujan*, 504 U.S. at 564 (internal quotations omitted). Relatedly, a class action plaintiff "cannot rely on the prospect of future injury to unnamed class members if they cannot establish they have standing to seek injunctive relief." *Castagnola v. Hewlett-Packard Co.*, No. C 11-05772 JSW, 2012 WL 2159385, at *5 (N.D. Cal. June 13, 2012).

Plaintiffs allege that, if they knew "the truth" about Huggies® Pure & Natural Diapers or Huggies® Natural Care Baby Wipes, they would not have purchased the Products.  *See* Compl. ¶¶ 11, 13.  Despite now claiming to know "the truth," and vowing never to purchase the Products again, Plaintiffs allege that "[t]he unfair and deceptive acts and practices of Defendant . . . present *a serious threat* to Plaintiffs . . . ."  *Id.* ¶ 68 (emphasis added).  And although this allegation is facially absurd, they seek injunctive or equitable relief to protect themselves from this nonexistent "threat."  *See id.* ¶¶ 66, 73, 78, 90.

Plaintiffs' allegations are self-defeating.  If Plaintiffs would not have purchased the Products had they known "the truth" they now claim to know, then it is entirely implausible that Kimberly-Clark's acts and practices "present a serious threat" to their interests.  To the contrary,

1    their alleged "injury" is complete.  The Ninth Circuit has held that plaintiffs who seek injunctive

2    relief "must demonstrate that they are realistically threatened by a *repetition* of the violation."

3    *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006) (quotation marks omitted).  Plaintiffs thus

4    lack standing to pursue injunctive relief because they do not allege that they continue to purchase

5    the Products (or that they would resume purchasing them if they were labeled differently).

6           Because they lack standing to pursue injunctive relief individually, they also lack

7    standing to pursue such relief on behalf of the putative class.  As the Ninth Circuit has held,

8    "[u]nless the named plaintiffs are themselves entitled to seek injunctive relief, they may not

9    represent a class seeking that relief."  *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1045 (9th

10   Cir. 1999).  On this basis, California courts have repeatedly determined that named plaintiffs

11   asserting UCL, FAL, and CLRA claims cannot pursue injunctive relief where they are no longer

12   consumers of the defendant's product or service.  *See Stearns v. Select Comfort Retail Corp.*, 763

13   F. Supp. 2d 1128, 1151 (N.D. Cal. 2010) (holding, in UCL action involving mattress purchases,

14   that named Plaintiffs lacked standing to pursue injunctive relief because they did not allege "that

15   they still use their beds, that they will use their beds in the future, or that they will purchase

16   another Select Comfort bed at any time"); *Deitz v. Comcast Corp.*, No. C 06-06352 WHA, 2006

17   U.S. Dist. LEXIS 94333, at *9-11 (N.D. Cal. Dec. 21, 2006) (holding that plaintiff asserting

18   claims for violations of the UCL, FAL, and CLRA lacked standing to pursue injunctive relief

19   against cable company because he no longer subscribed to their services; moreover, it was

20   immaterial that some absent class members had not terminated their cable subscriptions); *Janda

21   v. T-Mobile, USA, Inc.*, No. C 05-03729 JSW, 2008 U.S. Dist. LEXIS 93399, at *11-12 (N.D.

22   Cal. Nov. 7, 2008) (former customers of T-Mobile asserting UCL, FAL, and CLRA claims

23   lacked standing to pursue injunctive relief because they were no longer realistically threatened

24   by repetition of the alleged violations); *Campion v. Old Republic Home Prot. Co.*, 861 F. Supp.

25   2d 1139, 1149-50 (S.D. Cal. 2012) (holding plaintiff lacked standing to seek injunctive relief for

26   alleged UCL violation where he no longer had a home warranty plan and "even if Plaintiff were

27   to purchase another home warranty plan from Defendant, he now has knowledge of Defendant's

28   alleged misconduct"); *Castagnola*, 2012 WL 2159385, at *5 (holding that plaintiffs did not have

1   standing to pursue declaratory and injunctive relief for violations of the CLRA and UCL where

2   they did not allege they would purchase products from Snapfish.com in the future and, even if

3   they had, they knew the "terms and conditions" of the program at issue); *cf. Gonzales v. Comcast*

4   *Corp.*, No. 10-cv-01010-LJO-BAM, 2012 U.S. Dist. LEXIS 196, at *49 (E.D. Cal. Jan. 3, 2012)

5   (Rule 23(b)(2) certification improper where putative class of UCL and CLRA plaintiffs consisted

6   of former Comcast customers who, by definition, "lack standing to seek injunctive relief relating

7   to Comcast's billing statements or termination policies").

