1

**REESE RICHMAN LLP**

2

Kim E. Richman (admitted *pro hac vice*)
*krichman@reeserichman.com*

3

Michael R. Reese (State Bar No. 206773)
*mreese@reeserichman.com*

4

875 Avenue of Americas, 18th Floor
New York, New York 10001

5

Telephone: (212) 643-0500

6

Facsimile: (212) 253-4272

7

*Counsel for Plaintiff and the Proposed Class*

8

9

10

11

12

13

14

**UNITED STATES DISTRICT COURT**

15

**NORTHERN DISTRICT OF CALIFORNIA**

16

**SAN FRANCISCO DIVISION**

17

18

DIANNA JOU and JAYNRY YOUNG, individually and on behalf of other similarly situated individuals,

19

20

Plaintiffs,

21

22

v.

23

KIMBERLY-CLARK CORPORATION; KIMBERLY-CLARK WORLDWIDE, INC.; KIMBERLY-CLARK GLOBAL SALES, LLC; and DOES 1-5,

24

25

26

Defendants.

27

28

Case No. 3:13-cv-03075-JSC

**OPPOSITION TO MOTION TO DISMISS PLAINTIFFS' COMPLAINT OR, IN THE ALTERNATIVE, MOTION TO STRIKE**

Date:           November 21, 2013
Time:          9:00 a.m.
Judge:        Magistrate Judge Jacqueline Scott Corley
Complaint Filed:     July 3, 2013

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 1

II.    FACTUAL BACKGROUND ................................................................................ 3

III.   LEGAL STANDARDS ........................................................................................ 6

IV.    ARGUMENT ....................................................................................................... 7

       A.    Plaintiffs' Claims Satisfy Rule 9(b)'s Particularity Requirement by
             Pleading the Who, What, When, Where, and How of Defendant's
             Deceptive Conduct ..................................................................................... 7

       B.    Plaintiffs' Detailed Allegations Are Entirely Plausible ...................... 10

       C.    Plaintiffs Have Standing Due to Alleged Economic Injury ................ 15

       D.    Plaintiffs Have Standing to Seek Injunctive Relief ............................ 17

       E.    Wisconsin Law Applies to Defendant's Conduct that Occurred in
             Wisconsin ................................................................................................. 19

       F.    Dismissal of Plaintiffs' Class Action Claims at This Stage Would Be
             Premature ................................................................................................. 20

V.     CONCLUSION .................................................................................................. 21

OPPOSITION TO MOTION TO DISMISS PLAINTIFFS' COMPLAINT
Case No. 3:13-cv-03075-JSC

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG), 2010 WL 2925955 (E.D.N.Y. July
4
   21, 2010) ................................................................................................................. 16

5
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................... 6, 10
6

*Asis Internet Servcs. v. Subscriberbase Inc.*, No. 09–3503 SC, 2010 WL 1267763 (N.D.
7
   Cal. Apr. 1, 2010) ..................................................................................................... 10

8
*Astiana v. Kashi Co.*, No. 3:11-cv-01967-H (BGS), 2013 U.S. Dist. LEXIS 108445, 2013
9
   WL 3943265 (S.D. Cal. July 30, 2013) ................................................................... 12

10
*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................... 6, 10

11
*Cabral v. Supple, LLC*, No. EDCV 12-00085-MWF, 2012 WL 4343867 (C.D. Cal. Sept.
12
   19, 2012) ................................................................................................................... 18

13
*Cattie v. Wal–Mart, Inc.*, 504 F.Supp.2d 939 (S.D. Cal. 2007) .................................... 18

14
*Chavez v. Blue Sky Natural Beverage Co.*, 340 F. App'x 359 (9th Cir. 2009) ............................. 16

15
*Clancy v. Bromley Tea Co.*, No. 12-CV-03003-JST, 2013 WL 4081632 (N.D. Cal. Aug.
16
   9, 2013) ..................................................................................................................... 21

17
*Cooper v. Pickett*, 137 F.3d 616 (9th Cir. 1997) ...................................................... 8

18
*Fecht v. Price Co.*, 70 F.3d 1078 (9th Cir. 1995) ..................................................... 8

19

20
*Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155 (C.D. Cal. 2012) ........................................ 21

21
*Fortyune v. American Multi–Cinema, Inc.*, No. CV 10–5551, 2002 WL 32985838 (C.D. Cal.
22
   Oct. 22, 2002) ...........................................................................................................18

23
*Freeman v. Time, Inc.*, 68 F.3d 285 (9th Cir. 1995) ................................................ 14

24
*Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468 (C.D. Cal. 2012) ................................................ 17

25
*Haskell v. Time, Inc.*, 857 F. Supp. 1392 (E.D. Cal. 1994) ................................................ 12

26
*Henderson v. Gruma Corp.*, No. 10-04173, 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) ........ 18

27

28
*Herrington v. Johnson & Johnson Consumer Cos.*, No. C 09-1597 CW, 2010 U.S. Dist.
   LEXIS 90505, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) ................................................. 16

iii

*Hill v. Roll International Corporation*, 195 Cal. App. 4th 1295 (Cal. Ct. App. 2011) .......... 14, 15

*Hitt v. Ariz. Beverage Co., LLC*, No. 08–cv–809, 2009 WL 449190 (S.D. Cal. Feb. 4, 2009) ................................................................................................................................... 11

*In re ConAgra Foods Inc.*, 908 F. Supp. 2d 1090 (C.D. Cal. 2012) ....................................... 11

*In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541 (9th Cir. 1994) ................................................. 9

*In re Hitachi TV Optical Block Cases*, No. 08cv1746 DMS (NLS), 2011 U.S. Dist. LEXIS 135, 2011 WL 9403 (S.D. Cal. Jan. 3, 2011) ........................................................... 20

*In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399 (9th Cir. 1996) ...................................................... 7

*In re Tobacco II Cases*, 46 Cal. 4th 298 (2009) ..................................................................... 17

*In re Vioxx Class Cases*, 180 Cal. App. 4th 116 (Cal. Ct. App. 2009) ................................... 16

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) ............................................... 7, 10

*Koehler v. Litehouse, Inc.*, No. CV 12-04055 SI, 2012 WL 6217635 (N.D. Cal. Dec. 13, 2012) ................................................................................................................................... 17

*Koh v. S.C. Johnson & Son, Inc.*, No. C–09–00927 (RMW), 2010 WL 94265 (N.D. Cal. Jan. 6, 2010) ...................................................................................................................... 16

*Krauss v. Trinity Mgmt. Servcs., Inc.*, 23 Cal. 4th 116 (2000) .............................................. 17

*Kwikset Corp. v. Sup. Ct.*, 51 Cal. 4th 310 (2011) ........................................................... 17, 18

*Larsen v. Trader Joe's Co.*, No. C 11-05188 SI, 2012 WL 5458396 (N.D. Cal. June 14, 2012) ................................................................................................................................... 17

*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) ....................................................................... 1

*Mazza v. Am. Honda Co.*, 666 F.3d 581 (9th Cir. 2012) ........................................... 19, 20, 21

*McKinniss v. Gen. Mills, Inc.*, No. CV 07-2521 GAF, 2007 WL 4762172 (C.D. Cal. Sept. 18, 2007) ............................................................................................................................ 14

*Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097 (9th Cir. 2008) ............................... 6

*Pardini v. Unilever United States, Inc.*, No. 13-1675 SC, 2013 WL 3456872 (N.D. Cal. July 9, 2013) ................................................................................................................... 9, 19

*Parr v. L & L Drive–Inn Restaurant*, 96 F.Supp.2d 1065 (D. Hawai'i 2000) ........................... 18

iv

*Putnam v. Putnam Lovell Group NBF Secs., Inc.*, No. C 05-1330 CW, 2006 WL 1821207
(N.D. Cal. June 30, 2006) ........................................................................................ 20

*Samet v. Proctor & Gamble Co.*, No. 5:12-CV-01891 PSG, 2013 WL 3124647 (N.D. Cal.
June 18, 2013) ........................................................................................ 9, 15, 16

