TIMOTHY T. SCOTT (State Bar No. 126971)
tscott@kslaw.com
GEOFFREY M. EZGAR (State Bar No. 184243)
gezgar@kslaw.com
KING & SPALDING LLP
333 Twin Dolphin Drive, Suite 400
Redwood Shores, CA 94065
Telephone:  (650) 590-0700
Facsimile:  (650) 590-1900

STEPHEN B. DEVEREAUX (GA Bar No. 219791) (admitted *pro hac vice*)
sdevereaux@kslaw.com
MADISON H. KITCHENS (GA Bar No. 561653) (admitted *pro hac vice*)
mkitchens@kslaw.com
KING & SPALDING LLP
1180 Peachtree Street N.E.
Atlanta, GA 30309-3521
Telephone:  (404) 572-4600
Facsimile:  (404) 572-5100

Attorneys for Defendants KIMBERLY-CLARK CORPORATION;
KIMBERLY-CLARK WORLDWIDE, INC.; KIMBERLY-
CLARK GLOBAL SALES, LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| DIANNA JOU and JAYNRY YOUNG, individually and on behalf of other similarly situated individuals,<br><br>        Plaintiffs,<br><br>    v.<br><br>KIMBERLY-CLARK CORPORATION; KIMBERLY-CLARK WORLDWIDE, INC.; KIMBERLY-CLARK GLOBAL SALES, LLC; and DOES 1-5.<br><br>        Defendants. | Case No. 3:13-cv-03075 JSC<br><br>**DEFENDANTS' REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT OR, IN THE ALTERNATIVE, MOTION TO STRIKE**<br><br>Date:    December 5, 2013<br>Time:    9:00 a.m.<br> Judge:   Magistrate Judge Jacqueline Scott<br>          Corley<br><br>Complaint Filed:  July 3, 2013 |

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................................1

II.  ARGUMENT .....................................................................................................................2

    A.  Plaintiffs Have Not Plausibly Alleged that a Reasonable Consumer Would Likely Be Deceived by the Products' Labeling.................................................................2

        1.  The Allegedly Misleading Representations Were Properly Qualified .........................2

        2.  Plaintiffs' Arguments Are Controverted by the Leading Precedent on "Green Marketing" Claims and the FTC's Position on "Natural" Claims ...............................5

    B.  Plaintiffs Fail to Surmount Rule 9(b)'s Heightened Pleading Burden. .............................8

    C.  The Allegations Do Not Comport with Article III Standing Requirements. ....................10

        1.  Plaintiffs Lack Standing to Seek Restitution ...........................................................10

        2.  Plaintiffs Lack Standing to Seek Injunctive Relief...................................................11

    D.  California Choice of Law Precludes Application of Wisconsin Law Here. ......................12

    E.  Striking the Nationwide Class Would Not Be "Premature." ...............................................14

    F.  Because the Labeling Itself Confirms that the Products Are Not "Likely to Deceive Reasonable Consumers," Leave to Amend Would Be Futile. .............................15

III. CONCLUSION..................................................................................................................15

# **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Arroyo v. Pfizer, Inc.*,
No. C-12-4030 EMC, 2013 U.S. Dist. LEXIS 13789 (N.D. Cal. Jan. 31, 2013) .....................4

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009) ........................................................................................1

*Astiana v. Kashi Co.*,
No. 3:11-CV-01967-H2013, U.S. Dist. LEXIS 108445 (S.D. Cal. July 30, 2013) ..................7

*Banks v. Nissan N. Am., Inc.*,
No. 12-1586 SC, 2012 WL 8969415 (N.D. Cal. Mar. 20, 2012)............................................15

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ...........................................................................................9

*Bruton v. Gerber Prods. Co.*,
No. 12-CV-02412-LHK, 2013 U.S. Dist. LEXIS 129241 (N.D. Cal. Sept. 6, 2013)...............4

*Calnin v. Hilliard*,
No. 05-C-694, 2008 U.S. Dist. LEXIS 8590 (E.D. Wis. Feb. 5, 2008)...................................12

*Delarosa v. Boiron, Inc.*,
No. SACV 10-1569-JST, 2012 U.S. Dist. LEXIS 188828 (C.D. Cal. Dec. 28, 2012)......11, 12

*Eberts v. Goderstad*,
569 F.3d 757 (7th Cir. 2009) ..............................................................................14

*Force v. ITT Hartford Life & Annuity Ins. Co.*,
4 F. Supp. 2d 843 (D. Minn. 1998) ......................................................................13

*Forcellati v. Hyland's, Inc.*,
876 F. Supp. 2d 1155 (C.D. Cal. 2012) .................................................................14

*Frezza v. Google Inc.*,
No. 5:12-cv-00237-RMW, 2013 U.S. Dist. LEXIS 57462 (N.D. Cal. Apr. 22, 2013) ...........15

*Frontier Oil Corp. v. RLI Ins. Co.*,
153 Cal. App. 4th 1436 (Cal. Ct. App. 2007) ......................................................13

*Goshen v. Mut. Life Ins. Co.*,
98 N.Y.2d 314 (N.Y. 2002) ................................................................................13

*Hairston v. South Beach Bev. Co.*,
No. CV 12-1429-JFW, 2012 U.S. Dist. LEXIS 74279 (C.D. Cal. May 18, 2012)..................4

*Hartmann v. Cal. Dep't of Corr. & Rehab.*,
    707 F.3d 1114 (9th Cir. 2013) ........................................................................15

*Henderson v. Gruma Corp.*,
    No. CV 10-04173 AHM, 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) ...............................11

*Hill v. Roll Int'l Corp.*,
    195 Cal. App. 4th 1295 (Cal. Ct. App. 2011) ...............................................5, 6, 15

*Johnson v. Lucent Techs., Inc.*,
    653 F.3d 1000 (9th Cir. 2011) .....................................................................1, 13

*Majdipour v. Jaguar Land Rover N. Am., LLC*,
    No. 2:12-cv-07849, 2013 U.S. Dist. LEXIS 146209 (D.N.J. Oct. 9, 2013) ........................15

*Manchouck v. Mondeléz Int'l, Inc.*,
    No. C 13-02148 WHA, 2013 U.S. Dist. LEXIS 138877 (N.D. Cal. Sept. 26, 2013) ............3, 4