8       E.    **Plaintiffs' Wisconsin-law Claims Should Be Dismissed Because Plaintiffs'**
9             **Claims Are Governed by California (not Wisconsin) Law.**

10      California's "modern choice-of-law rule" is the government interest analysis, which

11  applies the law of the state that has the greatest interest in the application of its law and policy.

12  *Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal. App. 4th 1436, 1454 (Cal. Ct. App. 2007).  This

13  analysis involves a three-step process: (1) the court determines whether the applicable rules of

14  law in the competing jurisdictions are identical (if so, then the court may apply California law) or

15  whether they differ materially; (2) if they differ materially, then the court examines whether the

16  jurisdictions have an interest in applying their own laws; and (3) if each jurisdiction has an

17  interest in applying its own law, then the court determines "which jurisdiction has a greater

18  interest in the application of its own law to the issue or, conversely, which jurisdiction's interest

19  would be more significantly impaired if its law were not applied."  *Id.*

20      As many courts have observed, "there are material conflicts between California's

21  consumer protection laws and the consumer protection laws of the other forty-nine states."  *In re*

22  *Hitachi TV Optical Block Cases*, No. 08cv1746 DMS, 2011 U.S. Dist. LEXIS 135, at *17 (S.D.

23  Cal. Jan. 3, 2011); *see also Mazza*, 666 F.3d at 591 (discussing material variations between

24  California's consumer protection laws and those of other states, including differing rules on

25  scienter, reliance, and remedies); *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018 (7th

26  Cir. 2002) ("State consumer-protection laws vary considerably, and courts must respect these

27  differences rather than apply one state's law to sales in other states with different rules.");

28

1    *Gianino v. Alacer Corp.*, 846 F. Supp. 2d 1096, 1102 (S.D. Cal. 2012) (finding "material"

2    differences between California consumer protection laws and those of the other 49 states).

3              As with the other 49 states, there are a number of material differences between

4    California's consumer protection statutes and the WDTPA.  For example, the UCL and FAL

5    have no scienter requirement, while the WDTPA does.  *See Gianino*, 846 F. Supp. 2d at 1100

6    (finding conflict between Wisconsin and California consumer protection law on the issue of

7    scienter); *compare Eberts v. Goderstad*, 569 F.3d 757, 763 (7th Cir. 2009) (WDTPA claims

8    require scienter), *with Frezza v. Google Inc.*, No. 5:12-cv-00237-RMW, 2013 U.S. Dist. LEXIS

9    57462, at *18-19 (N.D. Cal. Apr. 22, 2013) (California does not require scienter to plead a fraud-

10   based violation of the consumer protection laws).  Additionally, unlike the UCL and CLRA,

11   material omissions—like those alleged here—are **not actionable** under the WDTPA.  *Compare*

12   *Tietsworth v. Harley Davidson, Inc.*, 677 N.W.2d 233, 245 (Wis. 2004) ("Silence—an omission

13   to speak—is insufficient to support a claim under Wis. Stat. § 100.18(1)."), *with Guido v.*

14   *L'Oreal, USA, Inc.*, No. CV 11-1067 CAS, 2013 U.S. Dist. LEXIS 16915, at *20 (C.D. Cal. Feb.

15   6, 2013) (stating that "[f]raudulent or deceptive omissions are actionable" under the CLRA and

16   UCL).[6]  Moreover, the UCL is governed by a four-year statute of limitations that can be tolled

17   by the discovery rule, while the WDTPA is governed by a three-year statute with no discovery-

18   rule tolling.  *Compare Staudt v. Artifex Ltd.*, 16 F. Supp. 2d 1023, 1031 (E.D. Wis. 1998)

19   (discovery rule does not apply to statutes of repose like the WDTPA), *with Aryeh v. Canon*

20   *Business Solutions, Inc.*, 55 Cal. 4th 1185, 1194-95 (Cal. 2013) (discovery rule applies to UCL

21   claims).  Also, under certain circumstances, damages under the WDTPA can be doubled by the

22

23   [6]   Whether and under what circumstances the plaintiff must demonstrate that he or she
reasonably relied on alleged misrepresentations also materially differs between California and