*Semegen v. Weidner*, 780 F.2d 727 (9th Cir. 1985) ........................................................................................ 7

*Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167 (9th Cir. 2009) ........................................ 6

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) ........................................................................................ 7

*U.S. v. City of Redwood City*, 640 F.2d 963 (9th Cir. 1981) ........................................................................................ 6

*Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ........................................................................................ 7

*Vicuña v. Alexia Foods, Inc.*, No. C 11-6119 PJH, 2012 WL 1497507 (N.D. Cal. Apr. 27,
2012) ........................................................................................ 11

*Videtto v. Kellogg USA*, No. 2:08-cv-01324-MCE-DAD, 2009 U.S. Dist. LEXIS 43114,
2009 WL 1439086 (E.D. Cal. May 21, 2009) ........................................................................ 11, 12

*Von Koenig v. Snapple Beverage Corp.*, 713 F. Supp. 2d 1066 (E.D. Cal. 2010) ........................ 11

*Werbel v. PepsiCo, Inc.*, No. C 09-04456 SBA, 2010 U.S. Dist. LEXIS 76289, 2010 WL
2673860 (N.D. Cal. July 1, 2010) ........................................................................ 11

*Werdebaugh v. Blue Diamond Growers*, No. 12-CV-02724-LHK, 2013 WL 5487236
(N.D. Cal. Oct. 2, 2013) ........................................................................ 21

*Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008) ........................................................ passim

*Won Kyung Hwang v. Ohso Clean, Inc.*, No. C-12-06355 JCS, 2013 WL 1632697 (N.D.
Cal. Apr. 16, 2013) ........................................................................ 20, 21

**Statutes and Other Authorities**

16 C.F.R. § 260.3 (2011) ........................................................................................ 14

16 C.F.R. § 260.4 (2012) ........................................................................................ 5

16 C.F.R. § 260.7 (2003) ........................................................................................ 5

21 U.S.C. § 331 ........................................................................................ 2

21 U.S.C. § 362 ........................................................................................ 2

Black's Law Dictionary (9th ed. 2009)...........................................................................12

California Environmental Marketing Act, Bus. & Prof. Code § 17580 *et seq.* ..............................5

Class Action Fairness Act, 28 U.S.C. § 1332(d) ............................................................6

Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.* ..............................................2, 9

Federal Rule of Civil Procedure 9 ...................................................................... passim

Federal Rule of Civil Procedure 12 ...........................................................6, 10, 11, 15

Federal Rule of Civil Procedure 15 ........................................................................1

Federal Trade Commission, *THE GREEN GUIDES: STATEMENT OF BASIS AND PURPOSE* ...............................................................................5

U.S. Const. art. III.................................................................................15, 16, 18

Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18 ....................................19

OPPOSITION TO MOTION TO DISMISS PLAINTIFFS' COMPLAINT
Case No. 3:13-cv-03075-JSC

1    Plaintiffs Dianna Jou and Jaynry Young ("Plaintiffs") respectfully submit the following

2  memorandum in opposition to the motion to dismiss Plaintiffs' Complaint and memorandum in

3  support thereof (Dkt. No. 8) (the "Motion" or "Mot.") filed by defendants Kimberly-Clark

4  Global Sales, LLC ("Defendant" or "Kimberly-Clark"), Kimberly-Clark Corporation, and

5  Kimberly-Clark Worldwide, Inc.[1]  For the reasons stated below, Defendant's Motion must be

6  denied in its entirety.[2]

7  **I.    INTRODUCTION**

8    Defendant exploits the preference of conscientious parents for natural baby products over

9  products that contain artificial or synthetic ingredients.  Defendant does this by prominently and

10  uniformly describing a line of Huggies-brand diapers (the "Natural Diapers") as "pure & natural"

11  and a line of Huggies-brand towelette wipes (the "Natural Wipes") as providing "Natural Care."

12    Despite Defendant's characterization otherwise, these so-called "green" representations,

13  as well as others identified in Plaintiffs' class action complaint (Dkt. No. 1-1, the "Complaint"),

14  are made without qualification.  Furthermore, the phrases "pure & natural" and "Natural Care"

15  are the most conspicuous descriptions of the products on their packaging.  Unfortunately for

16  consumers, these descriptions are not accurate.  The Natural Diapers are not "pure & natural,"

17  nor do the Natural Wipes provide "natural care."  Instead, the Diapers contain a host of unnatural

18  components, and the Wipes contain unnatural, even harmful chemicals.

19    Indeed, Kimberly-Clark does not deny the allegations of artificial and synthetic

20  ingredients in its products.  Instead, Defendant argues that, despite the prominent "natural"

21  representations on the product packaging, consumers could not have been misled about the

22

---

23  [1] Plaintiffs have proposed a tolling agreement to defendants, under which Plaintiffs will agree to

24  dismiss all claims against Kimberly-Clark Corporation and Kimberly-Clark Worldwide, Inc., without prejudice to refiling.  Accordingly, Plaintiffs refer only to Kimberly-Clark Global Sales,

25  LLC, as "Defendant" or "Kimberly-Clark" herein.

26  [2] If the Court grants Defendant's Motion in any part, Plaintiffs respectfully request leave to

27  amend their Complaint.  Under Fed. R. Civ. P. 15(a), leave to amend "should be freely granted when justice so requires," bearing in mind that "the underlying purpose of Rule 15 . . . [is] to

28  facilitate decision on the merits, rather than on the pleadings or technicalities."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*en banc*) (quotations omitted).

naturalness of the products because other, much less prominent representations disclosed the truth about the product composition.  Defendant is wrong.  Small print and back-of-the-label disclosures do not insulate companies from liability stemming from otherwise misleading affirmative statements, since reasonable consumers are not to be expected to scour a label to be sure prominent representations are not false.  The Ninth Circuit squarely addressed this issue in *Williams v. Gerber Products Co.*:

> Reasonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box. . . . We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception.  Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging.

*Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939–40 (9th Cir. 2008), *reh'g en banc denied*, *id.* at 935 ("*Gerber*").[3]

Defendant also argues Plaintiffs' allegations are not sufficiently detailed.  Yet, Fed. R. Civ. P. 9(b) does not require the level of detail Defendant seeks.  Plaintiffs adequately pleaded the "who, what, when, where, and how" and, therefore, provided sufficient notice to Defendant of Plaintiffs' claims.  This is sufficient to deny Defendant's motion to dismiss under Rule 9(b).

Defendant further argues that Plaintiffs' Wisconsin law claims should be dismissed because there is no nexus between Plaintiffs and Wisconsin.  However, this assertion overlooks

---

[3] Defendant notes at one point in its Motion that "Plaintiffs do not allege that Kimberly-Clark failed to comply with any [requirements of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.* ("FDCA")]."  (Mot. at 12 n.5.)  Defendant's implication is that Plaintiffs do not believe Defendant's labeling violates the FDCA.  Nothing could be further from the truth.  The FDCA prohibits the labeling of cosmetics if the labeling is false or misleading.  *See* 21 U.S.C. § 331(b) (prohibiting the misbranding of cosmetic products in interstate commerce); *id.* at § 362(a) (deeming a cosmetic product as "misbranded" if its labeling is false or misleading in any particular).  The FDCA, though, does not provide a private right of action.  Therefore, Plaintiffs have alleged that Defendant made false and misleading statements on the labels for the products in violation of state laws (that parallel the FDCA's prohibition on such false and misleading labeling).

1   the fact that Defendant is based in Wisconsin.   Indeed, it was Defendant's creation of the

2   misleading statements on the products' packaging and the development of the products

3   themselves that led to the harms and injuries Plaintiffs suffered.

4        Defendant's remaining arguments, none of which would result in dismissal of the matter

5   entirely, also lack merit, for the reasons detailed below.   Therefore, the Court should deny

6   Defendant's Motion.

7   **II.    FACTUAL BACKGROUND**

8        Consumers are increasingly sensitive to the effect harmful ingredients in household

9   products can have on their families' health and on the general environment.   (¶ 1.[4])   As a result,

10  demand has increased for "green" products that are naturally derived, environmentally sound,

11  and non-toxic.   (*Id.*)   Seeking to capitalize on this demand, Defendant markets the Huggies-brand

12  products at issue as natural, environmentally sound, and safer alternatives to traditional diapers

13  and diaper wipes, including traditional Huggies-brand diapers and wipes.   (¶¶ 3, 20.)