*Maple v. Costco Wholesale Corp.*,
    No. CV-12-5166-RMP, 2013 U.S. Dist. LEXIS 157201 (E.D. Wash. Nov. 1, 2013) .........9, 10

*Mason v. Nature's Innovation, Inc.*,
    No. 12cv3019 BTM, 2013 U.S. Dist. LEXIS 68072 (S.D. Cal. May 13, 2013) ....................11

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) .........................................................................13

*Morley-Murphy Co. v. Zenith Elecs. Corp.*,
    142 F.3d 373 (7th Cir. 1998) .........................................................................12

*Pardini v. Unilever United States, Inc.*,
    No. 13-1675 SC, 2013 WL 3456872 (N.D. Cal. July 9, 2013)...................................9

*Pelayo v. Nestle USA, Inc.*,
    No. CV 13-5213-JFW, 2013 U.S. Dist. LEXIS 154434 (C.D. Cal. Oct. 25, 2013) .............7, 8

*Red v. Kraft Foods, Inc.*,
    No. CV 10-1028-GW, 2012 U.S. Dist. LEXIS 164461 (C.D. Cal. Oct. 25, 2012) ..........2, 3, 4

*Shin v. BMW of N. Am.*,
    No. CV 09-00398 AHM, 2009 U.S. Dist. LEXIS 67994 (C.D. Cal. July 16, 2009).................4

*Simpson v. California Pizza Kitchen, Inc.*,
    No. 13-cv-164 JLS, 2013 U.S. Dist. LEXIS 153846 (S.D. Cal. Oct. 1, 2013).................10, 11

*Stuart v. Weisflog's Showroom Gallery, Inc.*,
    753 N.W.2d 448 (Wis. 2008)........................................................................14, 15

*Videtto v. Kellogg USA*,
    No. 2:08-cv-01324-MCE-DAD, 2009 U.S. Dist. LEXIS 43114 (E.D. Cal. May 20,
    2009) ..................................................................................................................................4

*Viggiano v. Hansen Natural Corp.*,
    No. CV 12-10747 MMM, 2013 U.S. Dist. LEXIS 70003 (C.D. Cal. May 13, 2013)..............4

*Werbel v. Pepsico, Inc.*,
    No. C 09-04456, 2010 U.S. Dist. LEXIS 76289 (N.D. Cal. July 1, 2010) ...............................4

*Werdebaugh v. Blue Diamond Growers*,
    12-CV-02724-LHK, 2013 WL 5487236 (N.D. Cal. Oct. 2, 2013).........................................14

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) ......................................................................................... *passim*

*Wilson v. Frito-Lay N. Am.*,
    No. 12-1586 SC, 2013 U.S. Dist. LEXIS 153136 (N.D. Cal. Oct. 24, 2013).........................15

STATUTES

Minn. Stat. § 325F.67 ...............................................................................................................13

Wis. Stat. § 100.18 ...................................................................................................................12

OTHER AUTHORITIES

16 C.F.R. § 260.1 ....................................................................................................................3, 6

16 C.F.R. § 260.9 .......................................................................................................................6

16 C.F.R. § 260.10 .....................................................................................................................6

75 Fed. Reg. 63552 ....................................................................................................................8

BLACK'S LAW DICTIONARY (9th ed. 2009) ...............................................................................7

Federal Trade Commission, THE GREEN GUIDES: STATEMENT OF BASIS AND PURPOSE,
    *available at* http://www.ftc.gov/os/ fedreg/2012/10/greenguidesstatement.pdf ......................8

## I.    INTRODUCTION

To determine whether a complaint's allegations amount to a plausible claim, the Court must draw upon its "judicial experience and common sense." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).  Both common sense, and the overwhelming weight of authority, dictate that Plaintiffs' complaint should be dismissed in its entirety.  Nowhere in their Opposition do Plaintiffs plausibly explain how the packaging for Kimberly-Clark's Huggies® Pure & Natural Diapers and Huggies® Natural Care Baby Wipes (the "Products") would lead reasonable consumers to believe that these disposable diapers and baby wipes were made *entirely* of natural components when the labels make no such representation (and, in fact, clearly disclose that they are not).  No reasonable consumer who *actually read* the product packaging—and Plaintiffs never allege they did—could plausibly hold Plaintiffs' unsupported and idiosyncratic beliefs.

Although Plaintiffs' Opposition contends that the "Pure & Natural" and "Natural Care®" representations convey a specific and quantifiable meaning, the relevant case law and the FTC's own public pronouncements hold just the opposite.  And, even if those representations did somehow impart a clear and ascertainable message, that message is plainly and appropriately qualified in the product packaging.  Notably, Plaintiffs do not contend that any of these disclosures are factually incorrect.  Indeed, Plaintiffs' lawsuit rests not on what the Products' labels say, but where they say it.  Yet, Plaintiffs' "placement" theory—based on nothing more than their misreading of the Ninth Circuit's opinion in *Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008)—has been rejected by numerous courts subsequent to *Williams*.

Furthermore, Plaintiffs make no effort to refute the choice-of-law analysis in Kimberly-Clark's opening brief, which clearly demonstrated that the two California residents who filed this case cannot bring claims based on Wisconsin law on behalf of themselves, much less a putative nationwide class.  Instead, Plaintiffs merely contend that it would be "premature" for the Court to rule.  Plaintiffs are mistaken.  As a threshold matter, California law *presumptively* applies to claims filed in California courts.  *Johnson v. Lucent Techs., Inc.*, 653 F.3d 1000, 1008 (9th Cir. 2011).  That would be true in any case.  But it is particularly true where the plaintiffs are California residents bringing claims arising from transactions that occurred in California.  The

fact that there are also clear conflicts between California and Wisconsin law serves only to confirm that only California law could possibly apply here.  Accordingly, no further factual development is needed for the Court to find that California law governs Plaintiffs' claims and that they are foreclosed as a matter of law from representing the proposed nationwide class.

## II.     ARGUMENT

### A.     Plaintiffs Have Not Plausibly Alleged that a Reasonable Consumer Would Likely Be Deceived by the Products' Labeling.