24   Wisconsin.  In Wisconsin, for example, a showing of reasonable reliance is not part of the named
plaintiff's burden of proof but can be relevant to the question of whether the plaintiff can

25   establish that the challenged representation induced his pecuniary loss.  *See, e.g.*, *K&S Tool &*
*Die Corp. v. Perfection Mach. Sales, Inc.*, 732 N.W.2d 792, 802 (Wis. 2007).  By contrast, a

26   plaintiff wishing to represent a class action under the UCL or FAL "must show [that he or she]
suffered an injury due to his own actual and reasonable reliance on the allegedly untrue or

27   misleading statements."  *Woods v. Google, Inc.*, 889 F. Supp. 2d 1182, 1196 (N.D. Cal. 2012).
At the same time, such a plaintiff need not necessarily offer individualized proof of reliance in

28   order to recover on behalf of the proposed class.  *See In re Vioxx*, 180 Cal. App. 4th at 134 n.19.

1   trial court.  *See* Wis. Stat. § 100.18(11)(b)(2).  There is no such provision under any of the

2   California statutes.  And, of course, Wisconsin has no equivalent at all to the California

3   Environmental Marketing Claims Act.

4        Because these differences are obviously material, a court must next examine whether the

5   jurisdiction has an interest in applying its own laws.  Here, Wisconsin does not have an interest

6   in the application of its laws to Plaintiffs' claims because Plaintiffs are (a) *California* residents

7   who (b) purchased the products at issue in *California* (c) based on alleged misrepresentations

8   that Plaintiffs relied on, if at all, in *California*.  Wisconsin's interest in regulating Kimberly-

9   Clark's business is limited to conduct occurring within the borders of Wisconsin.  *See McCann v.*

10  *Foster Wheeler LLC*, 48 Cal. 4th 68, 91 (Cal. 2010) (noting that "a jurisdiction ordinarily has the

11  predominant interest in regulating conduct that occurs within its borders").

12       Finally, even if Wisconsin had an interest in the application of its law to Plaintiffs'

13  claims, California's interest predominates.  Indeed, California recognizes that "with respect to

14  regulating or affecting conduct within its borders, the place of the wrong has the predominant

15  interest."  *Hernandez v. Burger,* 102 Cal. App. 3d 795, 802 (Cal. Ct. App. 1980).  "The 'place of

16  the wrong' is the state where the last event necessary to make the actor liable occurred."  *Frezza*,

17  2013 U.S. Dist. LEXIS 57462, at *23.  The last events necessary for Plaintiffs' claims to

18  accrue—*i.e.*, the Plaintiffs' alleged exposure to the product packaging, the reliance, and the

19  purchase—all took place in California; thus, California law clearly applies.  *See Horvath v. LG*

20  *Elecs. MobileComm U.S.A., Inc.*, No. 3:11-CV-01576-H-RBB, 2012 U.S. Dist. LEXIS 19215, at

21  *10-11 (S.D. Cal. Feb. 13, 2012) (because plaintiff's claims arose out of his purchase of a

22  product, the place of the wrong is where he purchased that product).

23       Because Plaintiffs' claims are governed by California (not Wisconsin) law, their claims

24  under the WDTPA should be dismissed.  *See, e.g.*, *Frezza*, 2013 U.S. Dist. LEXIS 57462, at *24

25  (dismissing North Carolina plaintiffs' California consumer protection claims because, under

26  *Mazza*, "North Carolina plaintiffs' consumer protection claims should be governed by North

27  Carolina consumer protection laws"); *Granfield v. NVIDIA Corp.*, No. C 11-05403 JW, 2012

28  WL 2847575, at *3 (N.D. Cal. Jul. 11, 2012) (dismissing Massachusetts plaintiff's California

consumer protection claims because, under *Mazza,* his claims were governed by Massachusetts (not California) law); *cf. Mazza*, 666 F.3d at 594 (rejecting the argument that the place of defendant's corporate headquarters outweighs all other relevant factors and holding that "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place"); *see also Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 208-09 (3rd Cir. 2013) (claim for violation of New Jersey's consumer protection law by South Carolina consumer barred as a matter of law where it was predicated solely on the fact that the corporate defendant was headquartered in New Jersey).