14       In particular, Defendant markets the Natural Diapers as "pure & natural," without any

15  qualifying statements, in large print on the front of the packaging for the diapers.   (¶ 23, image

16  following.)   Another prominent, unqualified representation on the packaging is "Soft Organic

17  Cotton."   (*Id.*)   Both individually and in combination with the green coloring and images of trees

18  and leaves on the front of the packaging, these statements represent to reasonable consumers that

19  the Natural Diapers are, in contrast to Defendant's and other companies' conventional diapers, a

20  natural, pure, organic, and relatively safe product.   Moreover, these same images convey to the

21  consumer the products' minimal impact upon the environment, despite the diapers' disposability.

22  (¶¶ 23-24.)   By marketing the Natural Diapers in this way, Defendant is able to charge a price

23  premium for the Natural Diapers, as compared to other, significantly similar diapers.   (¶¶ 39, 85.)

24       Unfortunately for consumers, the Natural Diapers do not differ in any material way from

25  other Kimberly-Clark diapers.   (¶ 25.)   Moreover, Defendant exaggerates the differences to

26  charge an excessive premium.   (¶¶ 26-29, 39.)   One minor difference between the Natural

27

28  _____

[4] All paragraph references are to the Complaint (Dkt. No. 1-1), unless otherwise specified.

OPPOSITION TO MOTION TO DISMISS PLAINTIFFS' COMPLAINT
Case No. 3:13-cv-03075-JSC

Diapers and other Kimberly-Clark diapers is that the Natural Diapers contain some organic cotton on the outside of the diapers.  (¶ 27.)  Being on the outside of the diaper, the organic cotton never actually comes into contact with the ultimate user, the baby.  (¶ 28.)  As a result, the marketing does not match the reasonable expectation of consumers created by Defendant:  that the Natural Diapers—in total, not in small, immaterial part—are made of organic cotton.  (*Id.*)  Second, the Natural Diapers, despite Defendant's marketing of them as entirely pure and natural, only differ from traditional diapers by including a liner made of some materials that are potentially less harmful to the environment than those used in traditional diapers.  (¶ 29.)  Yet, the Natural Diapers also contain unnatural and potentially harmful ingredients, such as polypropylene and sodium polyacrylate, which are also components of Defendant's traditional diapers.  (*Id.* (citations omitted).)  No consumer would reasonably expect a "pure & natural" product to contain such unnatural and potentially harmful ingredients.  (¶ 30.)

In a similarly deceptive manner, Defendant markets the Natural Wipes with the unqualified and prominent phrase—"Natural Care."  (¶ 33, image following.)  In addition to placing that phrase prominently on the front of the packaging for the Natural Wipes, the packaging features green coloring and leaves, reinforcing the message that the Natural Wipes are a completely natural product and relatively easy on the environment, despite their disposability.  (¶¶ 33, 36.)  By marketing the Natural Wipes in this way, Defendant is able to charge a price premium for the Natural Wipes, as compared to other wipes that are not marketed as "natural."  (¶¶ 39, 85.)

Unfortunately for consumers, the Natural Wipes contain two substances, sodium methylparaben and methylisothiazolinone, that are not natural and that, in fact, are hazardous.  (¶ 34.)  Past versions of the Natural Wipes contained other non-natural and hazardous, or potentially hazardous, components.  (¶ 35.)  By including non-natural components, Defendant provides the opposite of the advertised attribute of "Natural Care."  (¶ 36.)  Like the substances noted of concern in the Natural Diapers, the identified substances in the Natural Wipes are a far cry from the natural, environmentally sound, and relatively safe ingredients of which Defendant misleads reasonable consumers to believe its Natural Wipes are made.  (*Id.*)  Moreover, none of

the ingredients are disclosed on the front label of the packaging, where Defendant makes the unqualified natural claims. (¶ 37.)

Plaintiffs take issue with the fact that Defendant markets its Natural Diapers and Natural Wipes with **unqualified** representations about the environmental and health benefits of the diapers. (*See, e.g.*, ¶ 43.) Defendant glosses over the reality that such unqualified representations are a *per se* violation of California's Environmental Marketing Act, Bus. & Prof. Code § 17580 *et seq.*, by violating the FTC's Green Guides. *See* 16 C.F.R. § 260.4(b) (2012); 16 C.F.R. § 260.7(a) (2003).[5] Moreover, such unqualified representations violate California's general consumer protection statutes because they claim that the Natural Diapers and Natural Wipes have certain benefits that they do not, causing consumers to pay more for the Natural Diapers and Natural Wipes than they otherwise would pay.

As for the named plaintiffs, Dianna Jou is a California resident who purchased both the Natural Diapers and the Natural Wipes for a couple months after her son was born in October 2011. (¶ 10.) In deciding to purchase the products, Ms. Jou relied on the false, misleading, deceptive, and unfair representations that the products would provide natural, relatively safe, environmentally sound, and (for the Natural Diapers) organic alternatives to traditional diapers and wipes. (¶ 11.) She was injured by Defendant's deception because, had she known the truth about these representations, she would not have purchased the products. (*Id.*) Since she would not have purchased them, she necessarily would not have paid the premium price that she did. (*See* ¶ 85.) Jaynry Young is also a California resident, and she purchased the Natural Diapers in or around September 2011 after her daughter was born. (¶ 12.) In deciding to purchase the products, Ms. Young relied on the false, misleading, deceptive, and unfair representations that the Natural Diapers would provide a natural, relatively safe, environmentally sound, and organic

---

[5] *See also* ¶ 45; Federal Trade Commission, *THE GREEN GUIDES: STATEMENT OF BASIS AND PURPOSE*, http://www.ftc.gov/os/fedreg/2012/10/greenguidesstatement.pdf, 259, 265 (noting that, with respect to "organic" and "natural" claims, "the Guides' general principles apply," and "marketers must have substantiation for any environmental benefit claims they make, including implied claims").

OPPOSITION TO MOTION TO DISMISS PLAINTIFFS' COMPLAINT
Case No. 3:13-cv-03075-JSC

1   alternative to traditional diapers.  (¶ 13.)  She was injured by Defendant's deception because, had

2   she known the truth about Defendant's representations, she would not have purchased the

3   Natural Diapers.  (*Id.*)  Accordingly, she would not have paid the premium price that she did.

4   (*See* ¶ 85.)

5   **III.   LEGAL STANDARDS**[6]

6          Under Fed. R. Civ. P. 12(b)(6), dismissal is proper only in "extraordinary cases," *U.S. v.*

7   *City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981) (citations omitted), when the complaint

8   lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory,

9   *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008); *see also*

10  *Williams*, 552 F.3d at 939 (cautioning that it is a "rare situation in which granting a motion to

11  dismiss is appropriate").

12         On a 12(b)(6) motion, the court must "accept the plaintiffs' allegations as true and

13  construe them in the light most favorable to the plaintiffs."  *Siracusano v. Matrixx Initiatives,*

14  *Inc.*, 585 F.3d 1167, 1177 (9th Cir. 2009); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)

15  ("When there are well-pleaded factual allegations, a court should assume their veracity . . . .");

16  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (The Court must operate "on the

17  assumption that all the allegations in the complaint are true (even if doubtful in fact).").

18  Accordingly, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual

19  proof of those facts is improbable."  *Twombly*, 550 U.S. at 556.   Accepting well-pleaded

20  allegations as true, the Court must determine whether those allegations "plausibly give rise to an

21  entitlement to relief."  *Iqbal*, 556 U.S. at 679.  "A claim has facial plausibility when the plaintiff

22  pleads factual content that allows the court to draw the reasonable inference that the defendant is

23  liable for the misconduct alleged."  *Id.* at 678.