1.     The Allegedly Misleading Representations Were Properly Qualified

Plaintiffs' argument for why the product packaging is misleading to reasonable consumers can be distilled to two main points.  First, Plaintiffs argue that the Products' "so-called 'green' representations…are made without qualification."  Plaintiffs' Opposition Brief ("Pls.' Br.") (Dkt. 32) at 1.  Second, Plaintiffs quibble that the disclosures on the Huggies® Pure & Natural Diapers "are not even on the front packaging" and that the "the ingredient list [for the Huggies® Natural Care Baby Wipes] is not on the front label."  *Id.* at 13-14.  These two arguments are factually false and/or legally irrelevant.

As to the diapers, Plaintiffs argue that the product statement "soft organic cotton" is an "*unqualified* representation" that somehow "conveys to reasonable consumers that the *entire* product is made of soft organic cotton."  Pls.' Br. at 3, 13 (emphasis added).  Any such belief is belied by the product packaging itself, which specifies in large print that the diapers have a "*Soft Outer Cover* With Organic Cotton."  Dkt. 9-1 at 3 (page proof of side panel of Huggies® Pure & Natural Diapers label) (emphasis added).  Moreover, this belief defies common sense:  the product is very obviously a ***disposable*** diaper.  Indeed, it is packaged in the same manner as other disposable diapers and even touts the same "leak lock" technology found in conventional Huggies® disposable diapers.  It bears no resemblance to an "all cotton" diaper which, by definition, would be a conventional "cloth" diaper.[1]

---

[1]     Plaintiffs' contentions are similar to those raised in *Red v. Kraft Foods, Inc.*, where plaintiffs alleged that product packaging for "Vegetable Thins" was misleading because the product name and its depictions of vegetables implied the snack contained a significant amount of vegetables.  *See Red v. Kraft Foods, Inc.*, No. CV 10-1028-GW, 2012 U.S. Dist. LEXIS

Notably, Plaintiffs concede that their problem with the disclosure is not the words used—which leave no doubt as to which component of the diapers contains "soft organic cotton"—but its placement on the packaging. *See* Pls.' Br. at 13 ("If the front packaging had such a representation on it, Defendant might have a plausible argument."). Plaintiffs, however, cite no statute, regulation, or Green Guides provision requiring that such disclosures be placed on the front packaging. In fact, the Green Guides provide that "[w]hether a particular claim is deceptive will depend on the *net impression* of the advertisement, label, or other promotional material at issue." 16 C.F.R. § 260.1(d) (emphasis added). The qualifying language in question here is in large print and easily visible to any consumer who picks the product up off the shelf.

As support for their argument, Plaintiffs rely exclusively upon an out-of-context statement from *Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008), that "reasonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *See* Pls.' Br. 13. Plaintiffs' reliance on *Williams* is misplaced. The product packaging in *Williams* was misleading because the product billed itself as a "fruit juice snack" and contained depictions of fruits on the front label that were *not actually contained in the product itself*. 552 F.3d at 939. In other words, the ingredients list in *Williams* **corrected affirmative misrepresentations**[2] contained on the front of the product packaging. Here, by contrast, the disclosures on the diapers **confirm** or, at a minimum, **clarify** the representations made elsewhere on the product packaging by specifically detailing which components of the diapers are "Pure & Natural." *See* Dkt. 9-1 at

_____

164461, at *3 (C.D. Cal. Oct. 25, 2012). The court dismissed the plaintiffs' UCL claims because "[t]he fact remains that the product is a box of crackers, and a reasonable consumer will be familiar with the fact of life that a cracker is not composed of primarily fresh vegetables." *Id.*

[2] Numerous courts have noted that *Williams* involved an affirmative misrepresentation. *See, e.g.*, *Red*, 2012 U.S. Dist. LEXIS 164461, at *8-9 ("[A] close reading of *Williams* and its progeny discloses that the case merely bars a defendant from correcting an affirmative misrepresentation on the front packaging through a back of the box ingredient list." (quotation marks omitted)); *Manchouck v. Mondeléz Int'l, Inc.*, No. C 13-02148 WHA, 2013 U.S. Dist. LEXIS 138877, at *9 (N.D. Cal. Sept. 26, 2013) ("Plaintiff's reliance on *Williams v. Gerber* is inapposite because that action involved an affirmative misrepresentation. The packaging of the 'fruit juice snacks' in *Williams* contained pictures of different fruits not actually contained in the product.").

3. This is precisely what *Williams* demands. *See* 552 F.3d at 939-40 ("[R]easonable consumers expect that the ingredient list contains *more detailed* information about the product that *confirms* other representations on the packaging." (emphasis added)); *see also, e.g.*, *Hairston v. South Beach Bev. Co.*, No. CV 12-1429-JFW, 2012 U.S. Dist. LEXIS 74279, at *14-15 (C.D. Cal. May 18, 2012) (distinguishing *Williams* because the ingredient list at issue "confirmed" the product's "all natural" claim and "clarified" any potential "ambiguity" in that claim).

Contrary to Plaintiffs' arguments, *Williams* does not impose any requirement that a disclosure be made on the front label of product packaging. *See Shin v. BMW of N. Am.*, No. CV 09-00398 AHM, 2009 U.S. Dist. LEXIS 67994, at *6 (C.D. Cal. July 16, 2009) ("[I]n *Williams*, the key issue with the disclaimer is whether its content is likely to deceive a reasonable consumer, not whether its size and placement was sufficiently conspicuous."). Unsurprisingly, "a number of courts have dismissed UCL claims as a matter of law post-*Williams*, especially where [as here] the claim alleges that a consumer will read a true statement on a package and will then disregard 'well-known facts of life' and assume things about the products *other than* what the statement actually says."[3] *Red*, 2012 U.S. Dist. LEXIS 164461, at *9.