Dismissal of the Wisconsin claim is warranted for the additional reason that the named Plaintiffs lack standing to assert claims under the consumer protection of any state other than California. *See, e.g.*, *Pardini*, 2013 WL 3456872, at *9 (named plaintiff lacked "standing to assert a claim under the consumer protection laws of the other states named in the Complaint"); *Granfield*, 2012 WL 2847575, at *4 ("Where . . . a representative plaintiff is lacking for a particular state, all claims based on *that* state's laws are subject to dismissal."); *In re Apple & AT & TM Antitrust Litig.*, 596 F. Supp. 2d 1288, 1309 (N.D. Cal. 2008) (dismissing claims based on consumer protection laws of every state from which no plaintiff was named).

## F.   Plaintiffs' Putative Nationwide Class Should Also Be Dismissed and/or Stricken from the Complaint Because There Is No Basis to Apply Wisconsin Law to the Claims of the Named Plaintiffs.

"Under Rules 23(c)(1)(A) and 23(d)(1)(D), as well as pursuant to Rule 12(f), this Court has authority to strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained." *Hovsepian v. Apple, Inc.*, No. 08-5788 JF, 2009 WL 5069144, at *2 (N.D. Cal. Dec. 17, 2009); *see also Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009).

Numerous courts—including several in this district—have dismissed class allegations at the pleading stage where, as here, the claims of the proposed nationwide class would be governed by the different and conflicting consumer protection laws of the fifty states. *See, e.g.*, *Pardini*, 2013 WL 3456872, at *9 (granting motion to strike multi-state class allegations where, as here, the plaintiff lacked standing to represent a claim under the consumer protection laws

governing the claims of out-of-state class members); *Sanders*, 672 F. Supp. 2d at 991 (striking

class because individual questions of reliance, materiality, exposure to the alleged false

advertisements, and causation "very likely would be subject to the differing state law that may or

may not apply"); *In re Actimmune Mktg. Litig.*, No. C 08-02376 MHP, 2009 U.S. Dist. LEXIS

103408, at *51-52 (N.D. Cal. Nov. 6, 2009) (dismissing plaintiffs' claims brought under the

consumer protection statutes in states for which they do not have a representative, including

Wisconsin claims); *see also, e.g.*, *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 946 (6th

Cir. 2011) (affirming dismissal on the pleadings of proposed nationwide class action where the

plaintiffs' allegation that the consumer protection laws of a single state should govern all class

members was invalid as a matter of law); *Rikos v. Procter & Gamble Co.*, No. 1:11-cv-226, 2012

WL 641946, at *3-5 (S.D. Ohio Feb. 28, 2012) (striking putative nationwide class because

California's consumer protection laws cannot as a matter of law be applied to consumers who

purchased and were allegedly injured by the defendant's products outside the state of California).

     As shown above, the claims of the putative class representatives are governed by

California (not Wisconsin) law.  California choice of law rules similarly preclude nationwide

application of Wisconsin law (or any single state's law) to all non-Wisconsin residents.  On the

contrary, "each class member's consumer protection claim should be governed by the consumer

protection laws of the jurisdiction in which the transaction took place."  *Mazza*, 666 F.3d at 594.

And, "because the law of multiple jurisdictions applies here to any nationwide class . . .

variances in state law overwhelm common issues and preclude predominance for a single

nationwide class."  *Id*. at 596; *see also Pilgrim*, 660 F.3d at 947 ("In view of . . . plaintiffs'

appropriate concession that the consumer protection laws of the affected States vary in material

ways, no common legal issues favor a class-action approach to resolving this dispute.").

Accordingly, Plaintiffs' proposed nationwide class is invalid on the face of the pleadings and

should be dismissed and/or stricken from the Complaint.  *See, e.g.*, *Pilgrim*, 660 F.3d at 946;

*Pardini*, 2013 WL 3456872 at *9; *Sanders*, 672 F. Supp. 2d at 991.

**IV.     CONCLUSION**

For all the foregoing reasons, Kimberly-Clark respectfully requests that the Court dismiss Plaintiffs' Complaint in its entirety, or, in the alternative, that the Court dismiss and/or strike the proposed nationwide class.

DATED:  September 17, 2013            KING & SPALDING LLP


                                      By:  /s/ Timothy T. Scott_____
                                      TIMOTHY T. SCOTT
                                      GEOFFREY M. EZGAR
                                      STEPHEN B. DEVEREAUX (*pro hac vice* to be filed)
                                      MADISON H. KITCHENS (*pro hac vice* to be filed)

                                      Attorneys for Defendants
                                      KIMBERLY-CLARK CORPORATION; KIMBERLY-
                                      CLARK WORLDWIDE, INC.; KIMBERLY-CLARK
                                      GLOBAL SALES, LLC