24

25  _____

26  [6] Defendant's Notice of Motion indicates it seeks dismissal pursuant, in part, to Rule 12(b)(1) for
    lack of subject matter jurisdiction.  (*See* Mot. at vii; 18–19.)  Defendant does not specifically
27  identify any argument in support of dismissal under Rule 12(b)(1).  Nor could it do so, as this
    Court has subject matter under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  (¶ 7.)  To the
28  extent the Court could construe Defendant's Motion as one under Rule 12(b)(1) due to an alleged
    lack of standing, Plaintiffs demonstrate herein why the Court should reject such an argument.

1    Fraud-based claims are subject to heightened pleading requirements under Fed. R. Civ. P.

2    9(b).  In that regard, a plaintiff alleging fraud "must state with particularity the circumstances

3    constituting fraud."  Fed. R. Civ. P. 9(b).  The allegations must be "specific enough to give

4    defendants notice of the particular misconduct which is alleged to constitute the fraud charged so

5    that they can defend against the charge and not just deny that they have done anything wrong."

6    *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).  To that end, the allegations must

7    contain "an account of the time, place, and specific content of the false representations as well as

8    the identities of the parties to the misrepresentations."  *Swartz v. KPMG LLP*, 476 F.3d 756, 764

9    (9th Cir. 2007).  Simply put, averments of fraud must include the "who, what, when, where, and

10   how" of the misconduct charged.  *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir.

11   2003) (citation omitted).

12   **IV.    ARGUMENT**

13          **A.    Plaintiffs' Claims Satisfy Rule 9(b)'s Particularity Requirement by Pleading**
14                 **the Who, What, When, Where, and How of Defendant's Deceptive Conduct**

15          Defendant mistakenly claims that Plaintiffs' Complaint fails to meet the "pleading-with-

16   particularity" requirement of Fed. R. Civ. P. 9(b).  "Rule 9(b) demands that the circumstances

17   constituting the alleged fraud be specific enough to give defendants notice of the particular

18   misconduct so that they can defend against the charge and not just deny that they have done

19   anything wrong."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quotations

20   and citation omitted); *see also In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996)

21   (intention of Rule 9(b)'s heightened pleading standards for fraud claims is to give "defendants

22   adequate notice to allow them to defend against the charge," not to provide an easy escape hatch

23   for defendants).  Plaintiffs have met this demand.

24          Defendant does not dispute that Plaintiffs have adequately pleaded *who* caused the harm

25   at issue and *when* Plaintiffs' purchased the products.  (*See, e.g.*, Mot. at 3:1-2 (acknowledging

26   Plaintiffs' allegations that "Kimberly-Clark marketed the products"), *id.* at 2:7-11 (discussing

27   Plaintiffs' allegations about when they purchased the products in reliance on the "natural"

28   representations).)  Instead, Defendant first argues that Plaintiffs do not provide details about

*what* representations were made to them.  (Mot. at 5.)  Yet, the Complaint does indeed provide these details.  It alleges that Plaintiff Jou "relied on Defendant's false, misleading, and deceptive representations that Huggies Natural Diapers and Huggies Natural Wipes would provide natural, relatively safe, environmentally sound, and (in the case of the diapers) organic alternatives to traditional diaper and wipe offerings" (¶ 11) and that Plaintiff Young "relied on Defendant's false, misleading, and deceptive representations that Huggies Natural Diapers would provide natural, relatively safe, environmentally sound, and organic alternatives to traditional diaper offerings" (¶ 13).  Then, it specifies the exact representations at issue.  For the Natural Diapers, it identifies the following representations:

- the prominent, unqualified representation "pure & natural" on the front of the packaging (¶ 23, image following);
- the prominent, unqualified representation "Soft Organic Cotton" on the front of the packaging (*id.*); and
- green coloring and images of trees and leaves prominently on the front packaging (*id.*).

For the Natural Wipes, the Complaint identifies the following representations:

- the prominent, unqualified representation "Nature Care" on the front of the packaging (¶ 33, image following) and
- green coloring and images of leaves prominently on the front packaging (*id.*).

Based upon Plaintiffs' reliance upon these statements, it would necessarily imply that Plaintiffs read the packaging, contrary to Defendant's assertion.  (Mot. at 5.)  Thus, Plaintiffs' allegations clearly put Defendant on notice of *what* statements are at issue.

As can be seen from the above allegations, Plaintiffs also specify *where* the misleading representations were made—on the "front of the packaging."  (¶¶ 23, 33.)

Next, Defendant argues Plaintiffs do not provide details about "how they relied upon those representations in purchasing the Products" (*id.*) or "how they learned the 'truth' about the Kimberly-Clark products" (*id.* at 6).  But this is not the "how" Rule 9(b) requires.  Rather, the "how" aspect of Rule 9(b)'s pleading requirement refers to how the conduct at issue is alleged to be fraudulent.  *Cooper v. Pickett*, 137 F.3d 616, 626-27 (9th Cir. 1997); *Fecht v. Price Co.*, 70 F.3d 1078, 1083 (9th Cir. 1995) (A plaintiff may satisfy Rule 9(b) with allegations of

1    circumstantial evidence "if the circumstantial evidence alleged explains how and why the

2    statement was misleading when made." (citing and quoting *In re GlenFed, Inc. Sec. Litig.*, 42

3    F.3d 1541, 1549 (9th Cir. 1994) (*en banc*))).

4            Plaintiffs have alleged in detail *how* Defendant's representations about the naturalness of

5    the products are false and misleading.  In regard to the Natural Diapers, Plaintiffs alleged they do

6    not differ from traditional diapers to the extent that Defendant otherwise leads consumers to

7    believe.  For example, Defendant prominently markets the Natural Diapers as being made of soft

8    organic cotton.  (¶ 27.)  The organic cotton, however, is only on the outside of the diaper and

9    "never actually comes into contact with the ultimate user, the baby."  (¶¶ 27-28.)  Additionally,

10   despite representations about how the diapers are "pure & natural," they actually contain

11   unnatural and potentially harmful ingredients.  (¶ 29.)  Thus, Plaintiffs explain specifically what

12   is misleading about Defendant's representations, given specifically identified ingredients in the

13   diapers.  In regard to the Natural Wipes, Plaintiffs alleged that they contain two unnatural and

14   hazardous substances, contradicting the prominent "Natural Care" representation on the front

15   label for the Natural Wipes.  (¶¶ 33-34.)  As explained in the Complaint, "Like the substances

16   noted of concern in Huggies Natural Diapers, these substances are a far cry from the natural,

17   environmentally sound, and relatively safe ingredients that Defendant misleads reasonable

18   consumers to believe [the] Huggies Natural Wipes are made of."  (¶ 36.)  Therefore, Plaintiffs

19   have clearly alleged *how* the representations at issue are false and misleading.[7]

20           These allegations clearly provide Defendant sufficient notice of the alleged fraudulent

21

22   ───────────────────

23   [7] In contrast, in one of the cases Defendant cites, the plaintiff did not allege what statements she relied upon.  *Pardini v. Unilever United States, Inc.*, No. 13-1675 SC, 2013 WL 3456872, at *8

24   (N.D. Cal. July 9, 2013) ("Plaintiff cannot state a claim merely by pleading a violation of the FDCA and its implementing regulations. . . . Plaintiff has failed to plead reliance . . . .").

25   Similarly, the plaintiffs' allegations that they were misled in *Samet v. Proctor & Gamble Co.* were based solely on legal conclusions that they were unaware the labeling for the products

26   violated FDA regulations.  *Samet v. Proctor & Gamble Co.*, No. 5:12-CV-01891 PSG, 2013 WL 3124647, at *8 (N.D. Cal. June 18, 2013).  Here, Plaintiffs have not just alleged legal or factual

27   conclusions that they would not have purchased the Products had they known they were labeled in violation of governmental regulations.  Rather, they have detailed the reasons why the

28   representations at issue were false and misleading (¶¶ 25–31, 34–38), and they have alleged they

9

1    circumstances to enable it to prepare a defense, thus satisfying Rule 9(b)'s requirements.  *See*

2    *Kearns*, 567 F.3d at 1124.