As for the Huggies® Natural Care Baby Wipes, Plaintiffs allege that a reasonable consumer would be misled because two substances, methylparaben and methylisothiazolinone,

---

[3]     *See, e.g.*, *Manchouck*, 2013 U.S. Dist. LEXIS 138877, at *10 (*Williams* distinguished where Nabisco Newtons *did* contain the fruits depicted on the front of the packaging); *Bruton v. Gerber Prods. Co.*, No. 12-CV-02412-LHK, 2013 U.S. Dist. LEXIS 129241, at *82 (N.D. Cal. Sept. 6, 2013) (distinguishing *Williams* where plaintiff "fail[ed] to explain why a label claiming that a product is 'Made with 100% Natural *Fruit*' plausibly implies that the *entire* product— which contains ingredients other than fruit—is free of synthetic ingredients or ingredients not normally expected to be in food"); *Viggiano v. Hansen Natural Corp.*, No. CV 12-10747 MMM, 2013 U.S. Dist. LEXIS 70003, at *35 (C.D. Cal. May 13, 2013) (distinguishing *Williams* where "the general 'all natural flavors' label is *confirmed* by looking to the statement of ingredients, which identifies the specific, natural, characterizing flavor for that [soda] can" (emphasis added)); *Arroyo v. Pfizer, Inc.*, No. C-12-4030 EMC, 2013 U.S. Dist. LEXIS 13789, at *19 (N.D. Cal. Jan. 31, 2013) (distinguishing *Williams* because it involved a "specific" and "provably false assertion"); *Werbel v. Pepsico, Inc.*, No. C 09-04456 SBA, 2010 U.S. Dist. LEXIS 76289, at *10-12 (N.D. Cal. July 1, 2010) (distinguishing *Williams* because it was based on a false representation); *Videtto v. Kellogg USA*, No. 2:08-cv-01324-MCE-DAD, 2009 U.S. Dist. LEXIS 43114, at *7-8 (E.D. Cal. May 20, 2009) (distinguishing *Williams* where package labeling "truthfully depicts" cereal product's contents).

are non-natural components that were not disclosed on the front label of the packaging.  Compl.

¶ 37; Pls.' Br. at 4-5.  In accord with *Williams*, however, the ingredients list on the packaging

*confirms* that the product contains natural substances (*e.g.*, aloe barbadensis leaf) and *clarifies*

any potential ambiguity by disclosing all synthetic ingredients contained in the product

(including the very two Plaintiffs complain about).[4]  *See* Dkt. 9-2 at 2 (page proof of front panel

of Huggies® Natural Care Baby Wipes label).  Thus, Plaintiffs' allegations fail as a matter of

law.

> 2.      Plaintiffs' Arguments Are Controverted by the Leading Precedent on
> "Green Marketing" Claims and the FTC's Position on "Natural" Claims

Though the gravamen of Plaintiffs' complaint is that Kimberly-Clark misleadingly touted

the environmental attributes of the Products, Plaintiffs' Opposition says virtually nothing about

the FTC Green Guides that supposedly form the basis for their claims.  Nor do Plaintiffs dispute

that *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295 (Cal. Ct. App. 2011)—a case brought by the

same Plaintiffs' counsel—is the leading California case on alleged violations of the Green

Guides.  Instead, Plaintiffs seek to distinguish *Hill* by arguing that: (1) Kimberly-Clark's reliance

on *Hill* is misplaced because its conduct is not protected by any Green Guides safe harbor; and

(2) the "green" representations in *Hill* concerned a "relatively vague word," while the terms

"pure" or "natural" are "specific words with defined meanings."  Pls.' Br. at 14-15.

On the first point, Plaintiffs contend that this case is unlike *Hill* because "Defendant

cannot point to any model examples in the Green Guides that the phrases 'pure & natural' or

'Natural Care' are in accordance with."  *Id*. at 15.  For starters, Plaintiffs entirely invert the

applicable burden of proof:  it is Plaintiffs' burden to show a violation, not Kimberly-Clark's

burden to show a safe harbor.[5]  Second, *Hill* says nothing about whether the defendants satisfied

---

[4]      As a practical matter, the baby wipes are sold in various quantities, and many packages
contain the ingredients list on the front panel.  Thus, even under Plaintiffs' misreading of
*Williams*, the claims of anyone who purchased those wipe packages would fail at the outset.
Moreover, this further underscores Plaintiffs' pleading deficiencies: they fail to allege which
wipe packages they purchased and which labels they actually saw and relied upon in making
those purchases.  *See* Section II.B, *infra*.

[5]      Plaintiffs state that "[t]he full text of 16 C.F.R. § 260.3 (2011) makes clear that any 'safe
harbors' provided by the Green Guides are with regard to ***specific, qualified claims that the FTC***

a specific safe harbor in that case; rather, the court held that the plaintiff "d[id] not satisfy the reasonable consumer standard." 195 Cal. App. 4th at 1304. Kimberly-Clark previously explained why the Products here are even less likely to mislead reasonable consumers than the Fiji Water at issue in *Hill*. Kimberly-Clark's Opening Brief ("K-C Br.") (Dkt. 8) at 13-15. Notably, *Hill* also confirms that Plaintiffs' strained reading of *Williams* is untenable.[6] Unlike the Products here, the product packaging for Fiji Water found not misleading in *Hill* contained no qualifying language or clarifying disclosures on the label itself, let alone on the front of the packaging. Instead, the label simply "invit[ed] consumers to visit the Web site [fijigreen.com] for product information, which include[d] Fiji Water's explanation of its environmental efforts." *Hill*, 195 Cal. App. 4th at 1305. Kimberly-Clark's disclosures here are far more prominent and readily accessible: no reasonable consumer who actually picked up the packaging and read the label could conclude that the Products were made *entirely* of natural components.

Furthermore, although Kimberly-Clark is not obligated to show a "safe harbor," the Green Guides contain numerous provisions and examples that make clear the Products do not run afoul of the FTC's guidance. In its opening brief, Kimberly-Clark discussed one such example—pertaining, appropriately enough, to the amount of renewable materials in diaper liners—which Plaintiffs do not even bother responding to. *See* K-C Br. at 11 n.4. Instructively, the Green Guides also contain provisions concerning the use of "non-toxic" and "free of" claims. *See* 16 C.F.R. §§ 260.9 & 260.10. Much like the "nothing artificial" representations discussed in *Astiana v. Kashi Co.*, No. 3:11-CV-01967-H2013, U.S. Dist. LEXIS 108445 (S.D. Cal. July 30, 2013), such claims are potentially misleading because, unlike "natural" claims, they have a

---

*provided as model examples*." Pls.' Br. at 14 (emphasis in original). Plaintiffs do not quote any language from the Green Guides to support this proposition. To the contrary, in the section entitled "Purpose, scope, and structure of the guides," the Green Guides provide:

> [A]lthough many examples present specific claims and options for qualifying claims, the examples do not illustrate all permissible claims or qualifications under Section 5 of the FTC Act. Nor do they illustrate the only ways to comply with the guides. Marketers can use an alternative approach if the approach satisfies the requirements of Section 5 of the FTC Act.