3    **B.    Plaintiffs' Detailed Allegations Are Entirely Plausible**

4        In *Iqbal*, the Supreme Court cautioned that "[t]hreadbare recitals of the elements of a

5    cause of action, supported by mere conclusory statements, do not suffice" to survive a Rule

6    12(b)(6) motion to dismiss.  *Iqbal*, 662 U.S. at 679 (citing *Twombly*, 550 U.S. at 555).  On the

7    other end of the spectrum, "[a] claim has facial plausibility when the plaintiff pleads factual

8    content that allows the court to draw the reasonable inference that the defendant is liable for the

9    misconduct alleged."  *Id.* at 678.  Because Plaintiffs here have pleaded sufficient non-conclusory

10   factual material to establish each of the elements of their claims, their claims should survive a

11   Rule 12(b)(6) motion to dismiss.

12       Although Defendant seeks to inject its own opinion about how reasonable consumers

13   would view various representations made about the products, California courts have long

14   recognized, even after *Twombly* established the "plausibility standard," that the question of

15   whether a business practice is deceptive will generally be a question of fact not appropriate for

16   decision on demurrer.  *See Gerber*, 552 F.3d at 938–39 (reversing district court's dismissal of

17   claim of deceptive packaging on a motion to dismiss); *see also Asis Internet Servcs. v.

18   Subscriberbase Inc.*, No. 09–3503 SC, 2010 WL 1267763, at *2 (N.D. Cal. Apr. 1, 2010)

19   ("Various California authorities maintain that whether a reasonable consumer would be deceived

20   by a particular ad or practice is a question of fact.").  As was the case in *Gerber*, there are a

21   number of features of the packaging at issue here that are likely to deceive consumers.  Thus, it

22   would be inappropriate for the Court to decide whether the product packaging is deceptive to a

23   reasonable consumer on this Motion.

24       In regard to "natural" representations like the ones at issue, various courts have found

25   that the question of whether such representations are deceptive presents "numerous factual issues

26   . . . inappropriate for decision on a Rule 12(b)(6) motion."  *Vicuña v. Alexia Foods, Inc.*, No. C

27

28

---

would not have purchased the products had they known the truth about the products (¶¶ 11, 13).

OPPOSITION TO MOTION TO DISMISS PLAINTIFFS' COMPLAINT
Case No. 3:13-cv-03075-JSC

11-6119 PJH, 2012 WL 1497507, at *2 (N.D. Cal. Apr. 27, 2012) (holding that a complaint was sufficiently particular under Rule 9(b) and inappropriate for dismissal on a Rule 12(b)(6) motion where it alleged that potato chips were deceptively labeled as "All Natural" despite the presence of a preservative); *see also Gerber*, 552 F.3d at 939 ("Further, the statement that Fruit Juice Snacks [were] made with 'fruit juice and other all natural ingredients' could easily be interpreted by consumers as a claim that all the ingredients in the product were natural, which appears to be false.").

Additionally, several courts have determined that allegations regarding "natural" representations are plausibly alleged to be deceptive when the allegations explain why some ingredients are not natural. *See, e.g.*, *In re ConAgra Foods Inc.*, 908 F. Supp. 2d 1090, 1100-01, 1101 n.32 (C.D. Cal. 2012) (finding allegations plausible that Wesson Oil labeled as "100% Natural" was deceptively labeled because it contained genetically modified ingredients, noting that the plaintiffs had not merely stated in a conclusory fashion what consumers would expect); *Von Koenig v. Snapple Beverage Corp.*, 713 F. Supp. 2d 1066, 1080 (E.D. Cal. 2010) (finding it plausible that consumers would be deceived by the labeling of a beverage product as "All Natural" despite the presence of high fructose corn syrup, an allegedly unnatural ingredient); *Hitt v. Ariz. Beverage Co., LLC*, No. 08–cv–809, 2009 WL 449190 (S.D. Cal. Feb. 4, 2009) (same).

Defendant discusses one case where a court determined as a matter of law that claims were implausible. (*See* Mot. at 7 (citing *Werbel v. PepsiCo, Inc.*, No. C 09-04456 SBA, 2010 U.S. Dist. LEXIS 76289, 2010 WL 2673860 (N.D. Cal. July 1, 2010)).) But *Werbel* is distinguishable, as it involved allegations that consumers were misled to believe "Cap'n Crunch's Crunch Berries" cereal was made with real berries or fruit when pictures of the so-called "Crunch Berries" on the *front of the packaging* made clear that they were colored cereal balls, not real berries. *See Werbel*, 2010 WL 2673860, at *3.

Defendant also cites, without elaboration on its relevance, *Videtto v. Kellogg USA*, No. 2:08-cv-01324-MCE-DAD, 2009 U.S. Dist. LEXIS 43114, at *8-9, 2009 WL 1439086 (E.D. Cal. May 21, 2009) (Mot. at 10:22-24), but the plaintiffs in that case implausibly argued that consumers were misled by the "fanciful use of a nonsensical word" ("Froot") to believe that

11

1   "Froot Loops" cereal was made from real fruit, *Videtto*, 2009 WL 1439086, at *3.  Clearly, such

2   an argument was implausible.  Tellingly, Defendant cites no cases finding that reasonable

3   consumers could not interpret the terms "pure" or "natural" to mean that a product was free of

4   synthetic ingredients.[8]

5          Rather, Defendant baldly asserts that the phrase "pure & natural" is not an objective term

6   with uniform and well-defined meanings and that Defendant's actions amount to mere puffery.

7   (Mot. at 9.)  As noted in one of the cases Defendant cites, puffery's distinguishing characteristics

8   are "vague, highly subjective claims as opposed to specific, detailed factual assertions."  *Haskell*

9   *v. Time, Inc.*, 857 F. Supp. 1392, 1399 (E.D. Cal. 1994).  Given that definition, the

10  representations at issue are clearly not puffery.  There is nothing subjective about the purity or

11  naturalness of a product.  It can either be proven or disproven.  As for Defendant's argument

12  about whether "pure & natural" has a commonly understood meaning, that, of course, is a

13  question of fact that cannot be determined on a motion to dismiss.  Notably, though, one

14  accepted definition for the term "Nature" is "Something ***pure*** or true ***as distinguished from***

15  ***something artificial*** or contrived."  Black's Law Dictionary (9th ed. 2009) (emphasis added).

16         Furthermore, it defies logic to believe, as Defendant argues, that Defendant places the

17  "pure & natural" representation so prominently on the packaging for the Diapers but does not

18  expect consumers will rely on the representation.  (*See* Mot. at 9-10.)

19         Defendant next argues that, even if a consumer were misled by the most prominent

20

21  _____

22  [8] In an attempt to argue that the Court can determine, as a matter of law, that reasonable
    consumers would not interpret "pure & natural" as meaning a product has no synthetic
23  components, Defendant cites *Astiana v. Kashi Co.*, No. 3:11-cv-01967-H (BGS), 2013 U.S. Dist.
    LEXIS 108445, 2013 WL 3943265 (S.D. Cal. July 30, 2013) ("*Kashi*").  (Mot. at 9.)  But *Kashi*
24  directly contradicts this argument.  The *Kashi* court's findings about consumers' understanding
    of the phrase "All Natural" were based on ***evidence*** the defendant submitted.  *Kashi*, 2013 WL
25  3943265, at *12.  Defendant may, of course, have an opportunity to attempt a similar argument
    following discovery in this matter.  At this stage of the proceedings, though, *Kashi* lends no
26  support for Defendant's argument that the prominent representation "pure & natural" on a diaper
    package could not be misleading to reasonable consumers.  Rather, given the detailed allegations
27  in the Complaint concerning why a reasonable consumer would be misled about the composition
    of the Diapers and Wipes (¶¶ 23-38), the Court cannot conclude that reasonable consumers
28  would not be misled.