16 C.F.R. § 260.1.

[6] The *Hill* court was clearly aware of *Williams* and, in fact, cited the case in its opinion.

clearly ascertainable meaning: that the product contains **no** artificial or synthetic ingredients. Plaintiffs make seemingly analogous complaints here, alleging that the package labeling was misleading because: (1) they expected that the Huggies® Pure & Natural Diapers were made "*entirely*" of natural ingredients (Compl. ¶ 29), *i.e.*, that they were "free of" synthetic substances; and (2) they did not expect that the Huggies® Natural Care Baby Wipes would contain two chemical substances they allege to be toxic (*id*. ¶¶ 1, 34, 38).  Yet, Plaintiffs do not mention Sections 260.9 or 260.10 of the Green Guides at all, and it is clear why:  the Products do *not* contain any "free of" or "non-toxic" representations.  Simply put, the representations at issue here are nothing like the misleading representations set forth in the FTC's Green Guides.

Plaintiffs also argue that, unlike the term "green" in *Hill*, the terms "pure" or "natural" are "specific words with defined meanings."  Pls.' Br. at 14.  As support, Plaintiffs pluck a single definition of the word "nature" from among several listed in *Black's Law Dictionary*.  According to that definition, "nature" is "'[s]omething pure or true as distinguished from something artificial or contrived.'"  *Id*. at 12 (quoting Black's Law Dictionary (9th ed. 2009)) (emphasis omitted).  Setting aside the fact that *Black's* is hardly a "go to" reference guide for consumers, this definition only proves Kimberly-Clark's point.  *Every* manufactured product is something "contrived" (*i.e.*, deliberately created)—indeed, even a 100% organic cotton cloth diaper would flunk Plaintiffs' test.

Nor do reasonable consumers myopically rely on dictionary definitions when interpreting product labels.  They use common sense.  As one court recently explained, reasonable consumers do not, for example, apply the *Webster's Dictionary* definition of "natural" to pasta labeled "all natural" because they know pasta is manufactured (and therefore "unnatural" according to *Webster's*) and does not "spring[] fully-formed from Ravioli trees and Tortellini bushes." *Pelayo v. Nestle USA, Inc.*, No. CV 13-5213-JFW, 2013 U.S. Dist. LEXIS 154434, at *12 (C.D. Cal. Oct. 25, 2013) (quotation marks omitted).  Likewise, reasonable consumers know that the term "natural" in "Pure & Natural" and "Natural Care®" is not a literal description of the objective characteristics of the Products, since diapers and wipes do not spring directly from the

1  ground or grow on trees.  It is thus readily understood as the non-actionable puffery Kimberly-

2  Clark showed it to be in its opening brief.  *See* K-C Br. at 9-12.

3  But this is not all.  Plaintiffs acknowledge—as they must—that the Green Guides do not

4  even address the terms "organic" or "natural."  Compl. ¶ 45.  This is no accident.  In "The Green

5  Guides: Statement of Basis and Purpose," "organic" and "natural" claims are discussed in the

6  section entitled, "Claims Not Addressed by the Final Guides."  *See* Federal Trade Commission,

7  THE GREEN GUIDES: STATEMENT OF BASIS AND PURPOSE, *available at* http://www.ftc.gov/os/

8  fedreg/2012/10/greenguidesstatement.pdf.   This Section explains that the FTC's October 2010

9  Federal Register Notice announcing the Commission's proposed Guide revisions "did not

10  include proposed guidance on natural claims because it lacked consumer perception evidence

11  indicating how consumers understand 'natural.' The Commission noted that ***the term may be***

12  ***used in numerous contexts, and may convey different meanings depending on context***."  *Id*. at

13  259 (emphasis added); *see also* 75 Fed. Reg. 63552, 63586  ("[T]he Commission does not have a

14  basis to provide general guidance on the use of the term ['natural'].").  The FTC's position

15  therefore directly contradicts Plaintiffs' assertion that "[t]here is nothing subjective about the

16  purity or naturalness of a product."  Pls.' Br. at 12.[7]

17  Just last month, the Central District of California held that "[g]iven the FTC's findings

18  that the term 'natural' can be used in numerous contexts, it is implausible that 'a significant

19  portion of the general consuming public or of targeted consumers' would be deceived or misled

20  by the term 'All Natural'" in the labeling of a pasta product alleged to contain two synthetic

21  ingredients.  *Pelayo*, 2013 U.S. Dist. LEXIS 154434, at *15.  The reasoning of *Pelayo* applies *a*

22  *fortiorari* here, given that the Products are merely labeled as "Natural," not "***All*** Natural."

23  **B.      Plaintiffs Fail to Surmount Rule 9(b)'s Heightened Pleading Burden.**

24  ─────────────────
[7]

25  Although Plaintiffs make no mention of it, the FTC's position on "natural" claims appears in the paragraph immediately preceding language Plaintiffs quoted in their Opposition.

26  Plaintiffs quoted that passage for the unremarkable proposition that "the Guides' *general* principles apply" to "organic" or "natural" claims and that "marketers must have substantiation

27  for any environmental benefit claims they make, including implied claims."  *See* Pls.' Br. at 5 n.5 (emphasis added).  Plaintiffs do not explain (or even allege) how Kimberly-Clark lacks

28  substantiation for any environmental benefit claim contained on the product packaging.