OPPOSITION TO MOTION TO DISMISS PLAINTIFFS' COMPLAINT
Case No. 3:13-cv-03075-JSC

1    representation on the packaging (other than the name "Huggies"), surely any "misconception"

2    would be clarified by other representations "clearly disclose[d]" on the packaging. (*See* Mot. at

3    10-11.)   But Defendant's reliance on two of the representations—"Soft Outer Cover With

4    Organic Cotton" and "Liner Includes Renewable Materials"—is a red herring.   Those

5    representations are not even on the front of the packaging for the Diapers. (*See generally* ¶ 23,

6    image following.)   Accordingly, Defendant's argument regarding those two disclosures is

7    foreclosed by well-settled Ninth Circuit law.   *See Gerber*, 552 F.3d at 939 ("Reasonable

8    consumers should [not] be expected to look beyond misleading representations on the front of

9    the box to discover the truth from the ingredient list in small print on the side of the box.").

10   Indeed, the Complaint does not even mention these representations because parents of young

11   children are not plausibly expected to scrutinize every obscure statement that appears on the side

12   or back panels of product packaging.   *See id.*

13        The additional representations on the front packaging reinforce Plaintiffs' argument that

14   "pure & natural" conveys that the Diapers are, in fact, pure and natural.   As noted in the

15   Complaint (and as seen in the packaging pictures submitted by Defendant), the front packaging

16   for the Diapers has the unqualified statement "soft organic cotton." (*See* ¶ 23.)   This statement

17   conveys to reasonable consumers that the entire product is made of soft organic cotton. (¶ 28.)

18   Defendant does not dispute this.   Rather, Defendant does not focus on this prominent

19   representation but, instead, focuses on the qualified statement "Soft Outer Cover With Organic

20   Cotton", which does not appear on the front packaging.   If the front packaging had such a

21   representation on it, Defendant might have a plausible argument.   As it is, though, its argument

22   merely concedes that Defendant should not have made a prominent, unqualified representation

23   when the truth was more limited in scope.

24        The only "clarifying" representation that Defendant focuses upon that does appear on the

25   front packaging—"Aloe & Vitamin E"—does nothing to dispel the message that the Diapers are

26   totally pure and natural, as most consumers would likely believe such ingredients are pure and

27   natural.   Nor would such a representation convey to consumers that the Diapers contain

28   potentially harmful ingredients like polypropylene and sodium polyacrylate. (*See* ¶ 29.)

1    With respect to the Wipes, Defendant's arguments similarly miss the mark.  Defendant

2    touts the ingredient list that "plainly disclosed [two unnatural ingredients] on the product

3    packaging a mere three inches from the 'Natural Care' representation."   (Mot. at 12:18-22.)

4    Defendant neglects to mention that the ingredient list is not on the front label.  (¶ 37 (noting that

5    none of the unnatural or hazardous ingredients are listed on the front label).)  Therefore, it cannot

6    rely on such obscure disclosures to clarify more prominent misleading representations.  *Gerber*,

7    552 F.3d at 939 ("We do not think that the FDA requires an ingredient list so that manufacturers

8    can mislead consumers and then rely on the ingredient list to correct those misinterpretations and

9    provide a shield for liability for the deception.").[9]

10    In addition to other irrelevant cases, Defendant relies heavily on *Hill v. Roll International*

11    *Corporation*, 195 Cal. App. 4th 1295 (Cal. Ct. App. 2011).  (Mot. at 13-15.)  Yet, Defendant

12    ignores the fact that *Hill* only involved an image of a "green drop" and the relatively vague word

13    "green."  *See Hill*, 195 Cal. App. 4th at 1299.  Unlike the instant matter, the product at issue in

14    *Hill* was not labeled with specific words with defined meanings, such as "pure" or "natural."

15    Furthermore, Defendant misconstrues the context of the *Hill* court's statement that "the

16    FTC guides do not prohibit . . . 'touting' a product's 'green' features."  *Id.* at 1305 (quoted in

17    Mot. at 14:16-17).  The opinion in *Hill* cited to the Green Guides, 16 C.F.R. § 260.3 (2011), for

18    the proposition that the Green Guides were created to provide "a 'safe harbor' for advertisers

19    wanting to make environmental marketing claims."  *Hill*, 195 Cal. App. 4th at 1305 (quoting 16

20    C.F.R. § 260.3 (2011)).  The full text of 16 C.F.R. § 260.3 (2011) makes clear that any "safe

21    harbors" provided by the Green Guides are with regard to ***specific, qualified claims that the***

22    ***FTC provided as model examples***.  *See* 16 C.F.R. § 260.3 (2011), *available at*

23

---

24    [9] The cases Defendant cites are all easily distinguishable.  For example, as the Ninth Circuit
25    Court of Appeals noted in its later opinion in the *Williams* action, *Freeman v. Time, Inc.*, 68 F.3d
      285 (9th Cir. 1995), involved disclosures in a sweepstakes advertisement that were "explicitly
26    stated multiple times."  *Williams*, 552 F.3d at 939.  As for *McKinniss v. General Mills, Inc.*, it
      relied upon *Freeman* rather than *Williams*, which had not yet been decided.  *See McKinniss v.*
27    *Gen. Mills, Inc.*, No. CV 07-2521 GAF, 2007 WL 4762172, at *4 (C.D. Cal. Sept. 18, 2007).
      Accordingly, it has been superseded on the issue that Defendant relies on it for—that disclosures
28    in an ingredient list sufficiently correct false statements that are more prominent.

OPPOSITION TO MOTION TO DISMISS PLAINTIFFS' COMPLAINT
Case No. 3:13-cv-03075-JSC

1   http://www.gpo.gov/fdsys/pkg/CFR-2011-title16-vol1/pdf/CFR-2011-title16-vol1-sec260-3.pdf.

2   Defendant cannot point to any model examples in the Green Guides that the phrases "pure &

3   natural" or "Natural Care" are in accordance with.   Therefore, Defendant's conduct is not

4   protected by any safe harbor in the Green Guides, and its reliance on *Hill* is mistaken.[10]

5   **C.      Plaintiffs Have Standing Due to Alleged Economic Injury**

6          Defendant argues that Plaintiffs have not established standing because they have not

7   sufficiently pleaded economic injury.   Defendant is wrong.   Plaintiffs have adequately alleged

8   that they would not have purchased the products at premium prices if they had not been misled

9   by Defendant's representations.   (*See* ¶ 85; *see also* ¶¶ 11, 13.)

10         The recent decision in *Samet v. Procter & Gamble Co.*, 2013 WL 3124647, is directly on

11  point.   In *Samet*, the plaintiffs alleged that various products sold by the Kellogg Company,

12  including Pringles-brand chips that had previously been sold by Proctor & Gamble Company,

13  were mislabeled.   In seeking dismissal pursuant to Rule 9(b) and Rule 12(b)(6), the defendants

14  argued that the plaintiffs lacked standing under both Article III and the economic injury

15  requirements of the California statutes because none of the products at issue were alleged to have

16  been tainted, spoiled, adulterated, or contaminated.   *Samet*, 2013 WL 3124647, at *3.   The court

17  rejected this argument, stating:

18         Plaintiffs here allege that as health-conscious consumers, they relied on the
19         misleading product labels in purchasing the products, and had they known the
           truth, they would not have purchased the products at the premium price paid.
20         Accepting as true these allegations for the purpose of a motion to dismiss,
           Plaintiffs spent money they otherwise would have saved but for defendants' acts
21         of unfair competition.   Courts in this district have overwhelmingly found that
           such allegations are sufficient to establish economic injury.   Whether Plaintiffs
22         actually did pay a premium price as a result of false and misleading labeling
           remains to be determined at a later stage in this litigation.   As alleged, however,
23         the injury of paying a higher price for a falsely advertised product is enough to
24         show Plaintiffs suffered particularized harm to a legally protectable interest in the
           form of an economic loss.
25

26
_____

27  [10] Defendant also makes a "once bitten, twice shy" argument that consumers ought to be able to
28  figure out they were duped when they open the packaging for the Natural Diapers and Natural
    Wipes.  (Mot. at 14-15.)  This presents a factual issue not able to be decided at this juncture.

15

1    *Id.* (citations omitted); *see also Chavez v. Blue Sky Natural Beverage Co.*, 340 F. App'x 359, 361

2    (9th Cir. 2009) (finding allegations sufficient for standing under California law that consumer

3    lost money on product that had less value as a result of misrepresentations about the product).