1    Plaintiffs contend they have met the heightened pleading burden under Rule 9(b), even

2  though the complaint contains only four paragraphs that discuss the named plaintiffs.  *See*

3  Compl. ¶¶ 10-14.  These four paragraphs consist of "naked assertion[s]," "labels and

4  conclusions," and "formulaic recitation[s] of the elements of a cause of action" which do not

5  pass muster under Rule 8, much less Rule 9(b).  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

6  555, 557 (2007).  For instance, though the complaint contains depictions of product packaging,

7  Plaintiffs do not allege which statements on the product packaging *they* relied upon—or even

8  that they read the product packaging at all.  Plaintiffs attempt to excuse this fatal infirmity with a

9  wave of the hand.  After listing several representations contained on the Products' packaging,

10  they declare that "[b]ased upon Plaintiffs' reliance upon these statements, it would necessarily

11  imply that Plaintiffs read the packaging."  Pls.' Br. at 8.  Yet, nowhere in the complaint do

12  Plaintiffs allege they actually relied upon any of the statements actually found on the product

13  labels.  Instead, they allege that they relied on what amounts to Plaintiffs' ***spin*** or ***gloss*** on what

14  those statements supposedly mean:  "Plaintiff [] relied on Defendant's false, misleading, and

15  deceptive representations that Huggies Natural Diapers and Huggies Natural Wipes would

16  provide natural, relatively safe, environmentally sound, and (in the case of the diapers) organic

17  alternatives to traditional diaper and wipe offerings."  Compl. ¶¶ 11, 13.  That is not enough.

18  Plaintiffs must allege that they read and relied upon actual statements made by the defendant.

19  *See, e.g.*, *Pardini v. Unilever United States, Inc.*, No. 13-1675 SC, 2013 WL 3456872, at *8

20  (N.D. Cal. July 9, 2013) (holding that, because "Plaintiff ha[d] not pled she ever looked at the

21  nutrition panel," it was "implausible that she was deceived by its lack of disclosures").[8]

22    A false advertising case decided earlier this month in the Eastern District of Washington

23  demonstrates how far Plaintiffs are from satisfying Rule 9(b).  In *Maple v. Costco Wholesale*

24  *Corp.*, No. CV-12-5166-RMP, 2013 U.S. Dist. LEXIS 157201 (E.D. Wash. Nov. 1, 2013), the

25

---

26  [8]    Plaintiffs contend *Pardini* is distinguishable because "the plaintiff did not allege what
statements she relied upon."  Pls.' Br. at 9 n.7.  But this is the same deficiency plaguing the
27  complaint in this case.  Indeed, the complaint in *Pardini*—as here—listed several specific
representations that the plaintiff alleged were deceptive, and the plaintiff alleged she would not
28  have purchased the product but for those representations.  *See* 2013 WL 3456872 at *1-2, *8.

1    plaintiff alleged—unlike Plaintiffs here—that he "read the name of the drink, VitaRain, and read

2    portions of the outer label of the package." *Id*. at *15.  Nevertheless, the court still found these

3    pleadings deficient, because the complaint did not specify "what specific statements that Plaintiff

4    read on the outer label, including whether he actually read the deceptive claims that the beverage

5    contained 'natural caffeine' or that it was a 'natural tonic.'" *Id*.  Without such allegations, the

6    allegedly deceptive statements simply "could not have caused Plaintiff's economic damages of

7    having purchased a drink he would not otherwise have purchased...." *Id*. at *15-16.  Plaintiffs

8    have the same problem here because they have not alleged they read any portion of the label, let

9    alone the portions they allege to be deceptive.

10           **C.       The Allegations Do Not Comport with Article III Standing Requirements.**

11                  1.       Plaintiffs Lack Standing to Seek Restitution

12           Plaintiffs argue they have established standing due to an alleged economic injury because

13   (1) "they would not have purchased the products at premium prices if they had not been misled"

14   and (2) they "need not prove the exact price premium."  Pls.' Br. 15, 17.  Plaintiffs misconstrue

15   Kimberly-Clark's argument.  While Plaintiffs need not prove the *exact* price premium, they must

16   allege that the "premium" reflects the product's failure to live up to its advertised benefits (*i.e.*,

17   that Plaintiffs did not receive the benefit of their bargain).  Here, Plaintiffs do not (and cannot)

18   allege that the Products lacked the specific benefits advertised on the packaging, *e.g.*, "Soft Outer

19   Cover With Organic Cotton," or that these benefits fail to distinguish the Products from

20   traditional Huggies® products.  What is left are allegations that the Products lacked additional

21   environmental features they were never advertised to have, or that the Products were not *entirely*

22   natural when they never purported to be.  That is not enough to establish standing.

23           A recent case is on point.  In *Simpson v. California Pizza Kitchen, Inc.*, No. 13-cv-164

24   JLS, 2013 U.S. Dist. LEXIS 153846 (S.D. Cal. Oct. 1, 2013), the plaintiff brought a UCL claim

25   alleging that she suffered an economic injury due to her purchase of pizzas that contained

26   artificial trans fatty acids ("TFAs").  *Id*. at *2, *7-12.  The court held that the plaintiff received

27   the benefit of her bargain because she consumed the pizzas notwithstanding the fact that the

28

TFAs were "explicitly divulged in the nutrition facts panel on each box." *Id*. at *11-12.

Similarly here, the Products presumably performed their intended function and their labels

"explicitly divulged" (1) which components of the diapers were "natural" and (2) that the wipes

contained certain synthetic ingredients.  Plaintiffs' supposed economic injury is thus illusory.

### 2.   Plaintiffs Lack Standing to Seek Injunctive Relief

In its opening brief, Kimberly-Clark cited nine cases holding that plaintiffs lack Article

III standing to pursue injunctive relief where they are not continuing purchasers and are not

realistically threatened by repetition of the alleged violation.  *See* K-C Br. at 18-20.  Plaintiffs do

not distinguish any of those cases.  Instead, they cite *Henderson v. Gruma Corp.*, No. CV 10-

04173 AHM, 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011), and three cases relying upon it, to

argue that "if a consumer's mere recognition of alleged deception were to defeat standing for an

injunction, then injunctive relief would never be available in false advertising cases."  *See* Pls.'

Br. at 18-19.  Other district courts have expressly rejected *Henderson* because it departs from

settled Ninth Circuit precedent.  *See, e.g.*, *Mason v. Nature's Innovation, Inc.*, No. 12cv3019

BTM, 2013 U.S. Dist. LEXIS 68072, at *10-11 (S.D. Cal. May 13, 2013) (criticizing

*Henderson*) ("Guided by the Ninth Circuit's interpretation of Article III's standing requirements,

this Court agrees with the courts that hold that a plaintiff does not have standing to seek

prospective injunctive relief against a manufacturer or seller engaging in false or misleading

advertising unless there is a likelihood that the plaintiff would suffer future harm from the

defendant's conduct.");[9] *Delarosa v. Boiron, Inc.*, No. SACV 10-1569-JST, 2012 U.S. Dist.