4         In addition to citing a New Jersey case decided under New Jersey law, Defendant cites to

5    *In re Vioxx Class Cases*, 180 Cal. App. 4th 116 (Cal. Ct. App. 2009), in support of their Article

6    III argument.  (*See* Mot. at 15-16.)  Yet, the *In re Vioxx* decision was not addressing a motion to

7    dismiss or Article III standing.  Rather, the appellate court was evaluating a denial of a motion

8    for class certification.  *See In re Vioxx*, 180 Cal. App. 4th at 120.  As part of its analysis, the

9    court discussed that California's UCL only allows restitution for a price differential where there

10   is *evidentiary support* of a differential between what the plaintiff paid and the value of what the

11   plaintiff received.  *Id.* at 131.  Clearly, *In re Vioxx* does not establish the standard for what is

12   required at the pleading stage.

13        Rather, where courts have considered on a motion to dismiss allegations under California

14   law about a premium price, they have not required the plaintiff to specifically allege prices of

15   comparable products.  *See, e.g.*, *Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG), 2010 WL

16   2925955, at *19 (E.D.N.Y. July 21, 2010) (where plaintiffs alleged that "[h]ad [they] known the

17   truth that the statements they relied on were false, misleading, deceptive, and unfair, they would

18   have neither purchased VitaminWater nor paid the premium price [the defendants] charged for

19   it," such allegations were sufficient for purposes of California's UCL) (citing *Chavez*, 340 Fed.

20   Appx. 359 (injury sufficiently pled where plaintiff purchased product because of

21   misrepresentation that it was from New Mexico); *Koh v. S.C. Johnson & Son, Inc.*, No. C–09–

22   00927 (RMW), 2010 WL 94265, at *2 (N.D. Cal. Jan. 6, 2010) (complaint adequately alleged

23   injury under UCL through claims that plaintiff bought the product at a premium price in reliance

24   on misleading suggestion that it was environmentally friendly)).[11]

25   _____

26   [11] In support of its standing argument, Defendant also cites to *Herrington v. Johnson & Johnson*

27   *Consumer Cos.*, No. C 09-1597 CW, 2010 U.S. Dist. LEXIS 90505, at *17-18, 2010 WL
     3448531 (N.D. Cal. Sept. 1, 2010).  (Mot. at 17:4-9.)  Unlike Plaintiffs here, the plaintiffs in

28   *Herrington* had not alleged a premium price.  *Herrington*, 2010 WL 3448531, at *4 ("Nor have
     Plaintiffs alleged they overpaid or otherwise did not enjoy the benefit of their bargain.").

OPPOSITION TO MOTION TO DISMISS PLAINTIFFS' COMPLAINT
Case No. 3:13-cv-03075-JSC

1   Moreover, Plaintiffs need not prove the exact price premium.  *See Guido v. L'Oreal,*

2   *USA, Inc.*, 284 F.R.D. 468, 479 (C.D. Cal. 2012) ("California law permits plaintiffs to seek

3   recovery of a 'price premium,' regardless of whether plaintiffs were able to quantify the

4   premium that was paid or identify other products sold at a lower price . . . ." (citing *Kwikset*

5   *Corp. v. Sup. Ct.*, 51 Cal. 4th 310, 329 (2011) ("For each consumer who relies on the truth and

6   accuracy of a label and is deceived by misrepresentations into making a purchase, the economic

7   harm is the same: the consumer has purchased a product that he or she paid more for than he or

8   she otherwise might have been willing to pay if the product had been labeled accurately.  This

9   economic harm—the loss of real dollars from a consumer's pocket—is the same whether or not a

10  court might objectively view the products as functionally equivalent.")))

### D.    Plaintiffs Have Standing to Seek Injunctive Relief

12  The California Supreme Court has repeatedly recognized the importance of consumer

13  class actions under the UCL.  *Krauss v. Trinity Mgmt. Servcs., Inc.*, 23 Cal. 4th 116, 126 (2000).

14  Additionally, it has recognized that the purpose of injunctive relief pursuant to the UCL is to

15  "protect the public."  *Id.*; *In re Tobacco II Cases*, 46 Cal. 4th 298, 320 (2009) ("The purpose of

16  [injunctive] relief, in the context of a UCL action, is to protect California's consumers against

17  unfair business practices by stopping such practices in their tracks.").  Not surprisingly, then,

18  numerous California courts have rejected the argument that Defendant makes here regarding the

19  unavailability of injunctive relief for defrauded consumers who now know they were defrauded.

20  (*See* Mot. at 18-20.)

21  Indeed, if a consumer's mere recognition of alleged deception were to defeat standing for

22  an injunction, then injunctive relief would never be available in false advertising cases, which is

23  a wholly absurd result.  *See Koehler v. Litehouse, Inc.*, No. CV 12-04055 SI, 2012 WL 6217635,

24  at *6 (N.D. Cal. Dec. 13, 2012) (noting that accepting an argument such as Defendant makes

25  here "would eviscerate the intent of the California legislature in creating consumer protection

26  statutes because it would effectively bar any consumer who avoids the offending product from

27  seeking injunctive relief"); *see also Larsen v. Trader Joe's Co.*, No. C 11-05188 SI, 2012 WL

28  5458396, at *4 (N.D. Cal. June 14, 2012); *Cabral v. Supple, LLC*, No. EDCV 12-00085-MWF,

1    2012 WL 4343867, at *2-3 (C.D. Cal. Sept. 19, 2012); *Henderson v. Gruma Corp.*, No. 10-

2    04173, 2011 WL 1362188, at *8-9 (C.D. Cal. Apr. 11, 2011).  The court's analysis in *Henderson*

3    is directly on point:

4           Defendant claims Plaintiffs do not have standing to seek injunctive relief because

5           there is no threat of future injury, as "Plaintiffs are now aware of the FDA

            requirements for label disclosures and the ingredients in Gruma's products and

6           allege they will not purchase the products at issue in the future."  Mot., at 19.

7           This is essentially a redressability argument.  *See Cattie v. Wal–Mart, Inc.,* 504

            F.Supp.2d 939, 951 (S.D. Cal. 2007) (Burns, J.) ("Even if [Plaintiff] was

8           [injured], however, it is unclear how prospective relief will redress her injury,

            since she is now fully aware of the linens' thread count.").  The Court finds

9           Defendant's argument unpersuasive.

10          First, Plaintiffs have sufficiently demonstrated actual injury, as discussed above.

11          If the Court were to construe Article III standing for FAL and UCL claims as

            narrowly as the Defendant advocates, federal courts would be precluded from

12          enjoining false advertising under California consumer protection laws because a

13          plaintiff who had been injured would always be deemed to avoid the cause of the

            injury thereafter ("once bitten, twice shy") and would never have Article III

14          standing.  *See, e.g.*, *Fortyune v. American Multi–Cinema, Inc.*, No. CV 10–5551,

15          2002 WL 32985838, *7 (C.D. Cal. Oct. 22, 2002) (Manella, J.) ("If this Court

            rules otherwise [and does not find standing], like defendants would always be

16          able to avoid enforcement of the ADA.  This court is reluctant to embrace a rule

17          of standing that would allow an alleged wrongdoer to evade the court's

            jurisdiction so long as he does not injure the same person twice.") (citing *Parr v.

18          L & L Drive–Inn Restaurant*, 96 F.Supp.2d 1065, 1080 (D. Hawai'i 2000)

            (Yamashita, M.J.)).

19          While Plaintiffs may not purchase the same Gruma products as they purchased

20          during the class period, because they are now aware of the true content of the

            products, to prevent them from bringing suit on behalf of a class in federal court

21          would surely thwart the objective of California's consumer protection laws.  That

22          objective is "to protect both consumers and competitors by promoting fair

            competition in commercial markets for goods and services."  *See Kwikset*, 51 Cal.

23          4th at 344, 120 Cal. Rptr. 3d 741, 246 P.3d 877 (emphasis in the original).