LEXIS 188828, at *16 (C.D. Cal. Dec. 28, 2012) ("To the extent that *Henderson* and other cases

---

[9]      The *Henderson* court stated that if threat of future injury were required to seek injunctive
relief, the public policy objectives of California's consumer protection laws would be thwarted
because "a plaintiff who had been injured would always be deemed to avoid the cause of the
injury thereafter ('once bitten, twice shy') and would never have Article III standing."
*Henderson*, 2011 WL 1362188, at *7.  This reasoning is simply incorrect.  As the *Mason* court
recognized, "it is an exaggeration to claim that injunctive relief would never be available in false
advertising cases. There are cases where a consumer would still be interested in purchasing the
product if it were labeled properly—for example, if a food item accurately stated its ingredients."
*Mason*, 2013 U.S. Dist. LEXIS 68072, at *13.  And, of course, such a plaintiff could still sue in
California state court.  *Id*. at *13-14.

1   purport to create a public-policy exception to the standing requirement, that exception does not

2   square with Article III's mandate.").  This Court should do the same.

3          **D.      California Choice of Law Precludes Application of Wisconsin Law Here.**

4          Plaintiffs offer no retort to Kimberly-Clark's detailed analysis of California's choice-of-

5   law rules, nor do they dispute that the consumer protection laws of California and Wisconsin

6   materially differ.  Instead, they argue that their allegations fall within the ambit of conduct

7   prohibited by the Wisconsin Deceptive Trade Practices Act ("WDTPA"), and that a choice-of-

8   law analysis would be premature.  Plaintiffs are wrong on both counts.

9          As an initial matter, the express language of the WDTPA provides that it is not intended

10  to have extraterritorial application—and certainly no application to non-Wisconsin residents who

11  purchased products outside of Wisconsin.  Specifically, the WDTPA provides that "[n]o

12  person…with intent to sell…merchandise…shall make, publish, disseminate, circulate, or place

13  before the public…***in this state***…an advertisement, announcement, statement or

14  representation…[that] contains any assertion, representation or statement of fact which is untrue,

15  deceptive or misleading."  Wis. Stat. § 100.18 (emphasis added).

16         As the Eastern District of Wisconsin has explained, this language limits application of the

17  WDTPA to claims arising in Wisconsin.  *See Calnin v. Hilliard*, No. 05-C-694, 2008 U.S. Dist.

18  LEXIS 8590, at *40-41 (E.D. Wis. Feb. 5, 2008) ("The scope of Wis. Stat. § 100.18(1) is limited

19  to publications 'in this state.' Accordingly, [plaintiff's] § 100.18 claim will be dismissed because

20  there is no evidence of contact between the State of Wisconsin and [plaintiff's] transactions, an

21  element essential to his § 100.18 claim."); *cf. Morley-Murphy Co. v. Zenith Elecs. Corp.*, 142

22  F.3d 373, 380 (7th Cir. 1998) (declining to apply Wisconsin Fair Dealership Law to sales in

23  other states "in light of both the presumption against extraterritoriality and the troublesome

24  nature of the constitutional questions that would be raised if the WFDL reached beyond

25  Wisconsin's borders").  Other courts have reached the same conclusion about nearly identical

26

27

28

1    language in other states' consumer protection statutes.[10]  In short, the California-centered claims

2    of these California plaintiffs fall outside the territorial reach of the WDTPA.

3         Even if the WDTPA applied to out-of-state transactions like those at issue here,

4    California's choice-of-law rules still require application of California law.  And contrary to

5    Plaintiffs' vague assertion, there is nothing more the Court needs to know before making that

6    determination.  Not only does California law presumptively apply to cases brought in California,

7    *Johnson*, 653 F.3d at 1008, and would apply even in the absence of conflict between California

8    and Wisconsin law, *Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal. App. 4th 1436, 1454 (Cal. Ct.

9    App. 2007), here there is no doubt that California is the state with the predominate interest in the

10   application of its law to Plaintiffs' claims.  *See* K-C Br. at 22.  Plaintiffs have no answer to this

11   and offer not even a single hypothetical fact that, if uncovered later, would change this result.[11]

12

13   _____

     [10]     For instance, in *Force v. ITT Hartford Life & Annuity Ins. Co.*, 4 F. Supp. 2d 843 (D.

14   Minn. 1998), plaintiffs alleged a violation of Minnesota's False Statement in Advertising Act,
     which—like the WDTPA—prohibits deceptive representations "disseminated, circulated, or

15   placed before the public, *in this state*…."  Minn. Stat. § 325F.67 (emphasis added).  Plaintiffs
     argued that, even though the advertising was "placed before the public" in Florida, their claim

16   under Minnesota's false advertising statute was viable because the advertising was "designed"
     and "effected" in the defendants' Minnesota home office.  Rejecting plaintiffs' "tortured

17   argument," the court held that "the plain language of the statute requires that the statements be
     made in Minnesota."  *Force*, 4 F. Supp. at 858;  *cf. Goshen v. Mut. Life Ins. Co.*, 98 N.Y.2d 314,

18   325 (N.Y. 2002) (holding that similar "in this state" language in New York's consumer
     protection statute "unambiguously evinces a legislative intent to address commercial misconduct

19   occurring within New York," and the relevant misconduct is "not the mere invention of a scheme
     or marketing strategy, but the actual misrepresentation or omission to a consumer").

20   [11]     Plaintiffs attempt to distinguish *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir.

21   2012), because "the defendant[] w[as] based in California."  Pls.' Br. at 19.  But this is a
     distinction without a difference.  Like Plaintiffs here, the plaintiffs in *Mazza* sought to certify a

22   nationwide class under one state's laws—the state where the defendant maintained its corporate
     headquarters.  *See* 666 F.3d at 589-90.  Because the defendant in *Mazza* was based in California,

23   under Plaintiffs' theory California law should have applied.  The Ninth Circuit held, however,
     that California law did *not* apply; instead, "each class member's consumer protection claim

24   should be governed by the consumer protection laws of the jurisdiction in which the transaction
     took place."  *Id*. at 594.  The Ninth Circuit reasoned that, under California choice of law, "the

25   last events necessary for liability as to the foreign class members—communication of the
     advertisements to the claimants and their reliance thereon in purchasing vehicles—took place in

26   the various foreign states, not in California."  *Id*.  Plaintiffs here allege they were exposed to,
     relied upon, and purchased the Products in California.  Under the inescapable logic of *Mazza*,

27   that means their claims are governed by California law.