24          Defendant has not presented evidence or even alleged that it has removed its

            allegedly misleading advertising from its products.   With such advertising

25          remaining on supermarket shelves, Plaintiffs, as representatives of a class, should

26          be entitled to pursue injunctive relief on behalf of all consumers in order to

            protect consumers from Defendant's alleged false advertising.

27   *Henderson*, 2011 WL 1362188, at *7–8.

28

---

18

**E.      Wisconsin Law Applies to Defendant's Conduct that Occurred in Wisconsin**

The Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18 ("DTPA"), does not limit its protection to Wisconsin residents only.  By its terms, it applies to any misrepresentations "made, published, disseminated, circulated, or placed before the public" in Wisconsin.  Wis. Stat. § 100.18(1).[12]  Thus, the plain language of section 100.18(1) focuses on where the deceptive label is made and enters the stream of commerce, not where the plaintiff resides and/or receives the misrepresentations.   Plaintiffs have alleged that "Defendant's marketing program was devised, implemented, and directed from Defendant's headquarters in Neenah, Wisconsin." Thus, the conduct alleged falls within the definition of deceptive conducted under Wisconsin's DTPA.

The fact that Defendant is based in Wisconsin, and that the deceptive conduct occurred in and emanated out of Wisconsin also distinguishes this case from those principally relied upon by Defendant, such as *Mazza v. American Honda Motor Co.* and *Pardini v. Unilever United States, Inc.* (*see, e.g.*, Mot. at 23: 9-12), where the defendants were based in California.

Moreover, Wisconsin's DTPA provides a private right of action for enforcement to "[a]ny person suffering pecuniary loss because of a violation of this section."  Wis. Stat. § 100.18(11)(b).  Defendant points to no provision of the statute or case law, nor is there any, that limits the term "person" to Wisconsin residents.

Rather than address the statutory elements of a Wisconsin DTPA claim, Defendant asks the Court to engage in a choice-of-law analysis, providing no reason why the Court need do so.

---

[12] In relevant part, section 100.18(1) provides that "[n]o . . . corporation . . ., with intent to sell [or] distribute . . . anything offered by such . . . corporation . . . , directly or indirectly, to the public for sale . . . shall make, publish, disseminate, circulate, or place before the public, or cause, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public, in this state, in a newspaper, magazine or other publication, or in the form of a book, notice, handbill, poster, bill, circular, pamphlet, letter, sign, placard, card, label, or over any radio or television station, or in any other way similar or dissimilar to the foregoing, an advertisement, announcement, statement or representation of any kind to the public relating to such purchase, sale, hire, use or lease of such . . . merchandise . . . , which advertisement, announcement, statement or representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading."

OPPOSITION TO MOTION TO DISMISS PLAINTIFFS' COMPLAINT
Case No. 3:13-cv-03075-JSC

In the cases Defendant relies upon, the courts were evaluating whether a motion for class certification should be granted.  *See, e.g.*, *Mazza v. Am. Honda Co.*, 666 F.3d 581, 589 (9th Cir. 2012); *In re Hitachi TV Optical Block Cases*, No. 08cv1746 DMS (NLS), 2011 U.S. Dist. LEXIS 135, 2011 WL 9403, at *1 (S.D. Cal. Jan. 3, 2011).   Since evaluation of class certification issues is premature at this stage, as discussed further below, the Court need not conduct a choice-of-law analysis for that purpose.

Additionally, even if Plaintiffs cannot ultimately recover under both California's and Wisconsin's consumer protection statutes, Plaintiffs are entitled to plead causes of action under different state laws as alternative theories of recovery.  *See Putnam v. Putnam Lovell Group NBF Secs., Inc.*, No. C 05-1330 CW, 2006 WL 1821207, at *6 (N.D. Cal. June 30, 2006) (allowing plaintiff to plead fraud claim under California law as alternative to breach-of-contract claim under New York law).   Therefore, Plaintiffs are not precluded from alleging claims under California law and, in the alternative, under Wisconsin law, and the Court need not engage in a choice-of-law analysis for that purpose either.[13]

### F.   Dismissal of Plaintiffs' Class Action Claims at This Stage Would Be Premature

Defendant next asks the Court to hold that a nationwide class cannot be certified under Wisconsin law due to California's choice-of-law rules.  In part, Defendant's argument is based on its mistaken assertion that Plaintiffs cannot bring a cause of action pursuant to the Wisconsin DTPA.  (*See* Mot. at 24:14-15.)  As demonstrated above, Defendant is incorrect on that point. As to its argument that other class members cannot bring claims pursuant to Wisconsin law, the Court need not reach that question at this stage.  Indeed, many courts in this district have held that doing so would be premature, given the lack of discovery and lack of arguments that accompany a motion for class certification.  *See, e.g.*, *Won Kyung Hwang v. Ohso Clean, Inc.*, No. C-12-06355 JCS, 2013 WL 1632697, at *21 (N.D. Cal. Apr. 16, 2013) ("*Ohso Clean*").

---

[13] Defendant mischaracterizes Plaintiffs' allegations as concerning "material omissions."  (Mot. at 21:11.)   Plaintiffs' claims are all based upon affirmative misrepresentations, which are indisputably actionable under California's UCL and CLRA and the Wisconsin DTPA.

OPPOSITION TO MOTION TO DISMISS PLAINTIFFS' COMPLAINT
Case No. 3:13-cv-03075-JSC

The court's analysis in *Ohso Clean* is directly on point.  There, the defendants asked the court to strike the plaintiff's class allegations, arguing that *Mazza* precluded the application of one state's laws to a nationwide class.  The court rejected this argument and stated as follows:

> *Mazza* . . . did not establish such a bright-line rule but rather, determined on the basis of a detailed choice-of-law analysis, at the class certification stage of the case, that in *that case* California law should not be applied to non-California residents. [*Mazza*, 666 F.3d] at 594 ("Under the facts and circumstances of this case, we hold that each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place[.]").  Such an inquiry is most appropriate at the class certification stage of the case, after the parties have engaged in discovery.  The Court finds the choice of law question raised by Defendants to be premature and therefore declines Defendants' invitation to engage in such an analysis at this early stage of the case.

*Ohso Clean*, 2013 WL 1632697, at *21 (emphasis in original); *see also Werdebaugh v. Blue Diamond Growers*, No. 12-CV-02724-LHK, 2013 WL 5487236 (N.D. Cal. Oct. 2, 2013) ("Absent the sort of detailed choice-of-law analysis that guided the Ninth Circuit in *Mazza,* the Court declines to evaluate how California's choice-of-law rules affect [the plaintiff]'s class claims at this time."); *Clancy v. Bromley Tea Co.*, No. 12-CV-03003-JST, 2013 WL 4081632 (N.D. Cal. Aug. 9, 2013) ("Such a detailed choice-of-law analysis is not appropriate at this stage of the litigation.  Rather, such a fact-heavy inquiry should occur during the class certification stage, after discovery."); *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1159 (C.D. Cal. 2012) ("We find Defendants' argument to be unripe at this stage of litigation.  *Mazza* did not purport to hold that nationwide classes are, as a matter of law, uncertifiable under California's consumer protection laws, which is unsurprising given the case-specific nature of choice-of-law analysis.").

## V.   CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion.

OPPOSITION TO MOTION TO DISMISS PLAINTIFFS' COMPLAINT
Case No. 3:13-cv-03075-JSC

1   DATED: October 22, 2013

Respectfully submitted,

2                                          **REESE RICHMAN LLP**

3                                           *Kim E. Richman*

Kim E. Richman (admitted *pro hac vice*)

4                                          *krichman@reeserichman.com*

Michael R. Reese (SBN 206773)

5                                          *mreese@reeserichman.com*

875 Avenue of Americas, 18th Floor

6                                          New York, New York  10001

Telephone: (212) 643-0500

7                                          Facsimile: (212) 253-4272

8

9                                          *Counsel for Plaintiffs Dianna Jou and Jaynry Young and the Proposed Class*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO MOTION TO DISMISS PLAINTIFFS' COMPLAINT
Case No. 3:13-cv-03075-JSC