28

### E.      Striking the Nationwide Class Would Not Be "Premature."

Plaintiffs contend that striking the proposed nationwide class under Wisconsin law "would be premature, given the lack of discovery and lack of arguments that accompany a motion for class certification."  Pls.' Br. at 20.  Plaintiffs do not counter the numerous cases cited by Kimberly-Clark where courts dismissed and/or struck nationwide class allegations at the pleading stage, holding that the consumer protection laws of one state could not govern class members who purchased the product in other states.  *See* K-C Br. at 23-24.  Instead, they cite four cases where courts declined to reach the choice-of-law question at the motion to dismiss stage.  Notably, in two of those cases, the defendant had presented no choice-of-law analysis whatsoever.  *See Werdebaugh v. Blue Diamond Growers*, 12-CV-02724-LHK, 2013 WL 5487236, at *16 (N.D. Cal. Oct. 2, 2013) ("[T]here has been no choice-of-law analysis in this case: Defendant…provides no support for its position that foreign law conflicts with California law[.]"); *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1160 (C.D. Cal. 2012) (same).

The other two cases held that it would be too speculative to determine whether differences in the states' consumer protection laws would be material in those cases.  No such speculation is required here: among the many differences cited by Kimberly-Clark, at least three clearly would be material *in this case*.  First, Wisconsin has no analogue to California's Environmental Marketing Claims Act (which incorporates the FTC's non-binding Green Guides as substantive law).  Second, material omissions are not actionable under the WDTPA, unlike California's consumer protection statutes.[12]  Third, the burden of showing reasonable reliance also differs between Wisconsin and California.[13]  *See* K-C Br. at 21 & n.6.

---

Plaintiffs also seek to distinguish *Pardini* on the grounds that the defendant was based in California.  *See* Pls.' Br. at 19.  Yet, the court in *Pardini* did not even mention the defendant's state of corporate citizenship, much less suggest it was a factor in its choice-of-law analysis.

[12]   To sidestep this problem, Plaintiffs now claim that their allegations do not concern material omissions.  *See* Pls.' Br. at 20 n.13.  This contention is belied both by the complaint and their Opposition.  *See* Compl. ¶ 9 (referencing Kimberly-Clark's "omissions"); *id*. ¶ 42 (referencing the "omissions alleged herein"); *id*. ¶ 51 (listing as first common question whether Kimberly-Clark "failed to disclose material facts"); *id*. ¶¶ 31, 37, 42 (alleging lack of disclosures); Pls.' Br. at 1, 3-5, 8, 13 (discussing alleged lack of qualifying statements).

[13]   Moreover, unlike the UCL and FAL, the WDTPA has a scienter requirement.  *See Eberts v. Goderstad*, 569 F.3d 757, 763 (7th Cir. 2009); *Stuart v. Weisflog's Showroom Gallery, Inc.*,

1   Finally, "Plaintiffs have failed to show how further development of the record would

2   affect the choice of law analysis."  *Majdipour v. Jaguar Land Rover N. Am., LLC*, No. 2:12-cv-

3   07849, 2013 U.S. Dist. LEXIS 146209, at *22 (D.N.J. Oct. 9, 2013) (dismissing New Jersey

4   Consumer Fraud Act claim at pleading stage where California's consumer protection laws

5   applied); *see also Frezza v. Google Inc.*, No. 5:12-cv-00237-RMW, 2013 U.S. Dist. LEXIS

6   57462, at *21 (N.D. Cal. Apr. 22, 2013) ("[F]act discovery is [not] required to confirm material

7   differences in the law between the state laws….[C]ourts that have considered this issue have

8   decided against deferring the choice of law decision until discovery.").  Accordingly, this Court

9   should join the other courts that have stricken nationwide class allegations at the pleading stage.

10  *See, e.g.*, *Wilson v. Frito-Lay N. Am.*, No. 12-1586 SC, 2013 U.S. Dist. LEXIS 153136, at *30-

11  34 (N.D. Cal. Oct. 24, 2013) (striking nationwide class based on purchases occurring outside of

12  California); *Banks v. Nissan N. Am., Inc.*, No. 12-1586 SC, 2012 WL 8969415, at *1 (N.D. Cal.

13  Mar. 20, 2012) (striking nationwide class allegations at pleading stage based on *Mazza*).

14          **F.       Because the Labeling Itself Confirms that the Products Are Not "Likely to
                       Deceive Reasonable Consumers," Leave to Amend Would Be Futile.**

15          "A district court may deny leave to amend when amendment would be futile."

16  *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1130 (9th Cir. 2013).  Amendment is

17

18  futile here because it is obvious, from the face of the product packaging, that no reasonable

19  consumer could be deceived by the Products' representations.  Amendment cannot change this

20  basic fact and would only delay the inevitable.  Nor have Plaintiffs shown how amendment could

21  salvage their claims.  *See Hill*, 195 Cal. App. 4th at 1307 (stating it is "[plaintiff's] burden to

22  show how she might amend to cure the deficiencies," and "saying so does not make it so").

23  **III.      CONCLUSION**

24          Kimberly-Clark respectfully requests that the Court dismiss Plaintiffs' Complaint in its

25  entirety, or, in the alternative, that the Court dismiss and/or strike the proposed nationwide class.

26

27  753 N.W.2d 448, 458 & n.15 (Wis. 2008).  Plaintiffs have come nowhere close to plausibly
    pleading that Kimberly-Clark possessed the requisite intent to induce.

28

1    DATED:  November 18, 2013          KING & SPALDING LLP

2

3                                        By:   /s/ Timothy T. Scott
                                         TIMOTHY T. SCOTT
4                                        GEOFFREY M. EZGAR
                                         STEPHEN B. DEVEREAUX (admitted *pro hac vice*)
5                                        MADISON H. KITCHENS (admitted *pro hac vice*)

6                                        Attorneys for Defendants
                                         KIMBERLY-CLARK CORPORATION; KIMBERLY-
7                                        CLARK WORLDWIDE, INC.; KIMBERLY-CLARK
                                         GLOBAL SALES, LLC
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28